UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM MCGREEVY, ASHWIN GOWDA, TRANSLUNAR CRYPTO, LP, CHRISTOPHER BUTTENHAM, and ALEX SOPINKA, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>DIGITAL CURRENCY GROUP, INC., and BARRY SILBERT,<br><br>    Defendants. | Case No.: 3:23-cv-00082-SRU<br><br><br><br><br><br><br><br>MARCH 24, 2023 |

**REMO MARIA MORONE'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

                                                                                                    **Page(s)**

I.     INTRODUCTION ............................................................................................................. 1

II.    SUMMARY OF THE ACTION AND PROCEDURAL BACKGROUND ....................... 2

III.   ARGUMENT .................................................................................................................... 7

         A.    Morone Should Be Appointed Lead Plaintiff .............................................................7

                 1.    The PSLRA's Standard for Appointing Lead Plaintiff..................................7

                 2.    Morone is the "Most Adequate Plaintiff" ..........................................................9

                 3.    Morone Has the Largest Financial Interest in the Relief Sought by the Class ...................................................................................................................9

                 4.    Morone Satisfies the Requirements of Rule 23 ............................................10

         i.     Morone Satisfies the Typicality Requirement of Rule 23 ...................................... 10

         ii.    Morone Satisfies the Adequacy Requirement of Rule 23........................................ 11

         B.    The Court Should Approve Morone's Selection of Lead Counsel for the Class ...................................................................................................................12

IV.   CONCLUSION ............................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brday v. Frontier Commc'ns Corp.*,
  No. 3:17-CV-1617 (VAB), 2018 WL 525485 (D. Conn. Jan. 18, 2018) .................................. 12

*Galmi v. Teva Pharms. Indus. Ltd.*,
  302 F. Supp. 3d 485 (D. Conn. 2017) ............................................................................... *passim*

*In re Drexel Burnham Lambert*,
  960 F.2d 285 (2d Cir. 1992) .................................................................................................... 11

*In re Host Am. Corp. Sec. Litig.*,
  236 F.R.D. 102 (D. Conn. 2006) ............................................................................................... 9

*Indergit v. Rite Aid Corp.*,
  293 F.R.D. 632 (S.D.N.Y. 2013) ............................................................................................ 11

*Marsch v. Rui Feng*,
  No. 12 Civ. 9456 (JSR), 2013 WL 3204193 (S.D.N.Y. June 13, 2013) .................................. 11

**Statutes**

15 U.S.C. § 77e ............................................................................................................................... 3

15 U.S.C. § 77l(a)(1) ...................................................................................................................... 3

15 U.S.C. § 77o ............................................................................................................................... 3

15 U.S.C. § 77z-1(a)(1) .................................................................................................................. 7

15 U.S.C. § 77z-1(a)(3)(A) ......................................................................................................... 8, 9

15 U.S.C. § 77z-1(a)(3)(B) .................................................................................................. *passim*

15 U.S.C. § 78j(b) ........................................................................................................................... 5

15 U.S.C. § 78u-4(a)(1) .................................................................................................................. 7

15 U.S.C. § 78u-4(a)(3)(A) ........................................................................................................ 8, 9

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................. *passim*

**Regulations**

17 CFR 240.10b-5 ............................................................................................................................ 5

Remo Maria Morone ("Morone"), by his counsel, respectfully submits this memorandum of law in support of his Motion for an order: (i) appointing Morone as Lead Plaintiff under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B) and 77z-1(a)(3)(B), (ii) approving of Morone's selection of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") to serve as Lead Counsel under 15 U.S.C. §§ 78u-4(a)(3)(B)(v) and 77z-1(a)(3)(B)(v); and (iii) granting such other and further relief as the Court may deem just and proper.

## I.       INTRODUCTION

The above-captioned securities class action (the "Action") seeks relief for the injuries sustained by the proposed Classes as a result of Defendants' unlawful sale of unregistered securities, in violation of Sections 5 and 12(a)(1) of the Securities Act, and fraud in connection with the sale or purchase of securities, in violation of Section 10(b) of the 1934 Exchange Act and Rule 10b-5 promulgated thereunder pursuant to Section 15 of the Securities Act and Section 20(a) of the Exchange Act.

Pursuant to the PSLRA, the Court is to appoint the "most adequate plaintiff" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i); 15 U.S.C. § 77z-1(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Classes in this litigation and whether that movant has made a *prima facie* showing that he is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

Morone respectfully submits that he is the "most adequate plaintiff" under the PSLRA's analysis and should be appointed Lead Plaintiff on behalf of all digital asset lenders who engaged in digital asset lending transactions with Defendant-controlled subsidiary company Genesis Global Capital, Inc. ("Genesis Global Capital") during the Class Period. Morone has incurred losses as a result of his Class Period loans with Genesis Global Capital, which total more than approximately

243.7 Bitcoin ("BTC") and 999.9 Ether ("ETH").[1] In addition to asserting the largest financial interest in this litigation, Morone also meets the applicable requirements of Rule 23 because (i) his Exchange Act and Securities Act claims arise from the same course of events as those of the other members of the Classes, (ii) he relies on similar legal theories to prove Defendants' liability, and (iii) he has retained experienced counsel and is committed to vigorously prosecuting the Action.

Further, Morone fully understands the Lead Plaintiff's obligations under the PSLRA and is willing and able to undertake the responsibilities of a Lead Plaintiff to guarantee vigorous prosecution of the Action. *See* Crumbie Decl., Ex. A.

Therefore, Morone respectfully requests that the Court approve his choice of Kaplan Fox as Lead Counsel for the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) and 15 U.S.C. § 77z-1(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class"). Kaplan Fox is a nationally recognized securities class action litigation firm that has recovered billions of dollars in damages for defrauded investors.

Accordingly, Morone respectfully requests that the Court appoint him as Lead Plaintiff for the Classes and approve his selection of Lead Counsel.

## II.    SUMMARY OF THE ACTION AND PROCEDURAL BACKGROUND

Defendant DCG is the parent entity of a conglomerate of subsidiaries which includes Genesis Global Capital. *See* Compl. Filed January 23, 2023 (ECF No. 1) at ¶ 3.[2] At all times alleged herein DCG was the 100% owner of Genesis Global Capital. *Id*. Defendant Barry Silbert

---

[1] A copy of the Certification of Remo Maria Morone is attached as Exhibit A to the Declaration of Andrew R. Crumbie in Support of Remo Maria Morone's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, dated March 24, 2023 (the "Crumbie Decl."). The Certification sets forth all lending transactions with Genesis Global Capital during the Class Period.

[2] All references to "Compl. ¶_" herein are derived from the complaint filed in the Action.

is the founder of DCG, Genesis Global Capital, and several other DCG subsidiary companies. Silbert is the controlling shareholder of DCG (owning 40%), chief executive officer of DCG, and chairman of DCG's board of directors. *Id*. at ¶ 4.

During the Class Period, Genesis Global Capital ran a borrow/lend business for the DCG conglomerate, attracting capital from digital asset owners by offering high rates of return via interest on the lending transactions. *Id*. at ¶ 5.

Genesis Global Capital executed lending transactions with its customers such as Morone via agreements sometimes styled "Master Digital Asset Loan Agreement(s)" (the "MDAL Agreement") and other times called "Master Borrow Agreement(s)" (collectively, the "Lending Agreements") whereby lenders such as Plaintiffs provided digital assets to Genesis Global Capital in exchange for interest payments and the eventual return of the digital assets. *Id*. at ¶ 6.

Genesis Global Capital pooled the digital assets it received pursuant to the Lending Agreements and, at the direction of DCG and Barry Silbert, deployed the digital assets pursuant to certain strategies designed to generate revenue for the DCG conglomerate and Silbert and to pay lenders interest. *Id*. at ¶ 7. Genesis Global Capital, subject to the direction and control of DCG and Silbert, did not register the Lending Agreements with the U.S. Securities & Exchange Commission. *Id*. at ¶ 8. Because the Lending Agreements meet the definition of investment contracts and notes under the federal securities laws, as offered and sold, the Lending Agreements constituted offers and sales of securities under the federal securities laws, including the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77e, 77*l*(a)(1), 77o. *Id*. at ¶ 9. Because no applicable exemption from registration applied, Genesis Global Capital's failure to register its securities offerings violated the federal securities laws, including Section 5 of the Securities Act. *Id*. at ¶ 10.

Independent of the federal securities laws' registration requirements, the federal securities laws prohibit parties from defrauding or deceiving, including through misrepresentation of material information, someone in connection with the purchase or sale of security. *Id*. at ¶ 11.

During the Class Period DCG and Silbert deployed the digital assets Genesis Global Capital received from lenders in ways designed to line DCG's and Silbert's own pockets. *Id*. at ¶ 12. For example, DCG and Silbert directed Genesis Global Capital to use lenders' digital assets to engage in transactions designed to benefit the DCG conglomerate, including the purchase of Grayscale Bitcoin Trust shares ("GBTC"), a publicly traded security managed by DCG and Silbert's Grayscale Investments subsidiary, to maximize the management fees collectable by the DCG conglomerate. *Id*. at ¶ 13.

DCG and Silbert also caused Genesis Global Capital to take on an unreasonable amount of counterparty concentration risk by lending almost 30% of Genesis Global Capital's total loan book to a single party: digital asset hedge fund Three Arrows Capital. This too was designed to benefit the DCG conglomerate by maximizing the management fees earned for managing GBTC. *Id*. at ¶ 14. Predictably, these practices had disastrous results. Three Arrows Capital declared bankruptcy in June 2022, and after Three Arrows Capital liquidated its assets Genesis Global Capital was left with an uncollectable $1.1 billion debt, an impairment in value which Genesis Global Capital should have immediately recognized on its balance sheet regularly distributed to lenders such as Plaintiffs, members of the Classes, and their agents. *Id*. at ¶ 15.

Recognition of the impairment, however, would have meant Genesis Global Capital recognizing its own insolvency, which would have terminated all Lending Agreements and entitled lenders such as Plaintiffs and members of the Classes to the return of their digital assets. It also would have meant the end of the Genesis Global Capital's business and DCG's source of capital.

*Id*. at ¶ 16. Instead of recognizing the impairment, DCG and Barry Silbert directed and caused Genesis Global Capital to engage in a misleading sham transaction without any economic reality, designed to conceal its insolvency. At DCG and Silbert's direction, Genesis Global Capital proceeded to "sell" the uncollectable $1.1 billion Three Arrows Capital debt to DCG in exchange for a 10-year promissory note (the "DCG Promissory Note") with an interest rate of 1% per year due in 2032. Importantly, no cash, cash equivalents, or any assets meeting the definition of a current asset changed hands in this transaction, which meant that Genesis Global Capital received zero capitalization from DCG. Instead, Genesis Global Capital magically erased the bad debt from its books and replaced it with a "good" debt. *Id*. at ¶ 17.

Genesis Global Capital proceeded to misleadingly include the $1.1 billion amount of the DCG Promissory Note on its balance sheet as a current asset and/or receivable, which falsely portrayed Genesis Global Capital as solvent when, in fact, it was insolvent. *Id*. at ¶ 18. Genesis Global Capital circulated balance sheets and other documents containing misrepresentations as to its solvency to Plaintiffs, members of the Classes, and their agent in order to induce the parties to continue to loan Genesis Global Capital digital assets and/or to prevent them from requesting redemptions of their loans. *Id*. at ¶ 19.

Importantly, Genesis Global Capital represented in *every lending transaction it executed* from July 1, 2022 forward that it was in fact solvent, when it was not. *Id*. at ¶ 20. These misrepresentations and omissions concerning the Genesis Global Capital-DCG transaction and Genesis Global Capital's solvency violated of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, codified at 17 CFR 240.10b-5, which prohibit defrauding or deceiving, including through misrepresentation of material information, someone in connection with the purchase or sale of security. *Id*. at ¶ 21.

The misrepresentations and omissions were material, as no reasonable lender would have loaned digital assets to Genesis Global Capital had they known of Genesis Global Capital's true financial condition or the details of the $1.1 billion DCG Promissory Note. *Id*. at ¶ 22.

Plaintiffs, members of the Classes, and their agents reasonably relied on Genesis Global Capital's misrepresentations and omissions as to Genesis Global Capital's solvency in deciding to lend digital assets to Genesis Global Capital or to rollover existing loans with Genesis Global Capital into new terms. *Id*. at ¶ 23.

Thus, as a result of the misrepresentations and omissions, Genesis Global Capital received billions of dollars in new loans and loan roll-overs from Plaintiffs and members of the Classes Genesis Global Capital otherwise would not have. *Id*. at ¶ 24.

These misrepresentations and omissions came to light after Genesis Global Capital experienced a slew of withdrawal requests in November 2022 in the wake of the collapse of digital asset trading platform FTX due to a general loss of confidence in the digital asset markets. This "bank run" combined with Genesis Global Capital's true financial condition meant that Genesis Global Capital did not have the assets to honor redemption requests. *Id*. at ¶ 25

On November 16, 2022, Genesis Global Capital unilaterally stopped honoring redemption requests, meaning no lender could obtain their digital assets from Genesis Global Capital. Even then, Genesis Global Capital continued to misrepresent its financial condition, calling the cause of its inability to honor redemptions a result of a "liquidity and duration mismatch" when in reality it was because of insolvency. *Id*. at ¶ 26.

On January 19, 2023, Genesis Global Capital, LLC and two affiliated entities filed for Chapter 11 Bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York. *Id*. at ¶ 27.

As a result of the conduct described herein, Plaintiffs and members of the Classes defined below have suffered significant harm and are owed billions of dollars. *Id.* at ¶ 28.

Plaintiffs seek relief, on behalf of themselves and the proposed Classes, for the injuries they have sustained as a result of Defendants' unlawful sale of unregistered securities, in violation of Section 5 and 12(a)(1) of the Securities Act, and fraud in connection with the sale or purchase of securities, in violation of Section 10(b) of the 1934 Exchange Act and Rule 10b-5 promulgated thereunder pursuant to Section 15 of the Securities Act and Section 20(a) of the Exchange Act. *Id.* at ¶ 29.

### III. ARGUMENT

#### A. Morone Should Be Appointed Lead Plaintiff

Morone should be appointed Lead Plaintiff because he is the movant "most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i); 15 U.S.C. § 77z-1(a)(3)(B)(i). When selecting a lead plaintiff, the PSLRA establishes a presumption that the plaintiff "most capable of adequately representing the interests of class members" is the movant that has the "largest financial interest" in the relief sought by the Class, so long as the plaintiff also satisfies the relevant requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); *see also Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 493 (D. Conn. 2017) (Underhill, J.). As set forth below, Morone believes he is the "most adequate plaintiff" and should be appointed lead plaintiff.

##### 1. The PSLRA's Standard for Appointing Lead Plaintiff

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act or Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), 78u-4(a)(3)(B)(i); 15 U.S.C. §§ 77z-1(a)(1), 77z-1(a)(3)(B)(i). Specifically, within 20 days after the date on which a

7

class action is filed, the plaintiff shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –

    (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and

    (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i); 15 U.S.C. § 77z-1(a)(3)(A)(i).

Further, the PSLRA directs the Court to consider any motions by plaintiffs or purported class members to serve as lead plaintiff in response to any such notice within 90 days after the date of publication of the notice, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims. 15 U.S.C. § 78u-4(a)(3)(B); 15 U.S.C. § 77z-1(a)(3)(B).

Under the relevant sections of the PSLRA, the Court "shall" appoint the "most adequate plaintiff," and is to presume that plaintiff is the person or group of persons that:

    (aa)    has either filed the complaint or made a motion in response to a notice . . .;

    (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

    (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); *see also Teva*, 302 F. Supp. 3d at 493 (discussing the PSLRA's lead plaintiff appointment process).

The presumption set forth in the PSLRA as to "the most adequate plaintiff" may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff

8

incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II); *Teva*, 302 F. Supp. 3d at 493.

### 2. Morone is the "Most Adequate Plaintiff"

Under the PSLRA, any Class member may move for appointment as lead plaintiff within 60 days of the publication of notice that the action has been filed. 15 U.S.C. § 78u-4(a)(3)(A); 15 U.S.C. § 77z-1(a)(3)(A). In this case, the notice of the pendency was published on January 23, 2023 alerting investors that the deadline to seek lead plaintiff status is 60 days from the date of the notice, which is March 24, 2023. ECF No. 32-1.

### 3. Morone Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" is the movant with the "largest financial interest in the relief sought by the class," so long as the movant otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

Morone has incurred losses as a result of his Class Period loans with Genesis Global Capital, which total more than approximately 243.7 BTC and 999.9 ETH. *See* Crumbie Decl., Ex. A; *In re Host Am. Corp. Sec. Litig.*, 236 F.R.D. 102, 105 (D. Conn. 2006) ("[T]he Court should consider the motions sequentially, from greatest to smallest loss, applying the presumption that the plaintiff with the greatest loss should be the lead plaintiff, unless and until that presumption is rebutted by a showing that plaintiff does not meet the Rule 23 criteria."); *Teva*, 302 F. Supp. 3d at 497 ("Courts agree that the last factor, 'approximate losses suffered,' is the most important factor and is often dispositive.") (internal citation omitted). Morone is presently unaware of any other movant with a larger financial interest in the outcome of the Action. Consequently, and also because it satisfies Rule 23's typicality and adequacy requirements as discussed below, Morone is

entitled to the legal presumption that it is the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii).

### 4. Morone Satisfies the Requirements of Rule 23

The PSLRA provides that, in addition to possessing the largest financial interest, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc).

Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

"At this early stage in the litigation, the proposed lead plaintiff must only meet its prima facie burden of establishing its adequacy and typicality." *Teva*, 302 F. Supp. at 505 (internal citation omitted). Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. As detailed below, Morone satisfies the typicality and adequacy requirements of Rule 23(a), thereby justifying his appointment as Lead Plaintiff for the Action.

#### i. Morone Satisfies the Typicality Requirement of Rule 23

The typicality requirement of Rule 23(a) is satisfied when (1) the claims of the proposed lead plaintiff arise from the same course of conduct that gives rise to the other purported class members' claims, (2) the claims are based on the same legal theory, and (3) the purported class members and proposed lead plaintiff were injured by the same conduct. *See, e.g.*, *Teva*, 302 F.

Supp. 3d at 505 ("The typicality requirement is satisfied by showing that each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.") (internal citation and quotation omitted).

Morone's claims are based on the same legal theory and arise out of the same course of events as the other purported class members' claims.  Morone made digital asset loans, as did each member of the proposed class, that he and members of the Classes would not have otherwise loaned or rolled over had they known Genesis Global Capital's true financial conditions, and was damaged thereby.  *See Marsch v. Rui Feng*, No. 12 Civ. 9456 (JSR), 2013 WL 3204193, at *2 (S.D.N.Y. June 13, 2013) (finding the typicality requirement met where movants' claims and injuries arose from the same conduct from which the other class members' claims and injuries arose).  Thus, Morone satisfies the typicality requirement of Rule 23(a).

### ii.     Morone Satisfies the Adequacy Requirement of Rule 23

Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4).  A lead plaintiff is adequate where it has retained counsel that is "qualified, experienced and generally able to conduct the litigation" and does not have interests that are "antagonistic" to the class that it seeks to represent.  *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 654 (S.D.N.Y. 2013) (citing *In re Drexel Burnham Lambert*, 960 F.2d 285, 291 (2d Cir. 1992)).  Here, Morone's interests are clearly aligned with the members of the proposed classes, and there is no evidence of any antagonism between Morone's interests and those of the classes.  Morone's claims raise similar questions of law and fact as claims of the members of the classes, and Morone's claims are typical of the members of the Classes.

Further, Morone has suffered substantial losses due to Defendants' alleged violation and therefore has a sufficient interest in the outcome of this case to ensure vigorous prosecution of the

action.  Moreover, Morone has demonstrated he is willing to serve as an advocate on behalf of the Classes.  Specifically, Morone has signed a Certification stating that he is willing to serve as and assume the responsibilities of a lead plaintiff and class representative.  *See* Crumbie Decl., Ex. A.  Additionally, Morone has retained competent and experienced counsel able to conduct this complex litigation in a professional manner.  Thus, the close alignment of interests between Morone and the Classes, combined with Morone's strong desire to prosecute these actions on behalf of the Classes, weighs in favor of granting the instant motion.

### B.     The Court Should Approve Morone's Selection of Lead Counsel for the Class

The Court should approve Morone's selection of Kaplan Fox to serve as Lead Counsel.  The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to this Court's approval.   *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also Teva*, 302 F. Supp. 3d at 506 ("There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel.") (internal citations and quotations omitted).  Courts should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the plaintiff class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa);  *Brday v. Frontier Commc'ns Corp.*, No. 3:17-CV-1617 (VAB), 2018 WL 525485, at *11 (D. Conn. Jan. 18, 2018) ("The Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice of counsel if necessary 'to protect the interests of the class.'") (internal citation omitted).

Morone has selected counsel highly experienced in prosecuting securities class actions to represent it.  Morone has retained the law firm of Kaplan Fox to serve as Lead Counsel.  Kaplan Fox has extensive experience litigating securities class actions and has successfully prosecuted numerous securities class actions on behalf of injured investors. A copy of Kaplan Fox's resume is attached as Exhibit B to the Crumbie Declaration.  Moreover, Kaplan Fox is among the

preeminent securities class action law firms in the country and has successfully prosecuted numerous securities class actions on behalf of injured investors.

## IV. CONCLUSION

For all of the foregoing reasons, Morone respectfully requests that the Court: (1) appoint Morone as Lead Plaintiff; (2) approve Morone's choice of Kaplan Fox as lead counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

Respectfully submitted,

By:    */s/ Andrew R. Crumbie*
       Andrew R. Crumbie

Andrew R. Crumbie (Fed. Bar No. ct27741)
CRUMBIE LAW GROUP LLC
100 Pearl Street, 12th Floor
Hartford, CT 06103
Telephone: (860) 725-0025
Facsimile: (860) 760-0308
Email: andrew@crumbielaw.com

*Liaison Counsel for Remo Maria Morone and Proposed Liaison Counsel for the Classes*

Donald R. Hall (*pro hac vice* to be filed)
Jeffrey P. Campisi (*pro hac vice* to be filed)
Jason A. Uris (*pro hac vice* to be filed)
KAPLAN FOX & KILSHEIMER LLP
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
Email: dhall@kaplanfox.com
       jcampisi@kaplanfox.com
       juris@kaplanfox.com

*Counsel for Remo Maria Morone and Proposed Lead Counsel for the Classes*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on March 24, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

             */s/ Andrew R. Crumbie*
              Andrew R. Crumbie