UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM MCGREEVY, ASHWIN GOWDA, TRANSLUNAR CRYPTO, LP, CHRISTOPHER BUTTENHAM, and ALEX SOPINKA, individually and on behalf of all others similarly situated, | No. 3:23-cv-00082-SRU <br><br> Hon. Stefan R. Underhill |
| *Plaintiffs*, | |
| v. | |
| DIGITAL CURRENCY GROUP, INC., and BARRY SILBERT, | |
| *Defendants.* | |

THE *McGREEVY* PLAINTIFF GROUP'S MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF
<u>SILVER GOLUB & TEITELL LLP AS LEAD COUNSEL</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

PROCEDURAL BACKGROUND........................................................................................ 5

ARGUMENT ....................................................................................................................... 6

I.      The *McGreevy* Plaintiff Group Should be Appointed Lead Plaintiffs................................. 6

      A.     The *McGreevy* Plaintiff Group Filed a Timely Motion for
Appointment as Lead Plaintiffs ................................................................. 6

      B.     The *McGreevy* Plaintiff Group Has Extensive Financial Interests ......................... 7

      C.     The *McGreevy* Plaintiff Group Satisfies the Typicality and Adequacy
Requirements of Rule 2 .............................................................................. 9

            i.     The *McGreevy* Plaintiff Group's Claims are Typical ................................ 10

            ii.     The *McGreevy* Plaintiff Group Will Fairly and Adequately
Protect the Interests of the Classes............................................................ 10

II.     SGT Should be Approved as Lead Counsel .................................................... 13

III.    CONCLUSION........................................................................................... 15

## **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                                                      <u>Page</u>

*Balestra v. ATBCOIN, LLC*
    380 F. Supp. 3d 340, 362 (S.D.N.Y. 2019)...................................................................9, 10

*Batte v. Hecla Mining Co.*,
    No. 19-CV-4883 (ALC), 2021 WL 516546 (S.D.N.Y. Feb. 11, 2021) ...........................13

*Batter v. Hecla Mining Co.*,
    No. 19-CV-05719 (ALC), 2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020) .......................13

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y.2011) ....................................................................................13

*Freeman ex rel. Tesla, Inc. v. Musk*,
    324 F.R.D. 73 (D. Del. 2018) ...........................................................................................6

*In re AllianzGI Structured Alpha Class Action Litigation*,
    No. 20-cv-7154 (S.D.N.Y.)..............................................................................................15

*In re Aratana Therapeutics Inc. Sec. Litig.*,
    No. 17 CIV. 1446 (PAE), 2017 WL 2491494 (S.D.N.Y. June 6, 2017) .....................7, 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)..............................................................................................10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ......................................................................................11

*Jackson v. Allianz Global Investors U.S. LLC*,
    Index No. 651233/2021 (N.Y.S.).....................................................................................14

*Khunt v. Alibaba Grp. Holding Ltd.*,
    102 F. Supp. 3d 523 (S.D.N.Y. 2015)..............................................................................13

*Kuebler v. Vectren Corp.*,
    2018 WL 8370052 (S.D. Ind. Aug. 10, 2018) ..................................................................6

*Kux-Kardos v. VimpelCom, Ltd.*,
    151 F. Supp. 3d 471 (S.D.N.Y. 2016)..............................................................................13

*Lax v. First Merchants Acceptance Corp.*,
    No. 97 Civ. 2715 (DHC), 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)...........................7

*Lee v. Binance*,
    No. 1:20-cv-02803-ALC, ECF No. 40 (S.D.N.Y. Aug. 26, 2020) ...................................11

*Perez v. HEXO Corp.*,
    No. 19 CIV. 10965 (NRB), 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020) ........................12

*Peters v. Jinkosolar Holding Co.*,
    1:11-cv-07133, 2012 U.S. Dist. LEXIS 38489 (S.D.N.Y. Mar. 19, 2012).......................12

*Risley v. Universal Navigation Inc.*,
    No. 1:22-cv-02780-KPF, ECF No. 40 (S.D.N.Y. July 29, 2022) .....................................11

*State Emps. Bargaining Coalition v. Rowland*,
    No. 03-CV-221 (D. Conn.) .............................................................................................15

*Sgalambo v. McKenzie*,
    268 F.R.D. 170 (S.D.N.Y. 2010) ...................................................................................10

*Underwood v. Coinbase Global Inc.*,
    No. 1:21-cv-08353-PAE, ECF No. 21 (S.D.N.Y. Jan. 11, 2022) ..............................11, 12

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)............................................................................11

Statutes:

Fed. R. Civ. P.   23.............................................................................................6, 9, 10, 13

Fed. R. Civ. P.   23(a)(3).......................................................................................................10

15 U.S.C. § 77e......................................................................................................................3

15 U.S.C. § 77k....................................................................................................................14

15 U.S.C. § 77l(a)(1)..............................................................................................................3

15 U.S.C. § 77l(a)(2)............................................................................................................14

15 U.S.C. § 77o............................................................................................................1, 3,14

15 U.S.C. § 77z-1(a)(3)(B) ..................................................................................................15

iii

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb) ...................................................................................9

15 U.S.C. § 77z-1(a)(3)(B)(v) .............................................................................................15

15 U.S.C. § 78u-4(a)(3)(B) .................................................................................................15

15 U.S.C. § 78u-4(a)(3)(B)(2) .............................................................................................15

15 U.S.C. § 78u-4(a)(3)(B)(i) ...............................................................................................1

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) .......................................................................................11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ..................................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(v) .............................................................................................15

15 U.S.C. § 78u-4(a)(3)(B)(v)(3) .........................................................................................15

15 U.S.C. § 78j(b) .........................................................................................................1, 4, 5

15 U.S.C. § 78t(a) .............................................................................................................1, 5

Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4(a)(3)(B)(i), Plaintiffs William McGreevy, Ashwin Gowda, Translunar Crypto, LP, Christopher Buttenham, and Alex Sopinka (collectively, the "*McGreevy* Plaintiff Group") respectfully submit this memorandum of law in support of their motion for appointment as lead plaintiffs and approval of their selection of Silver Golub & Teitell LLP ("SGT" or "Counsel") as lead counsel (the "Motion").

## INTRODUCTION

This case is a securities class action against Digital Currency Group, Inc. ("DCG") and Barry Silbert ("Silbert" and collectively with DCG, "Defendants"), who at all relevant times controlled DCG subsidiary Genesis Global Capital, LLC ("Genesis Global Capital" or "GGC").

Defendants created, owned, controlled, and managed GGC's digital asset borrowing and lending business. As alleged in the Complaint, at the direction and subject to the control of Defendants, GGC violated the federal securities laws by: (1) engaging in the promotion, offer, and sale of unregistered securities without qualifying for an exemption from registration; and (2) by intentionally and/or recklessly employing a device, scheme, or artifice to defraud and/or making materially false representations, including, but not limited to, representations in documents circulated to all GGC lenders and their agents describing Genesis Global Capital's financial conditions.

Defendants are jointly and severally liable for GGC's violations of the federal securities laws as control persons pursuant to Section 5, Section 12(a)(1) and Section 15 of the Securities Act, 15 U.S.C. § 77o, as well as pursuant Section 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), by virtue of their power over GGC and authority to direct the management and activities of GGC and its employees, which Defendants exercised to cause GGC to engage in the wrongful conduct alleged in the Complaint.

The *McGreevy* Plaintiff Group is the most adequate plaintiff group to represent the Classes in this litigation. The *McGreevy* Plaintiff Group initiated this action as a group after substantial pre-suit efforts and investigation undertaken together with each other and with its selected counsel, filed the first Complaint against Defendants for the conduct alleged herein, and, to the *McGreevy* Plaintiff Group's knowledge, there are no other individuals, groups, or entities willing to serve as lead plaintiff with larger financial losses and a greater financial interest.

For these reasons the *McGreevy* Plaintiff Group respectfully requests that the Court: (a) appoint William McGreevy, Ashwin Gowda, Translunar Crypto, LP, Christopher Buttenham, and Alex Sopinka as Lead Plaintiffs; and (b) approve their selection of Silver Golub & Teitell LLP as lead counsel.

## **FACTUAL BACKGROUND**

Defendant DCG is the parent entity of a corporate conglomerate which includes GGC. At all times alleged herein DCG owned 100% of GGC. *See Complaint,* Dkt. No. 1 ("Complaint" or "Compl.") ¶ 1.

Defendant Barry Silbert is the founder of DCG, GGC, and several other DCG subsidiary companies. Silbert is the controlling shareholder of DCG (owning 40%), chief executive officer of DCG, and chairman of DCG's board of directors. *See id.*  ¶¶ 3-4.

GGC ran a digital asset borrowing and lending business. It borrowed digital assets from customers such as Plaintiffs and members of the Classes via agreements sometimes styled "Master Digital Asset Loan Agreement(s)" (the "MDAL Agreement") and other times called "Master Borrow Agreement(s)" (collectively, the "Lending Agreements").  GGC then pooled the borrowed digital assets and, at the direction of DCG and Barry Silbert, deployed them pursuant to certain strategies designed to generate revenue for the DCG conglomerate and Silbert and to pay lenders interest. *See id.*  ¶¶ 5-6.

2

GGC borrowed from two types of investors: (1) entities and other "sophisticated" investors that could meet the loan minimums GGC required to lend directly to GGC; and (2) Gemini Earn program participants who chose to make loans to GGC from the assets they held on the Gemini digital asset trading platform. *See id.* ¶ 76.

As offered and sold, GGC's Lending Agreements met the definition of investment contracts and notes under the federal securities laws, including the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77e, 77*l*(a)(1), 77o. *See id.* ¶ 9. Despite this, subject to the direction and control of DCG and Silbert, GGC did not register the Lending Agreements with the U.S. Securities & Exchange Commission as required, and no applicable exemption from registration applied to the offering of the Lending Agreements. *See id.* ¶ 10.

In late June 2022, hedge fund Three Arrows Capital ("3AC") defaulted on over $2 billion in loans made to it by GGC. On July 1, 2022, 3AC filed for bankruptcy protection with $1.1 billion still owed to GGC and few assets remaining. GGC should have recognized an impairment on their balance sheet equal to the $1.1 billion in loans outstanding to 3AC, but this would have rendered GGC insolvent, putting it out of business and cutting off Defendants' source of inexpensive capital. *See id.* ¶¶ 14-15.

Instead, Defendants directed and caused GGC to engage in a sham transaction designed to conceal GGC's insolvency. The "terms" of this sham transaction were that Genesis Global Capital "sold" an uncollectable $1.1 billion debt to DCG in exchange for a 10-year promissory note (the "DCG Promissory Note") with an interest rate of 1% per year due in 2032. *See id.* ¶ 17.

At DCG's and Silbert's direction, GGC misleadingly included the $1.1 billion amount of the DCG Promissory Note on its balance sheet as a current asset and/or receivable (meaning it

could be sold for cash within one year) and told prospective customers that they were operating "business as usual", which falsely portrayed Genesis Global Capital as solvent when, in fact, it was insolvent. *See Id.* ¶ 18.

GGC circulated balance sheets and other documents containing misrepresentations as to its solvency to Plaintiffs, members of the Classes, and their agent in order to induce the parties to continue to loan Genesis Global Capital digital assets and/or to prevent them from requesting redemptions of their loans. Additionally, GGC continued to represent and warrant, via the Lending Agreements, that it was in fact solvent. Meaning that GGC represented in *every lending transaction it executed* from July 1, 2022 forward that it was, in fact, solvent, when it was not. *See Id.* ¶ 19.

GGC's misrepresentations and omissions concerning GGC's solvency, made at the direction and subject to the control of Defendants, violated of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, codified at 17 CFR 240.10b-5, which prohibit defrauding or deceiving, including through misrepresentation of material information, someone in connection with the purchase or sale of security. *See Id.* ¶ 21.

In November 2022 a loss of confidence in digital asset markets caused GGC to experience a slew of withdrawal requests it could not honor because it lacked adequate funds. As a result, GGC suspended redemption requests on November 16, 2022, causing billions of dollars in losses to Plaintiffs and members of the Classes in the form of uncollectable loans balances. *See id.* ¶¶ 25-26.

The following is a breakdown of the losses incurred by each member of the *McGreevy* Plaintiff Group:

| Plaintiff | Losses |
|---|---|
| William McGreevy | $305,367.46 |
| Ashwin Gowda | $631,290.89 |
| Translunar Crypto, LP | $7,487,653.22 |
| Christopher Buttenham | $253,794.70 |
| Alex Sopinka | $120,065.09 |
| TOTAL | $8,798,171.36 |

To the best of the *McGreevy* Plaintiff Group's knowledge, as of the filing of this motion, there are no individuals, groups, or entities willing to serve as lead plaintiff with a larger financial interest than *McGreevy* Plaintiff Group member Translunar Crypto, LP, nor is there any group whose financial interest cumulatively exceeds that of the *McGreevy* Plaintiff Group's in total.

## **PROCEDURAL BACKGROUND**

Plaintiffs William McGreevy, Ashwin Gowda, Translunar Crypto, LP, Christopher Buttenham, and Alex Sopinka filed the Complaint against Defendants on January 23, 2023 seeking relief on behalf of themselves and the proposed Classes, for the injuries they have sustained as a result of Defendants' unlawful sale of unregistered securities, in violation of Section 5 and 12(a)(1) of the Securities Act, and fraud in connection with the sale or purchase of securities, in violation of Section 10(b) of the 1934 Exchange Act and Rule 10b-5 promulgated thereunder pursuant to Section 15 of the Securities Act and Section 20(a) of the Exchange Act.

Also on January 23, 2023, the *McGreevy* Plaintiff Group published the requisite PSLRA notice through PR Newswire. *See* Declaration of Ian W. Sloss ("Sloss Decl."), Ex. A (PSLRA Notice).

On March 24, 2023, the *McGreevy* Plaintiff Group timely filed this Motion seeking appointment as lead plaintiffs and approval of Silver Golub & Teitell LLP as lead counsel.

## ARGUMENT

I.     **The *McGreevy* Plaintiff Group Should be Appointed Lead Plaintiffs**

    **A.  The McGreevy Plaintiff Group Filed a Timely Motion for Appointment as Lead Plaintiffs**

On January 23, 2023, the *McGreevy* Plaintiff Group filed the Complaint in this Action. Also, on January 23, 2023, the *McGreevy* Plaintiff Group, through their counsel, caused to be published the requisite PSLRA notice through PR Newswire. Sloss Decl., Ex. A (PSLRA Notice). On March 24, 2023, the *McGreevy* Plaintiff Group timely filed this Motion seeking appointment as lead plaintiffs and approval of Silver Golub & Teitell LLP as lead counsel.

Although not dispositive, the *McGreevy* Plaintiff Group's first-to-file Complaint status should be accorded weight where the claims were the product of substantial pre-suit investigation and no other complaint with matching detail and claims has been filed. *See Kuebler v. Vectren Corp.*, 2018 WL 8370052, at *2 (S.D. Ind. Aug. 10, 2018) (proposed lead plaintiff group "vigorously prosecuted the interests of the class: it was the first to file a complaint, publish the necessary notice, and move for a preliminary injunction. This is enough to show that the [plaintiff group] has satisfied the threshold requirements of Rule 23"); *Freeman ex rel. Tesla, Inc. v. Musk*, 324 F.R.D. 73, 84-85 (D. Del. 2018) (where proposed lead plaintiffs "were the first to 'identify, draft, and file [the] federal claims,'" court observed that such "efforts to identify and bring these federal claims says something about the work that they are willing to put in to seek legal redress on behalf of the corporation and its shareholders"). Here, the *McGreevy* Plaintiff Group and its selected counsel Silver Golub & Teitell LLP have invested substantial time in pre-suit investigation and analysis and bringing the instant claims through the filing of the Complaint.

**B.  The McGreevy Plaintiff Group Has Extensive Financial Interests**

The PSLRA does not specify a method for calculating who has the "largest financial interest," but courts in this Circuit commonly look to the four factors set forth in *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715 (DHC), 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997), in making this determination: "(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered." *In re Aratana Therapeutics Inc. Sec. Litig.*, No. 17 CIV. 1446 (PAE), 2017 WL 2491494, at *3 (S.D.N.Y. June 6, 2017). Courts have "consistently held that the fourth, the magnitude of the loss suffered, is most significant." *Id.*

Based on each and all of these factors, and as set forth below and in the accompanying Declaration of Ian W. Sloss, the *McGreevy* Plaintiff Group has incurred extensive losses and possess the "largest financial interest" in the litigation. *See* Sloss Decl., Ex(s) B-G.

*First*, as the Plaintiffs' certifications show, the *McGreevy* Plaintiff Group deposited and loaned a total of 1,834,813.83 digital asset units to GGC during the Class Period.

| Plaintiff | No. of Units Deposited & Loaned (Gross) |
|---|---|
| William McGreevy | 752,870.81 |
| Ashwin Gowda | 607,069.51 |
| Translunar Crypto, LP | 1,580.00 |
| Christopher Buttenham | 240,000.35 |
| Alex Sopinka | 233,293.16 |
| TOTAL | 1,834,813.83 |

*See id*.

7

*Second*, on a net basis (that is, the total number of units deposited and loaned *less* redemptions), the *McGreevy* Plaintiff Group deposited and loaned 1,227,924.75 digital asset units to GGC during the Class Period, summarized as follows:

| Plaintiff | No. of Units Deposited & Loaned (Net) |
|---|---|
| William McGreevy | 174,173.69 |
| Ashwin Gowda | 606,069.51 |
| Translunar Crypto, LP | 1,580.00 |
| Christopher Buttenham | 240,000.00 |
| Alex Sopinka | 206,101.55 |
| Total | 1,227,924.75 |

*See id.*

*Third*, the *McGreevy* Plaintiff Group expended a net total (that is, the U.S. dollar value of digital assets deposited and loaned *less* redemption) of $7,045,517.35 depositing and loaning digital assets to GGC (valued as of the loan and redemption dates), summarized as follows:

| Plaintiff | Amount Expended in US Dollars (Net) |
|---|---|
| William McGreevy | $262,638.82 |
| Ashwin Gowda | $608,157.13 |
| Translunar Crypto, LP | $5,802,667.51 |
| Christopher Buttenham | $240,676.82 |
| Alex Sopinka | $131,377.07 |
| Total | $7,045,517.35 |

*See id.*

*Fourth*, as a result of Plaintiffs' inability to redeem their digital assets in connection with the deposits and loans to GGC outstanding as of November 16, 2022, the *McGreevy* Plaintiff Group suffered a total loss of $8,798,171.36 (valued as of March 20, 2023) based on Defendants' misconduct, summarized as follows:

| Plaintiff | Approximate Loss |
|---|---|
| William McGreevy | $305,367.46 |
| Ashwin Gowda | $631,290.89 |
| Translunar Crypto, LP | $7,487,653.22 |
| Christopher Buttenham | $253,794.70 |
| Alex Sopinka | $120,065.09 |
| Total | $8,798,171.36 |

*See id.*

The *McGreevy* Plaintiff Group is unaware of any lead plaintiff movant with a greater financial loss. *See Balestra v. ATBCOIN, LLC*, 380 F. Supp. 3d 340, 361 (S.D.N.Y. 2019) (appointing lead plaintiff who "had incurred losses of approximately $1,422.99 in connection with his purchase of ATB Coins during the Class Period ... has the largest financial interest of any class member seeking appointment as lead plaintiff, and ... is aware of no other class member with a larger financial interest"). The *McGreevy* Plaintiff Group thus believe they possesses the largest financial interest in the outcome of this litigation and, therefore, it may be presumed to be the "most adequate" plaintiff. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(bb) and 78u-4(a)(3)(B)(iii)(I)(bb).

### C.  The McGreevy Plaintiff Group Satisfies the Typicality and Adequacy Requirements of Rule 23

"In making the determination of whether a movant otherwise satisfies the requirements of Rule 23, the movant must make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *Salinger v. Sarepta Therapeutics, Inc., 2019 WL 6873807, at *3 (internal quotation marks omitted).* "This determination need not be as complete as would a similar determination for the purpose of class certification, and the movant is only required to make a *prima facie* showing that it meets the typicality and adequacy requirements." *Id.* (internal quotation marks and citations omitted).

### i.  The *McGreevy* Plaintiff Group's Claims are Typical

Rule 23(a)(3) requires that the claims or defenses of the representative party be typical of those of the class. This is satisfied where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Aratana Therapeutics Inc. Sec. Litig.*, No. 17 CIV. 1446 (PAE), 2017 WL 2491494, at *4 (S.D.N.Y. June 6, 2017) (quoting *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y. 2010)). "While the claims need not be identical, the claims of the proposed lead plaintiff must be substantially similar to the other members' claims." *Balestra v. ATBCOIN*, 380 F. Supp. 3d 340, 362 (S.D.N.Y. 2019).

The *McGreevy* Plaintiff Group satisfies this requirement. Like every member of the Classes, the *McGreevy* Plaintiff Group (1) loaned digital assets to GGC directly or via the Gemini Earn program; (2) loaned digital assets to GGC based on Defendants' alleged misconduct; and (3) suffered damages thereby. The *McGreevy* Plaintiff Group's claims are typical of those of other class members since their claims and the claims of other class members arise out of and are based on the same course of conduct and events, and are based on the same legal theories.

### ii.  The *McGreevy* Plaintiff Group Will Fairly and Adequately Protect the Interests of the Classes

The *McGreevy* Plaintiff Group likewise satisfies the adequacy requirement of Rule 23. In assessing adequacy, courts consider whether (1) the plaintiff has interests in common with, and not antagonistic to, the interests of the class; and (2) the plaintiff's attorneys are qualified, experienced and able to conduct the litigation. *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).

The *McGreevy* Plaintiff Group has made a sufficient showing that it is adequate under Rule 23. The PSLRA expressly permits a "group of persons" to be appointed lead plaintiff, and courts have recognized the value of groups of individuals serving as lead plaintiffs. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I); *see also, In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998). Courts routinely approve coalitions of individuals of comparable size to the *McGreevy* Plaintiff Group to serve as lead plaintiffs in securities class actions involving digital assets. *See, e.g., Lee v. Binance*, No. 1:20-cv-02803-ALC, ECF No. 40 (S.D.N.Y. Aug. 26, 2020) (approving a group of eight lead plaintiffs, including seven individuals—six of whom joined the action after it was initially filed—in securities class action against crypto-asset exchange); *Underwood v. Coinbase Global Inc.*, No. 1:21-cv-08353-PAE, ECF No. 21 at *7-8 (S.D.N.Y. Jan 11, 2022) (approving a group of three individuals—one of whom joined after the action was initially filed—to serve as lead plaintiffs in securities class action against crypto-asset exchange); *Risley v. Universal Navigation Inc.*, No. 1:22-cv-02780-KPF, ECF No. 40 (S.D.N.Y. July 29, 2022) (approving a group of six individuals as lead plaintiffs—five of whom joined the action after it was filed—in a securities class action against a so-called decentralized crypto-asset exchange).

Courts employ a set of considerations specifically aimed at determining whether "unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers" to evaluate the suitability of *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). These factors include, "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Id.* (citations

omitted). Similar factors were reiterated by a court in this Circuit in a recent crypto asset

securities class action case. *Underwood*, No. 1:21-cv-08353-PAE, ECF No. 21, at *7 (describing

the factors a court is to consider when ascertaining whether a lead plaintiff group is appropriate

as, "(1) the size of the group; (2) the relationship between the parties; and (3) any evidence that

the group was formed in bad faith.") (quoting *Peters v. Jinkosolar Holding Co.*, 1:11-cv-07133,

2012 U.S. Dist. LEXIS 38489, at *7 (S.D.N.Y. Mar. 19, 2012)).

      The *McGreevy* Plaintiff Group is a small, cohesive group consisting of just five members

that have already demonstrated the ability to work together via pre-suit investigation, initiation of

this action, and this motion. *See Peters*, 2012 WL 946875 at *7 ("[C]ourts appear to generally

agree that a group comprising five or fewer members is appropriate."). As indicated in their

respective certifications, each member of the *McGreevy* Plaintiff Group is knowledgeable about

the litigation, understands the responsibilities of being a lead plaintiff, is committed to working

together cohesively and with SGT as Lead Counsel to actively prosecute the case, has

established procedures to oversee the litigation and address any potential disagreements among

fellow lead plaintiffs, and will otherwise fairly and adequately protect the interests of the class.

Thus, the *McGreevy* Plaintiff Group members have made a proper evidentiary showing of their

ability to work cohesively and to serve as Lead Plaintiff. *See, e.g.*, *Perez v. HEXO Corp.*, No. 19

CIV. 10965 (NRB), 2020 WL 905753, at *3-4 (S.D.N.Y. Feb. 25, 2020) (appointing a group of

investors that submitted joint declaration demonstrating its ability to cohesively and proactively

represent the class).

      The *McGreevy* Plaintiff Group and its counsel believe that their interests do not conflict

with the interests of other class members. In fact, as discussed above, the interest of the

*McGreevy* Plaintiff Group and other class members are aligned because each class member

loaned assets to GGC in reliance on the misrepresentations or omissions described above.

Moreover, the *McGreevy* Plaintiff Group has demonstrated its adequacy through its selection of

Silver Golub & Teitell LLP as Lead Counsel to represent the class. As discussed more fully

below, Silver Golub & Teitell LLP is qualified and experienced in the area of securities and

financial fraud litigation and has demonstrated an ability to conduct complex securities class

action litigation effectively and efficiently. Accordingly, the *McGreevy* Plaintiff Group has made

the requisite showing that it satisfies the typicality and adequacy requirements of Rule 23. The

Court should therefore appoint the *McGreevy* Plaintiff Group, and specifically William

McGreevy, Ashwin Gowda, Translunar Crypto, LP, Christopher Buttenham, and Alex Sopinka,

as Lead Plaintiffs.

## II.     SGT Should be Approved as Lead Counsel

"The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to

approval by the Court." *Batter v. Hecla Mining Co.*, No. 19-CV-05719 (ALC), 2020 WL

1444934, at *9 (S.D.N.Y. Mar. 25, 2020), *reconsideration denied sub nom. Batte v. Hecla*

*Mining Co.*, No. 19-CV-4883 (ALC), 2021 WL 516546 (S.D.N.Y. Feb. 11, 2021) (quoting

*Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 540 (S.D.N.Y. 2015). Courts approve

the selection of counsel who are "qualified, experienced, and generally able to conduct the

litigation." *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 477 (S.D.N.Y. 2016) (quoting

*Foley v. Transocean Ltd.,* 272 F.R.D. 126, 131 (S.D.N.Y.2011) (approving firm that "appears to

be competent and experienced counsel, based on its past experience in securities fraud class

actions").

The *McGreevy* Plaintiff Group has selected and retained the law firm of Silver Golub &

Teitell LLP, a plaintiffs' firm with a forty-five-year track record of success representing

plaintiffs in complex litigation. Founded in 1978, SGT undertook its first class action in 1983, serving as class counsel in an ERISA action that obtained additional pension benefits for more than 40,000 Xerox Corporation pensioners. SGT is well qualified to represent the *McGreevy* Plaintiff Group and members of the Classes here. *See* Silver Golub & Teitell LLP's Firm Resume (attached as Exhibit H to the Sloss Decl.).

As just one recent example, SGT recently concluded representation of mutual fund and private hedge fund investors harmed by a multi-billion dollar, long-running fraud involving perpetrated by Allianz Global Investors U.S. LLC's Structured Products Group. On March 9, 2023, Hon. Andrew Borrok of the New York Supreme Court, Commercial Division gave final approval to a $145 settlement SGT achieved on behalf of investors in four of the Structured Alpha mutual funds (the "AllianzGI Mutual Fund Settlement") alleging violations of Section 11 of the of the Securities Act, 15 U.S.C. § 77k, Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), and Section 15 of the Securities Act, 15 U.S.C. § 77o. *See Jackson v. Allianz Global Investors U.S. LLC*, Index No. 651233/2021 (N.Y.S.). The AllianzGI Mutual Fund Settlement amount represents an extraordinary recovery of over 60% of the estimated losses incurred by the putative class.

Prior to the AllianzGI Mutual Fund Settlement, SGT served as court-appointed co-class counsel for a putative class of institutional AllianzGI Structured Alpha private hedge fund investors alleging billions in losses. U.S. District Judge Katharine P. Failla denied AllianzGI's motion to dismiss in substantial part in September 2021.  Ultimately, AllianzGI and the class representatives, as well as a series of investors who had instituted parallel individual actions and other investors in the Structured Alpha hedge funds (including investors represented by SGT),

entered into settlement agreements on confidential terms in 2022. *See, e.g., In re AllianzGI Structured Alpha Class Action Litigation*, No. 20-cv-7154 (S.D.N.Y.).

Other notable representations of SGT include serving as lead private counsel for the State of Connecticut in its action against the tobacco industry, recovering almost $4 billion for the State and including a $350 million award in specific recognition that Connecticut's SGT-led contribution was in the top 5 of the over 50 states and entities involved, a $250 million recovery as court-appointed lead counsel for a class of more than 40,000 unionized Connecticut employees alleging that the firing of over 3,000 union members violated the union's and its members' First Amendment rights of free speech and free association, *See State Emps. Bargaining Coalition v. Rowland*, No. 03-CV-221 (D. Conn.), and a 1994 False Claims Act ("FCA") whistleblower award of $150 million, at the time the largest-ever award recovered in an FCA action, against United Technologies Corporation which settled for $150 million.

Accordingly, the Court should approve the *McGreevy* Plaintiff Group's selection of Silver Golub & Teitell as Lead Counsel for the Classes.

## III.   CONCLUSION

For the foregoing reasons, the *McGreevy* Plaintiff Group respectfully requests that this Court: (1) appoint the *McGreevy* Plaintiff Group, and specifically William McGreevy, Ashwin Gowda, Translunar Crypto, LP, Christopher Buttenham, and Alex Sopinka, as Lead Plaintiffs pursuant to 15 U.S.C. §§ 77z-1(a)(3)(B) and 78u-4(a)(3)(B); and (2) approve the *McGreevy* Plaintiff Group's selection of Silver Golub & Teitell LLP as Lead Counsel pursuant to 15 U.S.C. §§ 77z- 1(a)(3)(B)(v) and 78u-4(a)(3)(B)(v); and (3) grant such other and further relief as the Court may deem just and proper.

DATED:        March 24, 2023                    Respectfully submitted,

                                                SILVER GOLUB & TEITELL LLP

                                                /s/ Ian W. Sloss
                                                Ian W. Sloss
                                                Steven L. Bloch
                                                Zachary A. Rynar
                                                One Landmark Square, Floor 15
                                                Stamford, Connecticut 06901
                                                Tel.: (203) 325-4491
                                                Fax: (203) 325-3791

                                                *Counsel for William McGreevy, Ashwin
                                                Gowda, Translunar Crypto, LP, Christopher
                                                Buttenham, and Alex Sopinka*