UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM MCGREEVY, ASHWIN GOWDA,
TRANSLUNAR CRYPTO, LP, CHRISTOPHER
BUTTENHAM, and ALEX SOPINKA,
individually and on behalf of all others similar
situated,

               Plaintiffs,

v.

DIGITAL CURRENCY GROUP, INC.,
and BARRY SILBERT,

               Defendants.

No. 3:23-cv-00082-SRU

Hon. Stefan R. Underhill

PROPOSED LEAD PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION
FOR PARTIAL MODIFICATION OF THE PSLRA DISCOVERY STAY

TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................... ii

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................... 4

III.    ARGUMENT ...................................................................................................... 9

        A.      Legal Standard ........................................................................................9

        B.      Plaintiffs Will Be Unduly Prejudiced If the Court Does Not Partially Lift
                the Discovery Stay ................................................................................11

        C.      The Requested Discovery Is "Particularized"......................................15

        D.      There Is No Burden on Defendants .......................................................16

IV.     CONCLUSION................................................................................................. 18

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                                                               <u>Page</u>

*In re Bank of Am. Corp. Sec., Derivative, &*
    *Emp. Ret. Income Sec. Act (ERISA) Litig.,*
    *No. 09 MDL 2058 (DC)*, 2009 WL 4796169
    (S.D.N.Y. Nov. 19, 2009) ............................................................................3, 9, 10, 14, 15

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
    No. 05-MD-1725 (GER), 2007 WL 518626
    (E.D. Mich. Feb. 15, 2007) .......................................................................3, 10, 11, 12, 14

*In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*,
    No. H-01-3624, 2002 WL 31845114
    (S.D. Tex. Aug. 16, 2002) ........................................................................................9, 14, 15

*In re FirstEnergy Corp. Sec. Litig.*,
    229 F.R.D. 541 (N.D. Ohio 2004) ...........................................................................10, 14, 15

*In re: Genesis Global Holdco, LLC, et al.*,
    Case No. 23-10063 (2023) ......................................................................................................1

*In re Lernout & Hauspie Sec. Litig.*,
    214 F. Supp. 2d 100 (D. Mass. 2002) ..................................................................................10

*In re Massey Energy Co. Sec. Litig.*,
    No. CIV.A. 5:10-0689, 2011 WL 4528509
    (S.D.W. Va. Sept. 28, 2011) .................................................................................................11

*In re Metro. Sec. Litig.*,
    No. CV-04-25-FVS, 2005 WL 940898
    (E.D. Wash. Mar. 31, 2005)........................................................................................8, 13, 15

*In re Tyco Int'l, Ltd. Multidistrict Litig.,*
    No. MDL NO. 02-1335-B, 2003 WL 23830479
    (D.N.H. Jan. 29, 2003) ....................................................................................................10, 15

*In re WorldCom, Inc. Sec. Litig.*,
    234 F. Supp. 2d 301 (S.D.N.Y. 2002)......................................................................................9, 14

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
    No. 14-11191, 2015 WL 1565462
    (E.D. Mich. Apr. 8, 2015) ......................................................................................3, 10, 11

*Pension Fund Trust for Operating Eng'rs v. Assisted Living Concepts, Inc.*,
   943 F. Supp. 2d 913 (E.D. Wis. 2013) ............................................................................16

*Singer v. Nicor, Inc.*,
   No. 02 C 5168, 2003 WL 22013905
   (N.D. Ill. Apr. 23, 2003) .................................................................................................11

*Waldman v. Wachovia*,
   No. 08 CIV 2913 (SAS), 2009 WL 86763
   (S.D.N.Y. Jan. 12, 2009) ................................................................................................16

*Westchester Putnam Heavy & Highway Laborers Local
   60 Benefit Funds v. Sadia S.A.*,
   No. 08 Civ. 9528(SAS), 2009 WL 1285845
   (S.D.N.Y. May 8, 2009) ..................................................................................................10

Statutes and Other Authorities:

15 U.S.C. § 78u-4(b)(3)(B) ........................................................................................................8

H.R. Conf. Rep. No. 104-369 (1995) .........................................................................................9

S. Rep. No. 104-98 (1995) ..........................................................................................................9

## I.     PRELIMINARY STATEMENT

In January 2023, digital asset lenders William McGreevy, Ashwin Gowda, Translunar Crypto, LP, and Christopher Buttenham[1] (collectively, "Proposed Lead Plaintiffs"), along with Alex Sopinka, initiated this action against defendants Digital Currency Group ("DCG") and Barry Silbert ("Silbert" and collectively with DCG, "Defendants")), alleging liability as Control Persons for violations of federal securities laws (the "Action"). Proposed Lead Plaintiffs seek damages resulting from transactions with Defendant-controlled subsidiary Genesis Global Capital, Inc. ("GGC") during the Class Period (February 2, 2021 to November 16, 2022). Proposed Lead Plaintiffs claims are currently subject to a stay of discovery under the Private Securities Litigation Reform Act ("PSLRA"), but the PSLRA discovery stay is not absolute, and explicitly allows for the stay to be lifted (which courts routinely do) upon a showing that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to the Class.  As set forth below, the facts here warrant a partial lifting of the PSLRA discovery stay to protect the rights of Proposed Lead Plaintiffs and preserve their ability to prosecute this Action.

On January 19, 2023, GGC, along with affiliates Genesis Global Holdco ("GGH") and Genesis Asia Pacific PTE. LTD. ("GAP") (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York, which are now jointly administered under the caption *In re: Genesis Global*

---

[1] Plaintiffs William McGreevy, Ashwin Gowda, Translunar Crypto, LP, and Christopher Buttenham were joined in their initial Complaint (ECF No. 1) by Plaintiff Alex Sopinka. On March 24, 2023 Plaintiffs McGreevy, Gowda, Translunar Crypto, Buttenham, and Sopinka filed a *Motion for Appointment as Lead Plaintiffs and Approval of Selection of Lead Counsel* (ECF No. 35-38) seeking appointment as co-lead plaintiffs and approval of their selection of Silver Golub & Teitell LLP as lead counsel for the putative Classes. Remo Maria Morone contemporaneously filed his own motion seeking appointment as lead plaintiff and for his counsel, Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") to be appointed lead counsel (ECF No. 34). The parties subsequently conferred and agreed to jointly seek appointment as co-lead plaintiffs (and appointment of both firms as co-lead counsel) with Mr. Morone substituted in place of plaintiff Alex Sopinka. *See* ECF No. 39. Mr. Morone does not join in this motion solely because the Court is yet to rule on the joint request for appointment.

*Holdco, LLC, et al.*, Case No. 23-10063 (the "Genesis Bankruptcy").  As outlined below, before and

during the Genesis Bankruptcy, Defendants and GGC have produced documents and information to

certain committees to accelerate the resolution of the Genesis Bankruptcy.  In particular, since at

least January 2023 the Debtors, GTC and the Official Committee of the Unsecured Creditors of the

Debtors (the "UCC") of Genesis have been engaged in negotiations and the exchange of documents

and information, and the UCC has obtained and reviewed 20,000 records from Genesis and other

related parties, including the Defendants.  In February 2023, GTC and Genesis filed a term sheet

outlining a proposed resolution of claims in the Genesis Bankruptcy, which includes broad proposed

releases, including the release of the claims asserted by Proposed Lead Plaintiffs on behalf of

themselves and the proposed Classes in this Action.  Deadlines which impact the rights of the

Proposed Lead Plaintiffs and the proposed Classes are rapidly approaching, given that the bar date

for proposed claims in the Genesis Bankruptcy is May 22, 2023 and an auction of the Debtors' assets

is scheduled for June 27, 2023.  In addition, the U.S. Securities and Exchange Commission ("SEC")

filed an enforcement action against GGC and Gemini Trust Company, LLC ("GTC") alleging that

the lending agreements GGC and GTC entered into with the majority of the Proposed Lead Plaintiffs

and members of the putative Classes out of which this Action arises in large part, constituted an

unregistered offering and sales of securities.  Upon information and belief, documents and

information have also been provided to the SEC in connection that, as well as investigations initiated

by other regulators.

　　　　In contrast, Proposed Lead Plaintiffs, unlike other interested parties, have not had access

to these crucial documents, which are necessary to enable Proposed Lead Plaintiffs to make

informed decisions about their litigation strategy in the rapidly moving bankruptcy proceeding and

its impact on the claims in this Action.  Indeed, these documents "form the core of their

proceedings," but Proposed Lead Plaintiffs are the only interested party who have not been able to review them.  Accordingly, Proposed Lead Plaintiffs move the court for partial relief from the discovery stay under the PSLRA to obtain the following documents that have already been collected and produced: (1) documents and information to the UCC by Defendants DCG and Silbert, and other parties as part of their Genesis Bankruptcy negotiations with the UCC over a sweeping plan of reorganization which proposes to  broadly release Defendants, GGC, and other parties from liability, including the claims in this Action; (2) documents and information provided by Defendants to the two ad hoc creditor committees (the "Ad Hoc Committees") with whom Defendants engaged in prepetition negotiations; and (3) documents and information, if any, provided by DCG and Silbert to government regulators, including the SEC in connection with government regulator investigations or enforcement actions. Proposed Lead Plaintiffs' requested documents are particularized and without this relief they will suffer undue prejudice.

"Courts have found undue prejudice where plaintiffs would be unable to make informed decisions about their litigation strategy in a rapidly shifting landscape because they are the only major interested party without documents forming the core of their proceedings."  *Bank of Am.*, 2009 WL 4796169, at *2 (citation omitted);[2] *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, No. Civ. 14-11191, 2015 WL 1565462, at *3 (E.D. Mich. Apr. 8, 2015) ("Undue prejudice has been found where the plaintiff lacks access to documents already produced to governmental and other agencies and in other lawsuits").  Proposed Lead Plaintiffs require these documents to make informed decisions about their litigation strategy in the rapidly moving Genesis Bankruptcy and its impact on the claims in this Action, given that, *inter alia*, Defendants are seeking broad releases for their conduct via the Genesis Bankruptcy.

---

[2] All internal citations and quotations omitted and emphasis added unless otherwise stated.

Further, the information Proposed Lead Plaintiffs seek—*i.e.*, documents already produced and created in related pending proceedings—is sufficiently particularized. *See In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, No. 05-MD-1725 (GER), 2007 WL 518626, at *6 (E.D. Mich. Feb. 15, 2007) ("Lead Plaintiffs have adequately specified the target of the requested discovery" because they "only request the production of materials that have already been assembled and produced"). Obtaining this targeted set of documents and information now will enable Proposed Lead Plaintiffs to protect and preserve their rights in, and more promptly and efficiently prosecute, this Action.

Finally, providing the requested documents to Proposed Lead Plaintiffs will impose little-to-no burden on Defendants, as the documents have already been collected and reviewed by Defendants and produced to numerous parties. *See Bank of Am.*, 2009 WL 4796169, at *3 ("[defendants] have already collected, reviewed, and organized the documents for production in other proceedings, and the burden of making another copy for plaintiffs here will be slight").

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Proposed Lead Plaintiffs William McGreevy, Ashwin Gowda, Translunar Crypto, LP, and Christopher Buttenham, who entered into digital asset loan transactions with Defendant-controlled subsidiary GGC during the Class Period (February 2, 2021 to November 16, 2022), initiated the Action against Defendants based on their liability as Control Persons under federal securities laws. Proposed Lead Plaintiffs seek damages on behalf of themselves and proposed Classes of similarly situated lenders resulting from the loan transactions with GGC. *See* Complaint, (ECF No. 1), ¶ 1.[3]

GGC, under the direction and control of Defendants DCG and Silbert, offered high rates of return on digital asset lending transactions without registering the Lending Agreements with the

---

[3] Citations to the Complaint (ECF No. 1) shall be defined as ("Compl., ¶ __." or "¶ __.").

SEC. ¶¶ 5-6. Proposed Lead Plaintiffs allege that the Lending Agreements constituted offers and sales of securities under federal securities laws, and that no applicable exemption from registration applied. ¶¶ 9-10.

Moreover, Proposed Lead Plaintiffs allege that DCG and Silbert defrauded and deceived them by (1) deploying digital assets in a way that financially benefitted DCG and Silbert(to the detriment of the interests of Proposed Lead Plaintiffs and the proposed Classes), including through transactions that maximized management fees collectable by the DCG conglomerate; and (2) taking on unreasonable counterparty concentration risk, allowing loans made to digital asset hedge fund Three Arrows Capital to constitute over 30% of GGC's total loan book. ¶¶ 12-14. These practices led to disastrous consequences when Three Arrows Capital declared bankruptcy in June 2022, resulting in a $1.1 uncollectible debt due GGC which rendered GGC insolvent, cementing the injuries incurred by Proposed Lead Plaintiffs in connection with their loan transactions with GGC. ¶¶ 15-16.

Instead of recognizing its insolvency, at Defendants' direction, GGC engaged in a misleading sham transaction with DCG designed to erase the 3AC debt from its books. ¶¶ 17-18. Defendants then directed and caused GGC to misrepresent its solvency to existing and potential lenders in order to induce parties to continue lending digital assets to GGC and/or prevent redemptions of loans. ¶¶ 19-24.

GGC's misconduct at the direction of Defendants was only uncovered after it experienced a surge of withdrawal requests in November 2022 that it could not meet, forcing GGC to stop honoring redemption requests on November 16, 2022 and leaving GGC creditors, including Proposed Lead Plaintiffs and members of the proposed Classes, without access to over $3.5 billion-worth of their digital assets they   loaned to GGC. ¶¶ 25-26.

GGC *and Defendants* immediately began negotiating with the two Ad Hoc Committees of GGC creditors: one led by a group of approximately 50 of GGC's largest creditors, and another led by GTC acting in its capacity as agent for a subset of GGC creditors.  Sloss Decl. Ex. A. These negotiations included Defendants' and GGC's provision of information to the Ad Hoc Committees in order to facilitate the negotiation of a resolution of GGC's insolvency. Sloss Decl. Ex. B.[4]

On January 12, 2023, the SEC filed an enforcement action against GGC and GTC alleging that the lending agreements GGC and GTC entered into with a subset of Proposed Lead Plaintiffs and members of the Classes constituted an unregistered offering and sales of securities. Sloss Decl. Ex. _.

Defendants and GGC were unable to negotiate an agreement with creditors (including those comprising the two Ad Hoc Committees) regarding GGC's obligations and, therefore, on January 19, 2023, the Debtors filed the Genesis Bankruptcy. Sloss Decl. Ex. __.

On January 23, 2023, Plaintiffs initiated the Action alleging that GGC violated the federal securities laws by (1) engaging in the promotion, offer, and sale of unregistered securities without qualifying for an exemption from registration; and (2) by intentionally and/or recklessly employing a device, scheme, or artifice to defraud and/or making materially false representations, and that Defendants are liable for GGC's as Control Persons under federal securities laws.

On February 3, 2023, the UCC was appointed by the United States Trustee. *Genesis Bankruptcy*, ECF No. 53, and the UCC retained White & Case LLP ("White & Case") as its counsel. Sloss Decl. Ex(s). E, F.

---

[4] ("Today, Houlihan Lokey presented a plan on behalf of the Creditor Committee to resolve the liquidity issues at Genesis and DCG and provide a path for the recovery of assets. This plan is based on information received from Genesis, DCG, and their respective advisors to date."). Sloss Decl. Ex. B.

Three days later, on February 6, 2023, the Debtors, DCG and the Ad Hoc Committees announced they had reached an agreement in principle as described in the Restructuring Term Sheet (the "Term Sheet"). Sloss Decl. Ex. G. Notably, the Term Sheet calls for the release of *all claims against Defendants relating in any way to the Genesis Debtors* in exchange for DCG's and Silbert's contributions to the reorganization plan. *Id.*

On March 13, 2023, GTC's counsel notified the court that "[t]he parties are in preliminary discussions about a potential agreed resolution to the case[,]" a fact reiterated by GGC's counsel in a March 16, 2023 letter to the Court. Sloss Decl. Ex. L. Given Defendants' participation in discussions with the ad hoc creditor committees and the UCC, it is a near certainty that Defendants are intimately involved in GGC's negotiations with the SEC.

On April 6, 2023, Proposed Lead Plaintiffs together with proposed co-lead plaintiff Remo Maria Morone filed a joint, unopposed *Stipulation and [Proposed Order Appointing Co-Lead Plaintiffs and Approving Co-Lead Counsel* seeking (1) appointment of Proposed Lead Plaintiffs as PSLRA lead plaintiffs in this Action; and (2) approval of Proposed Lead Plaintiffs' selection of SGT and Kaplan Fox as lead counsel for the putative Classes (ECF No. 39). Proposed Lead Plaintiffs' application is pending.

The facts about GGC's and Defendants' fraud that have been publicly disclosed to date are more than sufficient to plead this case with particularity (as outlined in the Complaint (ECF No. 1)), but are far from the whole story. As detailed above, Proposed Lead Plaintiffs are aware of three distinct groups with an interest arising out of Defendants' and GGC's misconduct that Defendants have already engaged in significant information sharing with: (1) the Ad Hoc Committees (which includes a committee formed by the GTC, the agent for Plaintiffs William McGreevy, Ashwin Gowda, and Christopher Buttenham); (2) the SEC; and (3) the UCC.

The prepetition negotiations, bankruptcy proceedings, UCC investigation, and governmental investigations are highly relevant to Proposed Lead Plaintiffs' claims as they concern the alleged misconduct at issue in the Action and the potential release of liability for claims arising out of that misconduct. And Proposed Lead Plaintiffs are already playing catchup. Defendants and the UCC have been negotiating over the Term Sheet since February 2023 and are now in advanced discussions over a restructuring plan which, as noted above, presently calls for the full releases of all claims against Defendants and, among others, DCG's "predecessors, successors and assigns, parents, subsidiaries, affiliates, and all of their respective current and former officers and directors." Sloss Decl. Ex. G.  Similarly, the SEC and Defendants are in negotiations to resolve the SEC's allegations which will likely result in substantial monetary payments which could also impact Proposed Lead Plaintiffs' claims in this Action and their ability to obtain compensation for the putative Classes arising out of Defendants' conduct. *See* Sloss Decl. Ex(s). L, M.

Accordingly, Proposed Lead Plaintiffs face undue prejudice and delay in their ability to prosecute this Action if they do not promptly receive the documents Defendants have already produced to the UCC and government regulators. These documents are necessary for Proposed Lead Plaintiffs to consider strategic options to protect and preserve their rights and those of the putative Classes they seek to represent in prosecuting this Action. To avoid undue prejudice, Proposed Lead Plaintiffs request that the Court partially lift the discovery stay to order DCG and Silbert to produce the documents they produced to (1) the UCC; (2) the Ad Hoc Committees; and (3) the SEC, U.S. Department of Justice, or any other governmental entity currently investigating the conducts and events leading up to and surrounding the Genesis Bankruptcy; and (4) to allow

Proposed Lead Plaintiffs to serve a Subpoena to Produce Documents and Information on UCC's counsel White & Case.

## III.    ARGUMENT

The circumstances here are precisely the type that warrant lifting the PSLRA's automatic discovery stay.  As detailed above, Defendants and GGC have engaged in significant nonpublic information sharing with two ad hoc creditor committees, the SEC, and the UCC.  Moreover, because Defendants are in advanced negotiations with the UCC, Proposed Lead Plaintiffs and the putative Classes risk losing their claims via the UCC releasing Defendants from liability. Defendants and GGC (including through its counsel) have already collected, reviewed, and produced documents to the UCC, and the UCC has already received and processed those documents.  Thus, the burden of producing the materials that Proposed Lead Plaintiffs seek here is negligible, while the undue prejudice to Proposed Lead Plaintiffs if the stay is not lifted to this limited extent will be considerable.

### A.    Legal Standard

The PSLRA provides for a conditional stay of discovery until the resolution of any motion to dismiss a private securities-fraud action.  The PSLRA provides:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, ***unless the court finds*** upon the motion of any party ***that particularized discovery is necessary*** to preserve evidence or ***to prevent undue prejudice*** to that party.

15 U.S.C. § 78u-4(b)(3)(B).

Thus, a court may lift the stay to prevent "undue prejudice."  15 U.S.C. § 78u-4(b)(3)(B); *see also In re Metro. Sec. Litig.*, No. CV-04-25-FVS, 2005 WL 940898, at *2 (E.D. Wash. Mar. 31, 2005).  "In determining whether to lift the stay, courts may take all facts into account to determine whether undue burden would exist . . . [and] weigh the burden to defendants against the

potential prejudice to plaintiffs, focusing on the production costs to defendants and plaintiffs' need for early review of the documents." *Bank of Am.*, 2009 WL 4796169, at *2. Here, Proposed Lead Plaintiffs and the putative Classes will be unduly prejudiced if the Court does not partially lift the PSLRA discovery stay while the burden, if any, on Defendants is negligible.

Modification of the PSLRA stay for the limited purposes sought here is particularly warranted because the concerns animating the stay are not implicated. In enacting the PSLRA, Congress sought primarily to prevent plaintiffs in securities litigation from leveraging discovery costs to extract a settlement, *see, e.g.*, H.R. Conf. Rep. No. 104-369, at 37 (1995), and from using information obtained in discovery to bolster weak or frivolous cases, *see, e.g.*, S. Rep. No. 104-98, at 14 (1995).

Neither of those concerns are implicated where, as here Proposed Lead Plaintiffs merely seeks to acquire documents Defendants have already made available to participants in a connected, parallel proceeding. *See, e.g. In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, No. H-01-3624, 2002 WL 31845114, at *1 (S.D. Tex. Aug. 16, 2002) ("the PSLRA's discovery stay . . . was not designed to keep secret from counsel in securities cases documents that have already become available for review by means other than discovery in the securities case"); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (lifting the PSLRA Stay where "[n]either rationale underlying the [stay] is contravened by plaintiffs' application" because plaintiffs "clearly [had] not filed the complaint to initiate a 'fishing expedition' in search of sustainable claims or to force defendants to settle an otherwise frivolous class action" and requiring production of

documents, including documents WorldCom had produced to outside counsel in connection with an investigation being conducted for its board of directors).[5]

Proposed Lead Plaintiffs should be given access to the requested documents.

**B.     Proposed Lead Plaintiffs Will Be Unduly Prejudiced If the Court Does Not Partially Lift the Discovery Stay**

The potential prejudice that Proposed Lead Plaintiffs face without a modification of the discovery stay is significant. District courts have construed "undue prejudice" in the context of the PSLRA discovery stay to mean "improper or unfair treatment amount to something less than irreparable harm" but encompasses prejudice that is improper or unfair under the circumstances. *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, No. CIV. 14-11191, 2015 WL 1565462, at *3 (E.D. Mich. Apr. 8, 2015); *see also In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 107 (D. Mass. 2002); *Delphi*, 2007 WL 518626, at *6.

Courts have acknowledged that in complex litigation involving multiple related lawsuits, "keeping all parties on an equal footing with respect to discovery serves important case management interests" and have thus found undue where securities plaintiffs lacked access to documents already produced to governmental and other agencies, or plaintiffs in parallel litigation. *See  In re Tyco Int'l, Ltd. Multidistrict Litig.,* No. MDL NO. 02-1335-B, 2003 WL 23830479, at *4 (D.N.H. Jan. 29, 2003); *see also N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, No. 14-11191, 2015 WL 1565462, at *3 (E.D. Mich. Apr. 8, 2015) ("NYSTRS also shows that the discovery sought from the MDL Litigation is necessary to prevent undue prejudice."); *Westchester*

---

[5] *See also Bank of Am.*, 2009 WL 4796169, at *1, 3 (requiring production of documents "defendants have produced, or will produce, to various government agencies" and "copies of any transcripts of testimony given in connection with these investigations," and finding that "[l]ifting the discovery stay will not frustrate Congress's purposes in enacting the provision"); *Delphi*, 2007 WL 518626, at *8 ("maintaining the discovery stay as to materials already provided to the federal authorities and to the Unsecured Creditors Committee does not further the policies behind the PSLRA"); *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) (similar).

*Putnam Heavy & Highway Laborers Local 60 Benefit Funds v. Sadia S.A.*, No. 08 Civ. 9528(SAS), 2009 WL 1285845, *1 (S.D.N.Y. May 8, 2009) ("Given the existence of parallel litigation, without access to the report, plaintiffs are disadvantaged vis-à-vis Brazilian litigants."); *Singer v. Nicor, Inc.*, No. 02 C 5168, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003) ("Plaintiffs here may well be unfairly disadvantaged if they do not have access to the documents that the governmental and other agencies already have, during the pendency of the motion to dismiss.").

Court thus routinely lift the PSLRA discovery stay to allow lead plaintiffs in securities actions against defendants who are bankrupt, insolvent, or involved in "criminal, civil and administrative investigations and actions which are proceeding unabated with the possibility that settlements might occur and/or fines and penalties might be imposed" out of recognition that securities plaintiffs must be on equal information footing as other major interest parties in order to vindicate their rights.  *In re Massey Energy Co. Sec. Litig.*, No. CIV.A. 5:10-0689, 2011 WL 4528509, at *6 (S.D.W. Va. Sept. 28, 2011); *see also Gen. Motors*, 2015 WL 1565462, at *3 ("Undue prejudice has been found where the plaintiff lacks access to documents already produced to governmental and other agencies and in other lawsuits.").

For example, in *In re Delphi Corp.*, the Court recognized that where multiple groups  "vying for substantially the same pool of funds as [] Lead Plaintiffs and the Class they represent . . . have already been given copies of the same records which Lead Plaintiffs seek in this action", securities plaintiffs faced "being left with nothing if [the] litigation does not keep pace with the bankruptcy and the SEC Action" and modified the stay to permit Plaintiffs to obtain documents already produced to an Unsecured Creditors Committee and Executive Creditors Committee. No. 05-MD-1725, 2007 WL 518626, at *7 (E.D. Mich. Feb. 15, 2007)

Proposed Lead Plaintiffs' situation closely tracks *In re Delphi*. Proposed Lead Plaintiffs face a significant risk of being left empty-handed if they are required to proceed without access to crucial evidence regarding their claims that other major interested parties possess. Proposed Lead Plaintiffs, the UCC, and the SEC are all seeking compensation from Defendants and/or Debtors with finite resources for their part in the conduct which led to Genesis' insolvency. Proposed Lead Plaintiffs believe that the information Defendants have shared with the Ad Hoc Committees, the UCC, and the SEC contains incriminating information essential to properly evaluating Proposed Lead Plaintiffs' claims and that they must be apprised of in order to be on equal footing with the other interested parties. For example, the two ad hoc creditor committees (which possess no formal role or appointment in the bankruptcy proceedings, this litigation, or otherwise) rejected Defendants' attempt at negotiating a prepetition restricting deal after viewing the information Defendants provided. Sloss Decl. Ex. A.

Similarly, the UCC has not endorsed the proposed Term Sheet after receiving 20,000 documents from Defendants and GGC because "the [Term Sheet], negotiated in part by DCG, proposes to release any estate claims or causes of action against DCG and its various insiders, [the UCC] is therefore assessing the value of these claims and causes of action to determine whether pursuing such claims is of greater value to unsecured creditors than the consideration conferred through the proposed term sheet." Sloss Decl. Ex. I. At this this time, "*DCG and its officers and directors are a focal point*" of that investigation, with the UCC additionally "investigating all relevant prepetition conduct that may give rise to potential claims or causes of action against" them. Sloss Decl. Ex. J.

As part of its investigation, the UCC has "has received and reviewed approximately 20,000 documents from Debtors and *Digital Currency Group, Inc.*" and has "leverage[ed] litigation

technology [to] quickly and efficiently identified the most noteworthy documents, as well as the remaining gaps in the information [and has] refined its requests for information and remains in communication with both the Debtors and DCG regarding the [] follow-up requests." *Id.*

Similarly, while GGC and GTC have represented that they are in preliminary discussions with the SEC to resolve the SEC enforcement action against them, no deal has been announced, and GTC and GGC are due to respond to the SEC's complaint on May 4, 2023. *See* Sloss Decl., Ex(s).

Proposed Lead Plaintiffs would be playing catch-up if they were given access to the requested information today, and further delay would only exacerbate that already-significant disadvantage. The UCC began making information requests to Defendants in early February (*see* Sloss Decl., Ex. K., and has since received at least 20,000 from Defendants and Debtors as part of their attempt to negotiate a fear-reaching restructuring plan which is likely to provide Defendants and Debtors with broad releases of liability for the very claims Proposed Lead Plaintiffs have brought in this Court. Proposed Lead Plaintiffs thus presently find themselves holding meritorious claims that may nevertheless be extinguished by the UCC's negotiations with Defendants before Proposed Lead Plaintiffs view a single piece of non-public evidence. *See, e.g.*, *Metro.*, 2005 WL 940898, at *3 (lifting stay because "Plaintiffs may well be unfairly disadvantaged if they do not have access to documents the governmental agencies and other civil claimants possess" and "Plaintiffs' access to the requested documents may assist in evaluating the worth of any potential settlements and in bringing an efficient and economic resolution to all claims"); *WorldCom*, 234 F. Supp. 2d at 305 (lifting stay and ordering defendants to produce documents already produced to government agencies and others).

Not modifying the stay would leave Proposed Lead Plaintiffs as "essentially be the only major interested party in the criminal and civil proceedings . . . without access to documents that currently form the core of those proceedings." As the court held in *Bank of America*:

> Discovery is moving apace in parallel litigation. Without access to documents produced in these other proceedings, plaintiffs in these cases will be unduly prejudiced and will be less able to make informed decisions about litigation strategy. Plaintiffs' pursuit of discovery will also fall substantially behind the SEC and other government actions. Plaintiffs are not seeking this discovery now merely to engage in a fishing expedition.

2009 WL 4796169, at \*3.

### C.    The Requested Discovery Is "Particularized"

Partially lifting the stay is also appropriate here as the limited discovery sought by Proposed Lead Plaintiffs is "sufficiently particularized." *Delphi*, 2007 WL 518626, at \*4. Requests for discovery are "sufficiently particularized" when a defendant has already produced the documents in related actions. *See, e.g.*, *id.* at \*6 ("Lead Plaintiffs have adequately specified the target of the requested discovery" because they "only request the production materials that have already been assembled and produced"); *FirstEnergy*, 229 F.R.D. at 545 ("Lead Plaintiff's request is limited to the closed universe of materials that FirstEnergy has already produced").[6]

Here, Plaintiffs seek a clearly defined universe of materials consisting of: (1) a known corpus of 20,000 documents produced to the UCC as part of DCG's, Silbert's and GGC's Genesis Bankruptcy negotiations with the UCC over a sweeping plan of reorganization which will broadly release Defendants, GGC and other parties from liability  (the "UCC Document Production(s)"); and (2) documents and information DCG and Silbert provided to the two ad hoc creditor

---

[6] *See also WorldCom*, 234 F. Supp. 2d at 306 (finding plaintiffs' discovery request sufficiently particularized where it sought "a clearly defined universe of documents, specifically certain documents which WorldCom has already produced in connection with other identified proceedings"); *Enron*, 2002 WL 31845114, at \*1 (finding particularity satisfied where plaintiffs sought copies of documents produced to governmental investigators and "transcripts of witness interviews or depositions related to those inquiries").

committees (the "Ad Hoc Committees") during prepetition negotiations (the "Ad Hoc Committee Document Production(s)"); and (3) documents and information Defendants provided to government regulators, including but not limited to the SEC in connection with government regulator investigations or enforcement actions (the "Regulatory Document Productions").

Importantly, Proposed Lead Plaintiffs do not seek leave to make any other document requests—let alone a blanket request for all potentially relevant documents—and is not asking Defendants or any party to conduct any new searches. Nor are Proposed Lead Plaintiffs seeking to take any depositions.

### D.      There Is No Burden on Defendants

Partial lifting of the discovery stay would not burden Defendants. Defendants have already collected, reviewed, organized, and produced the documents that Proposed Lead Plaintiffs seek in electronic format. *See Bank of Am.*, 2009 WL 4796169, at *3 ("[defendants] have already collected, reviewed, and organized the documents for production in other proceedings, and the burden of making another copy for plaintiffs here will be slight"); *Metro.*, 2005 WL 940898, at *3 (finding that defendants would "not be unduly burdened by producing the documents to Plaintiffs" where "the requested documents ha[d] already been found, compiled, and indexed").[7]

Courts recognize that, while "[o]ne of the principal purposes of the PSLRA discovery stay is to eliminate the cost of discovery before the potential merit of a case is assessed at the motion to dismiss phase," "that burden is slight when a defendant has already found, reviewed and organized the documents." *Waldman v. Wachovia*, No. 08 CIV 2913 (SAS), 2009 WL 86763, at

---

[7] *See also In re Tyco Int'l, Ltd.*, MDL, No. 02-MDL-1335-B, 2003 WL 23830479, at *4 (D.N.H. Jan. 29, 2003) ("the defendants will not incur any additional costs if the Securities Actions plaintiffs are given access to the documents"); *Enron*, 2002 WL 31845114, at *2 (recognizing that cost of requested discovery would not burden defendants because they had "already found, reviewed, and organized the documents"); *FirstEnergy*, 229 F.R.D. at 545 (defendant may not "allege any burden from providing documents that it has already reviewed and compiled").

*2 (S.D.N.Y. Jan. 12, 2009). Thus, "given the less burdensome prospect of discovery, defendants in such circumstances may be less likely to feel the pressure to engage in a settlement of meritless claims," and "the PSLRA's discovery stay provisions would presumably apply with less force." *Pension Fund Trust for Operating Eng'rs v. Assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913, 915 (E.D. Wis. 2013). Moreover, given the seriousness of Defendants' conduct and the viability of Proposed Lead Plaintiffs' claims, this is not a situation where a plaintiff is seeking lift a stay to fish for potential claims.

Proposed Lead Plaintiffs propose the following, believing it to be the least burdensome method of obtaining the requests documents:

(1)    Serving a subpoena *duces tecum* on the UCC via the UCC's counsel for the corpus of 20,000 documents produced to the UCC and referenced in the document entitled "FAQ 66" published by the UCC on April 17, 2023 (*see* Sloss Decl. Ex. O); and

(2)    Serving a request for Production ("RFP") on Defendants DCG and Silbert requesting the production of the Ad Hoc Committee Document Production(s) and the Regulatory Document Productions (*See* Sloss Decl., Ex. P).

Copies of the proposed versions of the proposed subpoena and RFP are attached to the Sloss Declaration as Exhibits O and P, respectively.

The requested partial lifting of the PSLRA stay to serve the requested subpoena and RFP will in no way jeopardize any confidentiality concerns. Proposed Lead Plaintiffs are not seeking any documents relating to the substance of the negotiations between Defendants or any other party and government regulators, and the requested documents would be produced as confidential material under the Court's Standing Protective Order. Thus, the requested partial lifting of the stay will not in any way interfere with or impede the negotiation of a settlement with government regulators or a revised Term Sheet. Proposed Lead Plaintiffs are not seeking leave to request any

documents other than those already produced by Defendants, GGC, GGH, and GAC or to take any depositions. Rather, Proposed Lead Plaintiffs seek only to be on the same footing with the other interested parties that have previously received these highly relevant documents.

Given the limited-to-no burden imposed on Defendants here, and the undue prejudice Lead Plaintiffs face in falling behind in a fast-shifting litigation landscape, the Court should partially lift the PSLRA discovery stay to provide for the limited requested discovery Lead Plaintiffs seek.

## IV.    CONCLUSION

For all of the foregoing reasons, Proposed Lead Plaintiffs respectfully request the Court grant their motion to partially modify the PSLRA discovery stay and order Defendants to produce the limited set of documents requested by Proposed Lead Plaintiffs immediately and permit Proposed Lead Plaintiffs to serve the UCC's counsel White & Case with a Subpoena to Produce Documents and Information, all subject to an appropriate Protective Order.

DATED: April 24, 2023             */s/ Ian W. Sloss*_____
                                  Ian W. Sloss
                                  Steven L. Bloch
                                  SILVER GOLUB & TEITELL LLP
                                  One Landmark Square, Floor 15
                                  Stamford, Connecticut 06901
                                  Telephone: (203) 325-4491
                                  isloss@sgtlaw.com
                                  sbloch@sgtlaw.com

                                  *Counsel for Proposed Lead Plaintiffs William*
                                  *McGreevy, Ashwin Gowda, Translunar*
                                  *Crypto, LP, and Christopher Buttenham.*