## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM MCGREEVY, ASHWIN GOWDA, TRANSLUNAR CRYPTO, LP, CHRISTOPHER BUTTENHAM, and REMO MARIA MORONE, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiffs,<br><br>       v.<br><br>DIGITAL CURRENCY GROUP, INC., BARRY SILBERT, GLENN HUTCHINS, LAWRENCE LENIHAN, MICHAEL KRAINES, MARK MURPHY, SOICHIRO "MICHAEL" MORO, DERAR ISLIM, and MATTHEW BALLENSWEIG,<br>              Defendants. | Civil Action No.  3:23-cv-00082-SRU<br><br><br>CLASS ACTION<br><br>Hon. Stefan R. Underhill |

## MEMORANDUM IN SUPPORT OF DEFENDANT SOICHIRO "MICHAEL" MORO'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 3

LEGAL STANDARD............................................................................................................. 5

ARGUMENT ....................................................................................................................... 6

    I.      COUNT II FAILS BECAUSE PLAINTIFFS DO NOT ADEQUATELY ALLEGE THAT MR. MORO BEARS "SCHEME LIABILITY"........................ 6

          A.      Plaintiffs Do Not Adequately Allege That Mr. Moro Committed a Deceptive or Manipulative Act.................................................. 7

          B.      Plaintiffs Allege No Facts Demonstrating Mr. Moro Acted With Scienter ...................................................................... 11

          C.      Plaintiffs Have Not Sufficiently Alleged Reliance, Loss Causation, or Damages .................................................................. 14

    II.     COUNTS I AND III FAIL BECAUSE PLAINTIFFS DO NOT ADEQUATELY ALLEGE CONTROL PERSON LIABILITY ........................ 17

          A.      Plaintiffs Fail to Allege a Primary Violation of the Securities Laws ....... 17

          B.      Plaintiffs Fail to Allege Mr. Moro Was a Culpable Participant in any of the Company's Alleged Violations of the Securities Laws ........... 19

    III.    COUNTS IV AND V FAIL BECAUSE PLAINTIFFS DO NOT ADEQUATELY ALLEGE (IN THE ALTERNATIVE) ANY STATE-LAW CLAIMS ................................................................. 20

CONCLUSION.................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AmBase Corp. v. City Investing Co. Liquidating Tr.*,
   326 F.3d 63 (2d Cir. 2003)..................................................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................................5

*Au New Haven, LLC v. YKK Corp.*,
   No. 1:15-CV-3411 (GHW), 2020 WL 4366394 (S.D.N.Y. July 30, 2020)...........................21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................................5

*Boguslavsky v. Kaplan*,
   159 F.3d 715 (2d Cir. 1998)..............................................................................................17

*Chill v. GE*,
   101 F.3d 263 (2d Cir. 1996)..............................................................................................13

*Conn. Gen. Life Ins. v. True View Surgery Ctr. One, LP*,
   128 F. Supp. 3d 501 (D. Conn. 2015)...............................................................................21

*DeMaria v. Andersen*,
   153 F. Supp. 2d 300 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 170 (2d Cir. 2003)........................17

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)...........................................................................................................6

*ECA, Local 134 IBEW Joint Pension Tr. cv. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)..............................................................................................12

*Ellison v. Am. Image Motor Co.*,
   36 F. Supp. 2d 628 (S.D.N.Y. 1999)............................................................................19, 20

*Fant v. Perelman*,
   Nos. 97 CIV. 8435 (LAP), 97 CIV. 8436 (LAP),
   1999 WL 199078 (S.D.N.Y. Apr. 19, 1999).......................................................................19

*Feiner v. SS&C Technologies, Inc.*,
   47 F. Supp. 2d 250 (D. Conn. 1999).................................................................................18

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994)................................................................................................16

*Forsberg v. Always Consulting, Inc.*,
No. 06-CV-13488 (CS), 2008 WL 5449003 (S.D.N.Y. Dec. 31, 2008)............................17, 18

*Gurfein v. Ameritrade, Inc.*,
411 F. Supp. 2d 416 (S.D.N.Y. 2006)..............................................................................7

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)............................................................................11

*In re Carter-Wallace, Inc. Sec. Litig.*,
220 F.3d 36 (2d Cir. 2000)...........................................................................................11

*In re Deutsche Telekom*,
No. 00 CIV 9475 (SHS), 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002)...................................19

*In re Elan Corp. Sec. Litig.*,
543 F. Supp. 2d 187 (S.D.N.Y. 2008)............................................................................12

*In re Fine Host Corp. Sec. Litig.*,
25 F. Supp. 2d 61 (D. Conn. 1998)...............................................................................15

*In re JP Morgan Chase Sec. Litig.*,
363 F. Supp. 2d 595 (S.D.N.Y. 2005)............................................................................13

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)...........................9

*In re Marsh & Mclennan Cos., Inc. Sec. Litig*,
501 F. Supp. 2d 452 (S.D.N.Y. 2006).............................................................................8

*In re Morgan Stanley Information Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010).........................................................................................18

*In re PXRE Grp., Ltd., Sec. Litig.*,
600 F. Supp. 2d 510 (S.D.N.Y.)...............................................................................13, 14

*In re Tower Auto. Secs. Litig.*,
483 F. Supp. 2d 327 (S.D.N.Y. 2007)...........................................................................8, 9

*In re Trilegiant Corp., Inc.*,
11 F. Supp. 3d 82 (D. Conn. 2014), *aff'd sub nom. Williams v. Affinion Grp., LLC*, 889 F.3d 116 (2d Cir. 2018) .......................................................................................22

*In re Vivendi*,
838 F.3d 223 (2d Cir. 2016)....................................................................................14, 15

*In re Wachovia Equity Sec. Litig.*,
753 F. Supp. 2d 326 (S.D.N.Y. 2011)..............................................................................6

*Iowa Pub. Employee's Ret. Sys. v. Deloitte & Touche LLP*,
   919 F. Supp. 2d 321 (S.D.N.Y. 2013) ................................................................. 12

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) .......................................................................... 12, 13

*Kane v. Wichita Oil Income Fund*,
   No. 00 CIV 9475 (SHS),1991 WL 233266 (S.D.N.Y. Oct. 29, 1991) ................................ 20

*Krys v. Pigott*,
   749 F.3d 117 (2d Cir. 2014) ............................................................................ 5

*Laser Mortgage Mgmt., Inc. v. Asset Securitization Corp.*,
   No. 00 Civ. 8100 (WRB), 2001 WL 1029407 (S.D.N.Y. Sept. 6, 2001) ............................ 19

*Lentell v. Merrill Lynch & Co. Inc.*,
   396 F.3d 161 (2d Cir. 2005) ................................................................... 8, 14, 16

*Levitt v. J.P. Morgan Sec. Inc.*,
   9 F. Supp. 3d 259 (E.D.N.Y. 2014) .............................................................. 17, 18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*,
   LLC, 797 F.3d 160 (2d Cir. 2015) ....................................................................... 6

*Mandala v. NTT Data, Inc.*,
   975 F.3d 202 (2d Cir. 2020) ............................................................................. 5

*Meijer, Inc. v. Ferring B.V. (In re DDAVP Direct Purchaser Antitrust Litig.)*,
   585 F.3d 677 (2d Cir. 2009) ............................................................................ 11

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
   277 F. Supp. 3d 500 (S.D.N.Y. 2017) .................................................................. 6

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
   164 F. Supp. 3d 568 (S.D.N.Y. 2016) ............................................................. 7, 10

*Meszaros v. Meszaros*,
   No. 18-cv-05731 (DLI) (RER) 2019 WL 13225390 (E.D.N.Y. Sept. 30, 2019) .................... 21

*Ontario Teachers' Pension Plan Board v. Teva Pharmaceutical Industries Ltd.*,
   432 F. Supp. 3d 131 (D. Conn. 2019) ................................................................. 17

*P. Stolz Family P'ship, L.P. v. Daum*,
   166 F. Supp. 2d 871 (S.D.N.Y. 2001), *rev'd in part on other grounds by* 355
   F.3d 92 (2d Cir. 2004) ................................................................................. 20

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ................................................................................... 18

*Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*,
  89 F. Supp. 3d 602 (S.D.N.Y. Mar. 6, 2015) .......................................................................14

*Pross v. Katz*,
  784 F.2d 455 (2d Cir. 1986) ................................................................................................6

*Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
  714 F. Supp. 2d 475 (S.D.N.Y. 2010) .................................................................................20

*Reyes v. Vertical Retail Sols., LLC*,
  No. 085003266S , 2011 WL 1168820 (Conn. Super. Ct. Feb. 24, 2011) ..............................22

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ................................................................................................5

*Russo v. Bruce*,
  777 F. Supp. 2d 505 (S.D.N.Y. 2011) .................................................................................12

*Schuler v. NIVS Intellimedia Tech. Grp., Inc.*,
  No. 11 CIV. 2484 (KMW) (FM), 2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) ...................18

*SEC v. First Jersey Secs. Inc.*,
  101 F.3d 1450 (2d Cir. 1996) ..............................................................................................18

*SEC v. Kelly*,
  817 F. Supp. 2d 340 (S.D.N.Y. 2011) .............................................................................7, 10

*SEC v. Lee*,
  720 F.Supp.2d 305 (S.D.N.Y. 2010) ...................................................................................11

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994) ................................................................................................11

*Stoneridge Inv. P'ers, LLC v. Sci.-Atlanta, Inc.*,
  552 U.S. 148 (2008) .......................................................................................................14, 15

*Taylor v. Westor Cap. Grp.*,
  943 F. Supp. 2d 397 (S.D.N.Y. 2013) ...................................................................................8

*W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*,
  78 A.3d 167 (Conn. App. Ct. 2013), aff'd, 153 A.3d 574 (Conn. 2016) .............................21

## Statutes

Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. § 42-110 *et seq.* ........................21, 22

Private Securities Litigation Reform Act.................................................................... *passim*

Securities Act of 1933 .............................................................................................. *passim*

Securities Exchange Act of 1934 ............................................................................ *passim*

**<u>Other Authorities</u>**

Federal Rule of Civil Procedure Rule 9(b) ............................................................. *passim*

Federal Rule of Civil Procedure Rule 12(b)(6) ...................................................... *passim*

Soichiro "Michael" Moro ("Mr. Moro"), the former Chief Executive Officer of Genesis Global Capital, LLC ("Genesis Global Capital" or the "Company") and Genesis Global Capital Trading, Inc. ("GGT"), by and through his attorneys, hereby respectfully submits this memorandum of law in support of his motion to dismiss Plaintiffs' Amended Complaint for Violations of the Federal Securities and State Consumer Protection Laws, dated July 12, 2023 (the "Amended Complaint" or "Am. Compl.") [ECF 60], pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The Amended Complaint asserts five claims against Mr. Moro:  (i) control person liability pursuant to Section 15 for the Company's alleged violations of Section 5 and 12(a)(1) of the Securities Act of 1933 ("Securities Act") (Count I); (ii) primary "scheme liability" under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder (Count II); (iii) control person liability pursuant to Section 20(a) for the Company's alleged violation of Section 10(b) of Exchange Act (Count III); (iv) primary liability for deceptive and unfair practices in violation of the Connecticut Unfair Trade Practices Act ("CUTPA") (Count IV); and (v) primary liability for deceptive and unfair practices in violation of New York Uniform Deceptive Trade Practices Act ("NYUDTPA") (Count V).  The arguments in Digital Currency Group, Inc.'s ("DCG") memorandum of law in support of its motion to dismiss (the "DCG Memorandum") with respect to each of these claims, which Mr. Moro joins and incorporates herein, require dismissal of all claims against him.  Mr. Moro submits this separate memorandum of law to assert additional grounds for dismissal of these claims.

As a preliminary matter, and for the reasons stated in Section II of the DCG Memorandum, all of Plaintiffs' securities laws claims fail because they do not allege the essential element of an offer or sale of a security.  *See* DCG Memorandum, Section II.A.  While Plaintiffs point to certain

lending agreements as the "securities" underlying these claims, these lending agreements were never "offered" or "sold," and, separately, cannot reasonably be considered "securities" under the federal securities laws. *See* DCG Memorandum, Section II.B.

As to Count II against Mr. Moro, Plaintiffs' only primary liability theory under the federal securities laws, Plaintiffs fail to allege sufficiently that Mr. Moro bears "scheme liability" under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. Plaintiffs' "scheme liability" theory rests almost exclusively on unsupported, general allegations that Mr. Moro "caused" Genesis Global Capital to disseminate false or misleading information, including in its financial statements and balance sheets, without any factual assertions showing how Mr. Moro did so or that he committed a deceptive or manipulative act as part of this "scheme" with the requisite scienter. Plaintiffs try to overcome this fatal flaw by claiming Mr. Moro also bears "scheme liability" for one tweet concerning DCG's assumption of certain Genesis Global Capital liabilities, but they allege no facts to demonstrate that the tweet was in fact false or that Mr. Moro knew of or was reckless as to its falsity at the time he tweeted it. Plaintiffs compound these deficiencies by failing to showing how Plaintiffs' damages result from Mr. Moro's "scheme liability" conduct.

As to Counts I and III, Plaintiffs offer similarly deficient allegations that Mr. Moro is responsible for the *Company's* violations of the Securities Act and the Exchange Act based on a theory of control person liability. Indeed, Plaintiffs do not allege any facts to show that Mr. Moro was a participant, much less a "culpable participant," in the Company's alleged violations, mirroring their failure to allege Mr. Moro acted with the requisite scienter to be primarily liable under Section 10(b) of the Exchange Act.

As to Counts IV and V, Plaintiffs purport to plead state-law consumer protection claims "in the alternative" to their federal securities laws claims, but these state-law claims simply re-

package their federal claims and fail for many of the same reasons.  These consumer protection claims also fail because Plaintiffs do not allege that they, Mr. Moro, or their allegations against Mr. Moro have any connection to Connecticut sufficient to allege liability under the CUTPA, and similarly fail to allege that they or their claims against Mr. Moro have any connection to New York sufficient to allege liability under the NYUDTPA.

For these reasons and those that follow, Plaintiffs' Amended Complaint should be dismissed as to Mr. Moro in its entirety.

## STATEMENT OF FACTS

As described in the Amended Complaint, Barry Silbert ("Silbert") formed GGT in 2015 and later formed Genesis Global Capital in 2017.  Am. Compl. ¶¶ 101–105.  Mr. Moro served as the chief operating officer of GGT from its formation until he was later elevated to the role of CEO in the Spring of 2016.  Mr. Moro continued to serve as the CEO of GGT, and later Genesis Global Capital, until he left the Company on August 17, 2022.  Am. Compl. ¶ 106.[1]

While Plaintiffs' eighty-nine page Amended Complaint is replete with conjecture and conclusory allegations against Genesis Global Capital, DCG, and other individual defendants, specific allegations relating to Mr. Moro are sparse.[2]  Relevant to their claims against Mr. Moro, Plaintiffs allege that in June 2022, Three Arrows Capital Ltd. ("3AC") — one of Genesis Global Capital's lending counterparties — was unable to satisfy margin calls from some of its lenders and entered liquidation proceedings.  Id. ¶ 217.  Post-liquidation, 3AC's outstanding obligation to the Company was $1.1 billion.  Id. ¶¶ 218–219.  As a result, "DCG and its board determined that it was in the best interest of Genesis [Global Capital], its lenders, and DCG to try to help support

---

[1] The Complaint asserts that Mr. Moro left the Company on August 17, 2022, but his actual last day was August 26, 2022, a clarification that is of no moment for Mr. Moro's Motion to Dismiss.

[2] See DCG Memorandum "Statement of Facts" for a more fulsome discussion of Genesis's business model and lending programs more-broadly.

Genesis [Global Capital]." *Id.* ¶ 222.  On June 30, 2022, Genesis Global Capital sold 3AC's debt to DCG in exchange for a $1.1 billion promissory note (the "DCG Promissory Note") due in 10 years at an interest rate of 1%.  *Id.* ¶ 223.

On July 6, 2022, following execution of the DCG Promissory Note, Mr. Moro tweeted that "DCG has assumed certain liabilities of Genesis [Global Capital] related to [3AC] to ensure we have capital to operate and scale our business for the long-term."  Am. Compl. ¶ 231 (clarifying edits omitted).  As discussed further below, *infra* Section I.A.3, Plaintiffs incorrectly allege that this statement was false and misleading, and include no allegations at all to support an inference that Mr. Moro acted with the requisite scienter to defraud when he sent his tweet.  Given this is the only alleged misstatement Plaintiffs attribute to Mr. Moro with any specificity, Mr. Moro's tweet is insufficient to support claims for "scheme liability" under the federal securities laws and state-law consumer protection statutes.

The remainder of Plaintiffs' allegations against Mr. Moro are pled without any specificity, and include general allegations that Mr. Moro:  (i) "caused" the Company to disseminate misleading and false financial statements to consumers, (ii) "engaged" in transactions designed to benefit the DCG conglomerate, rather than Genesis Global Capital or Plaintiffs and class members, and (iii) "caused" the Company to lend almost 30% of Genesis Global Capital's total loan book to 3AC in order to maximize DCG's profit.  *See, e.g.*, Am. Compl. ¶ 312.  Plaintiffs, however, fail to identify which supposedly false and misleading financial statements Mr. Moro is alleged to have caused the Company to disseminate, when and to whom those statements were sent and by whom, and whether and how Mr. Moro was involved in the alleged dissemination; nor do they allege that Mr. Moro himself *ever* spoke directly to any Genesis lender, or even to Gemini, following the 3AC liquidation.  That Plaintiffs are unable to support any allegations of wrongdoing against Mr. Moro

is easy to understand when viewed in light of one simple fact:  Plaintiffs' "damages" allegedly resulted from Genesis Global Capital's decision to stop honoring redemption requests on November 16, 2022 following the collapse of FTX earlier that month—a decision that occurred *three months after* Mr. Moro left the Company.

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the Court reviews the complaint and accepts as true "only its factual allegations, and the reasonable inferences that can be drawn therefrom." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).  The Court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *AmBase Corp. v. City Investing Co. Liquidating Tr.*, 326 F.3d 63, 72 (2d Cir. 2003).  The Court should dismiss the complaint if the plaintiff has not stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "But while this plausibility pleading standard is forgiving, it is not toothless." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020).  Thus, it "does not require [the Court] to credit legal conclusions couched as . . . factual allegations or naked assertions devoid of further factual enhancement." *Id.*

Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)") and the Private Securities Litigation Reform Act ("PSLRA") impose heightened pleading standards in securities fraud actions that require plaintiffs to state with particularity the circumstances constituting fraud.  15 U.S.C. § 78u-4.  "The particularity requirement of Rule 9(b) serves to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).  Thus, allegations of fraud

must "inform each defendant of the nature of [his or her] alleged participation in" each fraud alleged. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, LLC, 797 F.3d 160, 172 (2d Cir. 2015). Similarly, the PSLRA "insists that securities fraud complaints 'specify' each misleading statement; that they set forth the facts 'on which [a] belief' that a statement is misleading was 'formed'; and that they 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 347 (S.D.N.Y. 2011) (alteration in original) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005)).

## ARGUMENT

## I.   COUNT II FAILS BECAUSE PLAINTIFFS DO NOT ADEQUATELY ALLEGE THAT MR. MORO BEARS "SCHEME LIABILITY"

Count II asserts that Mr. Moro bears "scheme liability" under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder based on one tweet by Mr. Moro and otherwise vague assertions that he "caused" misstatements by Genesis Global Capital. Am. Compl. ¶¶ 351–366. To state a claim for scheme liability, Plaintiffs must allege "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 517 (S.D.N.Y. 2017).

As an initial matter, Plaintiffs' "scheme liability" claim fails against all defendants, including Mr. Moro, because Mr. Moro and the other defendants are not "integral to the purchase and sale of the [alleged] securities in question." *Pross v. Katz*, 784 F.2d 455, 459 (2d Cir. 1986). As described in Section II.A., *infra*, and in the DCG Memorandum that is incorporated by reference herein, all of Plaintiffs' federal securities law claims fail because Plaintiffs have not adequately alleged the sale or offer of a security within the meaning of federal law. *See* DCG

Memorandum, Section II.[3]  Plaintiffs' scheme liability claim against Mr. Moro fails for several additional, independently-dispositive reasons.

### A. Plaintiffs Do Not Adequately Allege That Mr. Moro Committed a Deceptive or Manipulative Act

To plead a claim for scheme liability against Mr. Moro, Plaintiffs "must specify what manipulative acts were performed . . . , when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *Gurfein v. Ameritrade, Inc.*, 411 F. Supp. 2d 416, 425 (S.D.N.Y. 2006).  Because the claim is based on an alleged scheme to defraud, the heightened pleading standards of Rule 9(b) and the PSLRA apply, *supra* at 5–6, and Plaintiffs must identify a "deceptive act" that is distinct from any alleged misrepresentations. *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 586 (S.D.N.Y. 2016) (dismissing scheme liability claim because plaintiffs did not identify any deceptive act apart from the alleged misrepresentation); *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) (same).  Plaintiffs' allegations here fail to meet this standard as to Mr. Moro.

### 1. Financial Statements and Balance Sheets [Am. Compl. ¶ 364(c) and (e)]

Plaintiffs first generically allege that "Defendants Moro and Ballensweig *caused* Genesis Global Capital . . . to disseminate misleading and false financial statements to prospective investors either directly or through Gemini as their designated agent."  Am. Compl. ¶ 364(c) (emphasis added); *see also Id.* ¶ 364(e) (alleging that Mr. Moro caused Genesis and Defendant Ballensweig "to disseminate its balance sheet and other documents containing misrepresentations . . ."). Conclusory allegations that Mr. Moro "made, or allowed to be made, false or misleading statements despite [his] awareness or reckless disregard of the misconduct" are "insufficient to

---

[3] Mr. Moro also joins in the arguments regarding scheme liability in Section I.B. of the DCG Memorandum.

state a claim for scheme liability." *In re Marsh & Mclennan Cos., Inc. Sec. Litig*, 501 F. Supp. 2d 452, 491 (S.D.N.Y. 2006).  As the Second Circuit has held, "where the sole basis for such claims is alleged misrepresentations or omissions, plaintiffs have not made out a . . . claim under Rule 10b-5(a) and (c)." *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 177 (2d Cir. 2005).

Plaintiffs also fail to meet the heightened pleading standard under the PSLRA and Rule 9(b).  *First*, Plaintiffs fail to identify which allegedly false or misleading financial statements or balance sheets Mr. Moro is alleged to have caused the Company or Ballensweig to disseminate, and when or how they were disseminated, and they offer no allegations demonstrating the method by which Mr. Moro supposedly caused such dissemination.  *Second*, while Plaintiffs allege that certain Genesis Global Capital employees provided documents and information to Gemini in July 2022, Plaintiffs do not include a single specific allegation that Mr. Moro disseminated documents to Gemini, Plaintiffs, or any class member himself, directed or otherwise compelled a Genesis Global Capital employee to disseminate any documents to Gemini, Plaintiffs, or any class member, or had any hand in preparing, reviewing, or approving documents before they were disseminated to Gemini, Plaintiffs, or any class member.  As a result, Mr. Moro and the Court are left guessing which financial statements or balance sheets form the basis of Plaintiffs' allegations, which class members (if any) they were sent to, when they were sent, and the substance of the alleged misrepresentation(s) in those materials.  This failure to comport with Rule 9(b) is fatal.  *Taylor v. Westor Cap. Grp.*, 943 F. Supp. 2d 397, 403–04 (S.D.N.Y. 2013) (dismissing 10b-5(c) claim where complaint "contains virtually no details about this alleged scheme: it is impossible to tell what . . . acts were performed, who performed them, when they were performed, what securities were involved, and what effect this scheme had on the market for those securities"); *In re Tower Auto.*

*Secs. Litig.*, 483 F. Supp. 2d 327, 349–50 (S.D.N.Y. 2007) (dismissing 10b-5(a) and (c) claim for failure to comply with Rule 9(b)).

### 2.      Lending Agreement Solvency Representation [Compl. ¶ 364(d)]

In a further effort to support their scheme liability claim, Plaintiffs allege that "Defendant Moro *caused* Genesis Global Capital to represent in connection with every sale of Genesis Yield securities it executed from July 1, 2022 on with Plaintiffs and members of the Class that it was in fact solvent, when it was not.  This includes *causing* Genesis Global Capital to misleadingly include the $1.1 billion amount of the DCG Promissory Note on its balance sheet as a 'current asset and/or receivable.'"  Compl. ¶ 364(d) (emphasis added).  Plaintiffs' charge appears to arise out of a representation contained in the lending agreements between Genesis Global Capital and lenders which states:  "[Genesis Global Capital] represents and warrants that it is not insolvent and is not subject to any bankruptcy or insolvency proceedings under any applicable laws." *Id.* ¶ 130. Here too, Plaintiffs assert no facts demonstrating how Mr. Moro supposedly "caused" this representation, and this lending agreement statement cannot support a finding of scheme liability as to Mr. Moro for the simple fact that Plaintiffs do not, and cannot, allege that these representations were false *at the time they were made*.  *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 577 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015).  Moreover, Plaintiffs executed their lending agreements long before Plaintiffs allege Genesis Global Capital became insolvent in June 2022, *see* ECF Nos. 38-2, 38-3, 38-5, 34-2, and Plaintiffs have not alleged that any other lender or class member executed such an agreement following 3AC's bankruptcy or DCG's assumption of Genesis Global Capital's liabilities related to 3AC.

### 3.      Mr. Moro's July 6, 2022 Tweet [Am. Compl. ¶ 364(f)]

The final basis for Plaintiffs' "scheme liability" claim against Mr. Moro is Plaintiffs' blanket allegation that he "publicly announced on Twitter that DCG had assumed certain liability

to ensure that Genesis [Global Capital] had the capital to operate, when it had not." Am. Compl. ¶ 364(f). Like Plaintiffs' claim of alleged misrepresentations in the financial statements and balance sheets addressed above, this tweet allegation is not a "'deceptive act' that is distinct from any alleged misrepresentations,'" and therefore cannot support a claim for "scheme liability." *Menaldi*, 164 F. Supp. 3d at 658; *Kelly*, 817 F. Supp. 2d at 344.

Taking this allegation at face-value, however, Plaintiffs fail to even allege that Mr. Moro's July 6, 2022 tweet was false or misleading. First, the tweet states that "DCG has assumed certain liabilities of Genesis [Global Capital] related to [3AC]. . . ." Am. Compl. ¶ 231. While Plaintiffs may quibble with the means by which DCG accomplished this assumption of the 3AC debt, namely attacking the terms and mechanism of the DCG Promissory Note, their own Amended Complaint demonstrates that Genesis Global Capital in fact exchanged an *uncollectable* $1.1 billion receivable from 3AC for a *collectable* $1.1 billion receivable from DCG. *Id.* (admitting that "DCG entered into a 10-year promissory note with Genesis Global Capital at an interest rate of 1%--due in 2023").

Plaintiffs' concerns about Mr. Moro's tweet appear to result from their conflating what Mr. Moro actually stated in the second half of the tweet—that DCG assumed the Company's 3AC liabilities "to ensure we [the Company] have the ***capital*** to operate and scale our business for the long-term"—with Plaintiffs' belief that the DCG Promissory Note "did nothing to improve Genesis Global Capital's immediate ***liquidity*** position." *Id.* (emphasis added). Since Mr. Moro's tweet said nothing about the effect of the DCG Promissory Note on Genesis Global Capital's "liquidity," that is not a grounds to find that the tweet was false or misleading. Moreover, Plaintiffs assert no facts to show whether and how Mr. Moro was aware of or reckless as to the alleged falsity of his tweet. And while Plaintiffs take issue with the way Genesis Global Capital accounted for

the DCG Promissory Note on its books, they admit that, without the DCG Promissory Note, the Company would have had to "declare itself insolvent" as a result of the 3AC liquidation. *Id.* ¶ 221. Instead, due to the support of DCG, the Company was able to report positive equity on its balance sheet, *id.* ¶ 252 ("the balance sheet showed 'Total member's equity' of just $92.5 million"), meaning it had the *capital* to continue operations rather than declaring itself insolvent, exactly as Mr. Moro stated in his tweet. *Id.* ¶ 225. Accordingly, because Plaintiffs fail to allege that Mr. Moro committed a deceptive or manipulative act, their claim for scheme liability under Section 10(b) and Rule 10b-5 must be dismissed.

### B. Plaintiffs Allege No Facts Demonstrating Mr. Moro Acted With Scienter

Plaintiffs' scheme liability claim fails for the additional, independent reason that they fail to plead any facts demonstrating that Mr. Moro engaged in any activity with the requisite scienter. To state a claim for scheme liability, Plaintiffs must plead particularized facts establishing a strong inference of scienter. *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005); PSLRA, 15 U.S.C. § 78u-4(b)(2)(A). *See also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (holding to properly plead scienter for a securities fraud claim under Rule 9(b), plaintiff must allege "facts that give rise to a strong inference of fraudulent intent"). Moreover, in a case involving "multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter (when required) for each defendant; guilt by association is impermissible." *SEC v. Lee*, 720 F. Supp. 2d 305, 321 (S.D.N.Y. 2010) (citing *Meijer, Inc. v. Ferring B.V. (In re DDAVP Direct Purch. Antitrust Litig.)*, 585 F.3d 677, 695 (2d Cir. 2009)). A "strong inference" of scienter can be established from: (i) allegations that the defendant had a "motive and opportunity" to commit fraud; or (ii) allegations that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000).

### 1.      Motive and Opportunity

The Amended Complaint is devoid of any allegation that Mr. Moro acted with the requisite scienter.  Plaintiffs' only allegations regarding motive are conclusory statements that the alleged scheme "resulted in higher compensation for Genesis Global Capital, Defendant DCG, and Defendant Silbert," Am. Compl. ¶ 359, and that "Genesis Global Capital knew or had reason to know that its insolvency would likely result in mass investor redemptions, the end of its business, and losses to Defendants Silbert, DCG, and others." *Id.* ¶ 360.  Plaintiffs do not (and cannot) assert that Mr. Moro had any ownership stake in Genesis Global Capital or DCG, and thus fail to "assert a concrete and personal benefit [to Mr. Moro] . . . resulting from the [alleged] fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).

At most, Plaintiffs may argue that the Amended Complaint *implies* Mr. Moro acted with a motive to keep Genesis Global Capital afloat, but even ignoring the failure to specifically allege that motive, such a motive is still insufficient as "[m]otives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to . . . increase officer compensation, do not constitute 'motive' for purposes of this inquiry." *ECA, Local 134 IBEW Joint Pension Tr. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009); *Russo v. Bruce*, 777 F. Supp. 2d 505, 519–20 (S.D.N.Y. 2011) ("[t]he theory that defendants engaged in fraud to protect the very survival of the company is far too generalized (and generalizable) to allege the proper concrete and personal benefit required by the Second Circuit."); *Russo v. Bruce*, 777 F. Supp. 2d 505, 519–20 (S.D.N.Y. 2011); *see also In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 216 (S.D.N.Y. 2008) ("[A]ny corporation would be motivated to make a profit [or] to avoid bankruptcy."); *Iowa Pub. Employee's Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 333 (S.D.N.Y. 2013) ("a general desire to maintain a profitable business relationship will not, by itself, support a motive to defraud").

### 2.      Conscious Misbehavior or Recklessness

To the extent Plaintiffs hope to remedy their failure to plead motive and opportunity by alleging circumstances indicating that Mr. Moro engaged in conscious misbehavior or was reckless, "the strength of the circumstantial allegations must be correspondingly greater." *Kalnit*, 264 F.3d at 142 (citation omitted).  There is a "significant burden on the plaintiff in stating a fraud claim based on recklessness." *Chill v. GE*, 101 F.3d 263, 270 (2d Cir. 1996).  Recklessness "cannot be merely enhanced negligence." *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 624 (S.D.N.Y. 2005).  It is "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 535 (S.D.N.Y.) (citing *Novak*, 216 F.3d at 308), aff'd, 357 F. App'x 393 (2d Cir. 2009)); *see also Chill*, 101 F.3d at 269 (same).  Here again, Plaintiffs fall far short of satisfying the demanding standard for pleading scienter.

Plaintiffs' factual allegations in support of Claim II against Mr. Moro boil down to (i) Mr. Moro's tweet that "DCG has assumed certain liabilities of Genesis [Global Capital] related to [3AC] to ensure we have the capital to operate and scale our business for the long-term," Am. Compl. ¶¶ 231, 364, and (ii) certain unidentified financial documents disseminated to Gemini were false and misleading.  *Id*. ¶ 364.  As discussed above, *supra* Section I.A.3, Mr. Moro's tweet was factually accurate according to other allegations in Plaintiffs' Complaint—DCG *did* assume the 3AC liability by providing the Company a promissory note and, as a result, Genesis Global Capital *did* continue to maintain positive equity on its balance sheet, meaning it had sufficient capital to continue to operate.  *See, e.g.*, *id*. ¶¶ 223, 252.

But even assuming, as Plaintiffs allege, the Company should have accounted for the DCG Promissory Note in a different manner under GAAP, Plaintiffs do not allege any facts that

demonstrate *Mr. Moro* played any role in determining the proper accounting treatment before issuing his tweet or allegedly causing the financial statements at issue to be disseminated.  Nor have they alleged that Mr. Moro has any relevant background, training, or experience with GAAP accounting sufficient for him to doubt those who did make the accounting determinations — much less that he was "highly unreasonable" in relying on them.  *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d at 535.  Further, it is well-settled in the Second Circuit that "GAAP violations, accounting irregularities, and the issuance of a restatement, 'standing alone, are insufficient to state a securities fraud claim.'"  *Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 618 (S.D.N.Y. 2015) (citing *Novak*, 216 F.3d at 309).  And Plaintiffs' own allegations make clear that that the documents and communications disseminated by Genesis employees to Gemini in July 2022 made it readily apparent that the $1.1 billion DCG Promissory Note had been included, whether correctly or incorrectly, as a "receivable from related parties" under "Current Asset," Am. Compl. ¶¶ 232–244, a fact that eviscerates Plaintiffs' conclusory allegation that Mr. Moro and other defendants engaged in a fraudulent scheme to hide this fact.

Because Plaintiffs fail to allege facts to support the strong inference of scienter necessary to maintain their "scheme liability" claim against Mr. Moro, Plaintiffs' Section 10(b) and Rule 10b-5 claim should be dismissed.

### C.   Plaintiffs Have Not Sufficiently Alleged Reliance, Loss Causation, or Damages

To plead reliance adequately, Plaintiffs must allege facts showing that they knew of the alleged misstatement or deceptive act, and engaged in the transaction based on that specific statement or act.  *See In re Vivendi*, 838 F.3d 223, 256–57 (2d Cir. 2016); *Stoneridge Inv. P'ers, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148 (2008).  Further, to proceed with a claim under the Exchange Act, a plaintiff must adequately allege a "causal link between the alleged misconduct and the economic harm ultimately suffered."  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172

(2d Cir. 2005).  The DCG Memorandum provides a detailed explanation of Plaintiffs' failures to plead reliance, loss causation, and damages for both Genesis' alleged misrepresentations and the DCG Defendants' allegedly deceptive acts.  DCG Memorandum at Sections I.C.2 – I.C.4.  To the extent those arguments apply to Mr. Moro's allegedly deceptive acts, they are incorporated herein.  This memorandum focuses on two additional arguments specific to Mr. Moro.

First, as discussed in the DCG Memorandum, Plaintiffs do not include any allegations that Genesis' misstatements—such as those allegedly contained in the financial statements disseminated by Genesis employees—were made to Plaintiffs or class members.  *Id.* at I.C.2.  Instead, they try unsuccessfully to establish reliance indirectly by claiming misrepresentations were made to Gemini who was acting as the "agent" of the Gemini Earn Plaintiffs, despite the fact Gemini did not make investment decisions on Plaintiffs' behalf.  *Id.* (citing *In re Fine Host Corp. Sec. Litig.*, 25 F. Supp. 2d 61, 71–72 (D. Conn. 1998) (agency theory of reliance applies only where plaintiffs "allege that an agent acting on their behalf reasonably relied on the alleged misrepresentations of the defendants")).  In that same vein, Plaintiffs do not include any allegations that any Plaintiff or class member saw—much less relied on—Mr. Moro's July 6, 2022 tweet.  Indeed, Plaintiffs' Complaint strongly suggests that no Plaintiff ever saw Mr. Moro's tweet, as they concede their knowledge of the tweet came from Gemini:  "***According to Gemini***, for example, on July 6th, [2022,] Defendant Moro, then-CEO of Genesis, tweeted . . . ."  Am. Compl. ¶ 231.  As a result, Plaintiffs have failed to plead that any Plaintiff knew of or made any decision based on any of the alleged misstatements or deceptive acts attributed to Mr. Moro in the Complaint.  *See In re Vivendi*, 838 F.3d at 256–57; *Stoneridge Inv. P'ers, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148 (2008).

Second, loss causation is established only where "the relationship between the plaintiffs' investment loss and the information misstated or concealed by the defendant . . . is sufficiently direct." *Lentell*, 396 F.3d at 174.  As explained in the DCG Memorandum, Plaintiffs' claimed injury—the freezing of their digital assets—is unconnected to any allegedly false or misleading representations by the defendants, *see* DCG Memorandum at I.C.3, and is further discredited by Plaintiffs' own admission that the FTX collapse triggered Genesis Global Capital's inability to "honor redemption requests" from lenders.  Am. Compl. ¶¶ 39–40.  While this admission is devastating to Plaintiffs' claims against all defendants, it is even more fatal to their claims against Mr. Moro given the FTX collapse and subsequent decision by Genesis Global Capital to suspend redemption requests occurred on November 16, 2022—over four months after Mr. Moro's tweet and *three months after Mr. Moro left the Company*.  Am. Compl. ¶ 56.  Given (i) there is a significant time gap between Mr. Moro's alleged conduct and the alleged injury to Plaintiffs, (ii) Mr. Moro was not at the company or involved in any decisions-making for at least three months before Plaintiffs' alleged injury, and (iii) the intervening FTX collapse on November 16, 2022 caused the Company to "experience of a slew of withdrawal requests" leading "Genesis Global Capital [to] unilaterally stop[] honoring redemption requests," Am. Compl. ¶¶ 39–40, Plaintiffs cannot plausibly argue that their "loss was caused by the alleged [misconduct of Mr. Moro months earlier] as opposed to intervening events."  *Lentell*, 396 F.3d at 174 (citing *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994)).

For all of these reasons, Plaintiffs have failed to sufficiently plead their scheme liability claim against Mr. Moro and Plaintiffs' claim should therefore be dismissed.

## II.   COUNTS I AND III FAIL BECAUSE PLAINTIFFS DO NOT ADEQUATELY ALLEGE CONTROL PERSON LIABILITY[4]

Plaintiffs' attempt to allege that Mr. Moro is liable based on a theory of "control person liability" pursuant to Section 15 of the Securities Act and Section 20(a) of the Exchange Act, Am. Compl. ¶¶ 325–350 (Claim I), 367–386 (Claim III), also fails.

To establish control person liability under Section 20(a) of the Exchange Act, Plaintiffs must plead facts demonstrating "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Ontario Teachers' Pension Plan Board v. Teva Pharm. Ind. Ltd.*, 432 F. Supp. 3d 131, 175 (D. Conn. 2019); *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (same). The requirements for a control person claim under Section 15 of the Securities Act are similar. *See DeMaria v. Andersen*, 153 F. Supp. 2d 300, 314 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 170 (2d Cir. 2003) ("In order to survive a motion to dismiss a claim under Section 15, plaintiffs must allege: (i) an underlying primary violation of the securities laws by the controlled person; (ii) control over the controlled person; and (iii) particularized facts as to the controlling person's culpable participation in the violation of the controlled person.").

### A.   Plaintiffs Fail to Allege a Primary Violation of the Securities Laws

Plaintiffs base their control person liability claims against Mr. Moro on alleged violations by Genesis Global Capital of (i) Sections 5 and 12(a)(1) of the Securities Act and (ii) Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. As a preliminary matter, "there is no private right of action under § 5 of the Securities Act." *Levitt v. J.P. Morgan Sec. Inc.*, 9 F. Supp. 3d 259, 273–74 (E.D.N.Y. 2014); *Forsberg v. Always Consulting, Inc.*, No. 06-CV-13488 (CS), 2008 WL

---

[4] Mr. Moro also moves to dismiss Count I as to all Plaintiffs except Translunar because their claims are barred by the statute of limitations. This argument is fully briefed in the DCG Memorandum, Section I.D., and incorporated by reference herein.

5449003, at *2 (S.D.N.Y. Dec. 31, 2008).  Rather, "private civil liability for violations of § 5 exists only when the provisions of § 12 have been met."  *Levitt*, 9 F. Supp. 3d at 274.  Section 12(a)(1) provides, in relevant part, that "[a]ny person **who offers or sells a security** in violation of [Section 5] . . . shall be liable . . . to the person purchasing such security from him." 15 U.S.C. § 77l(a)(1) (emphasis added).[5]  Similarly, "to establish primary liability under § 10(b) and Rule 10b-5 of the Exchange Act, a plaintiff is required to prove that **in connection with the purchase or sale of a security** the defendant, acting with scienter, made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device."  *SEC v. First Jersey Secs. Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996) (emphasis added).

As explained in Section II of the DCG Memorandum, incorporated by reference herein, there is no allegation that Genesis Global Capital or Mr. Moro offered or sold any security to any Plaintiff.  Instead, Plaintiffs allege that certain lending agreements entered into between Genesis Global Capital and Plaintiffs are the "securities" underlying their claims.  Am. Compl. ¶¶ 142–75.  At a high level, these lending agreements simply formed a contractual relationship between the parties and allowed Plaintiffs to deposit digital assets *they already owned* with Genesis Global Capital (or Gemini) in exchange for regular interest payments and withdraw those digital assets on demand.  *Id.* at ¶¶ 120–23, 125–26, 128.  There is no credible allegation that the lending agreements were, or even could be, "purchased" or "sold."  And even if Plaintiffs could somehow characterize entering into these contractual agreements with the Company as a "sale," there is still no plausible

---

[5] Section 12 liability extends only to "statutory sellers," *Levitt*, 9 F. Supp. 3d at 273–74, meaning one who: "(1) 'passed title, or other interest in the security, to the buyer for value' or (2) 'who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner.'"  *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (quoting *Pinter v. Dahl*, 486 U.S. 622, 642 (1988)); *see also Feiner v. SS&C Techs., Inc.*, 47 F. Supp. 2d 250, 254 (D. Conn. 1999) (quoting same regarding solicitation); *Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, No. 11 CIV. 2484 (KMW) (FM), 2013 WL 944777, at *8 (S.D.N.Y. Mar. 12, 2013) ("A 'statutory seller' is one who 'in a public offering, either transferred title to the purchaser or successfully solicited the transfer for financial gain.'") (citations omitted).

argument that these lending agreements themselves constitute securities.  *See* DCG Memorandum at II.B.

Accordingly, Plaintiffs have failed to allege both that (i) there was an offer or sale by Genesis Global Capital and (ii) there was any security, meaning they have failed to allege a primary violation of the Securities Act or the Exchange Act and their claims against Mr. Moro for control person liability must be dismissed.  *See Laser Mortgage Mgmt., Inc. v. Asset Secur. Corp.*, No. 00 Civ. 8100 (WRB), 2001 WL 1029407, at *12 (S.D.N.Y. Sept. 6, 2001) ("[A]s we have previously concluded that plaintiff has not shown a primary violation . . . plaintiff's Section 15 claim ... is also dismissed."); *Fant v. Perelman*, Nos. 97 CIV. 8435 (LAP), 97 CIV. 8436 (LAP), 1999 WL 199078 at *16 (S.D.N.Y. Apr. 19, 1999) ("Without a primary violation ... there can be no secondary, or derivative, violation under section 20(a), which creates liability for 'controlling persons.'").

### B.    Plaintiffs Fail to Allege Mr. Moro Was a Culpable Participant in any of the Company's Alleged Violations of the Securities Laws

Even if Plaintiffs had adequately pleaded a primary violation by Genesis Global Capital, which they did not, dismissal of Plaintiffs' control person claims against Mr. Moro would still be appropriate because Plaintiffs do not allege particularized facts establishing "culpable participation" by Mr. Moro.  The culpable participation element "require[s] a showing of both fraudulent conduct and a culpable state of mind."  *Laser Mortg. Mgmt Inc. Asset Secur.*, No. 00 Civ. 8100 (NRB), 2001 WL 1029407, at *11 (S.D.N.Y Sept. 6, 2001).  What is more, the "culpable participation element is subject to the heightened pleading requirement of the PSLRA," *id.*, and Plaintiffs' Complaint must therefore give rise to a "strong inference of culpable participation."  *In re Deutsche Telekom*, No. 00 CIV 9475 (SHS), 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002).[6]

---

[6] While the district courts are divided, there is substantial authority holding that culpable participation must also be alleged to state a claim under Section 15 of the Securities Act, and the "same considerations that apply in the context of control person liability under the Exchange Act apply to control person liability pursuant to the 1933 Act." *Ellison*

Plaintiffs fail to plead culpable conduct sufficient to support their control person liability claims against Mr. Moro for the same reasons they failed to adequately allege scienter for their primary fraud liability claim against him.  *See supra* Section I.B.  Plaintiffs' unsupported allegation that one tweet by Mr. Moro was false or misleading offers no facts to demonstrate that Mr. Moro acted with knowledge of or reckless disregard to its accuracy.   And unsupported, general allegations that Mr. Moro "caused" Genesis Global Capital to disseminate financial statements and balance sheets that Plaintiffs believe incorrectly accounted for the DCG Promissory Note under GAAP are not sufficient when there are no specific allegations regarding which documents were distributed, when and to whom they were distributed, and whether and how Mr. Moro had any involvement in the determination of how to account for the DCG Promissory Note under GAAP or any basis to question that determination if made by others.  Put simply, Plaintiffs' conclusory characterizations and statements about Mr. Moro's alleged involvement are not an adequate substitute for the requisite particularized allegations of fact required to establish control person liability, and Plaintiffs' claims against him should therefore be dismissed.

## III.   COUNTS IV AND V FAIL BECAUSE PLAINTIFFS DO NOT ADEQUATELY ALLEGE (IN THE ALTERNATIVE) ANY STATE-LAW CLAIMS

Plaintiffs assert claims under Connecticut and New York consumer protection statues "in the alternative to Plaintiffs' Securities Act claims and Plaintiffs' Exchange Act claims in the event a determination is made that the Genesis Yield securities do not qualify as 'securities' under federal law."  Am. Compl. ¶ 44.  Because these claims are premised on the same factual allegations as the Exchange Act claims, they fail for many of the same reasons.  Mr. Moro incorporates herein the

---

v. *Am. Image Motor Co.*, 36 F. Supp. 2d 628,638 (S.D.N.Y. 1999). *See also Pub. Empls.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010); *P. Stolz Family P'ship, L.P. v. Daum*, 166 F. Supp. 2d 871, 873 (S.D.N.Y. 2001), *rev'd in part on other grounds by* 355 F.3d 92 (2d Cir. 2004); *Kane v. Wichita Oil Income Fund*, No. 90 Civ. 5714 (PKL), 1991 WL 233266, at *7 (S.D.N.Y. Oct. 29, 1991).

arguments for dismissal of these state-law claims found in Section III of the DCG Memorandum, and offers the following additional arguments specific to Plaintiffs' CUPTA claim against him.

Under CUTPA, "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a). The Connecticut statute defines "trade or commerce" as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." CONN. GEN. STAT. § 42-110a(4). The Connecticut Appellate Court has explained that "[t]he meaning of § 42-110b(a) is plain and unambiguous; it proscribes only unfair trade practices *occurring within the state of Connecticut*." *W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 78 A.3d 167, 187–88 (Conn. App. Ct. 2013), aff'd, 153 A.3d 574 (Conn. 2016) (emphasis added); *accord Au New Haven, LLC v. YKK Corp.*, No. 1:15-CV-3411 (GHW), 2020 WL 4366394, at *11 (S.D.N.Y. July 30, 2020) ("CUPTA covers only unfair or deceptive practices that occur in the course of *trade or commerce in Connecticut*." (emphasis in original)). Accordingly, CUTPA claims are properly dismissed where the conduct complained of did not occur in Connecticut. *Meszaros v. Meszaros*, No. 18-cv-05731 (DLI) (RER), 2019 WL 13225390, at *5 (E.D.N.Y. Sept. 30, 2019) (dismissing CUTPA claim because alleged conduct "did not occur in Connecticut"); *Conn. Gen. Life Ins. v. True View Surgery Ctr. One, LP*, 128 F. Supp. 3d 501, 513 (D. Conn. 2015) (holding plaintiff failed to state CUTPA claim because the "trade" or "commerce" complained of did "not include conduct occurring in Connecticut"); *see also Au New Haven*, No. 1:15-CV-3411 (GHW), 2020 WL 4366394, at *15 (CUTPA claim failed because plaintiffs' "invocation of CUTPA to punish conduct" outside of Connecticut "is flatly inconsistent with the express geographical limitation in the text itself").

In addition to the reasons discussed in the DCG Memorandum, Plaintiffs' CUTPA claim against Mr. Moro must also be dismissed based on Plaintiffs' failure to allege that that any of Mr. Moro's alleged misconduct occurred in Connecticut or, in fact, that Mr. Moro has ever conducted any business in Connecticut or has any connection to Connecticut whatsoever.  Plaintiffs did not (and cannot) allege that Mr. Moro is a resident of Connecticut, he is a resident of New York, and they did not (and cannot) allege that any Genesis entity, all of which are based in New York, has any connection to Connecticut.  Similarly, none of the Plaintiffs are residents of Connecticut and, therefore, Plaintiffs do not allege any injury occurred in the state.  In fact, the only connections Plaintiffs allege between any party and Connecticut are that (i) DCG's principal place of business is located in Stamford, Connecticut and (ii) Silbert, who is currently a resident of Rye, New York, was a resident of Connecticut during part of the Class Period.  Am. Compl. ¶¶ 52–53.  As a result, Plaintiffs CUTPA claim against Mr. Moro must be dismissed because "such a thin nexus to Connecticut fails to encompass trade or commerce 'in this state.'"  *Reyes v. Vertical Retail Sols., LLC*, No. 085003266S, 2011 WL 1168820, at *1 (Conn. Super. Ct. Feb. 24, 2011) (striking CUTPA claim because the "alleged transgressions have no impact on Connecticut whatsoever except that the counterclaimant is located here"); *In re Trilegiant Corp, Inc.*, 11 F. Supp. 3d 82, 114–19 (D. Conn. 2014) (granting motion to strike CUTPA nationwide class action allegations because "none of the named Plaintiffs [were] Connecticut residents, and none of the Plaintiffs were injured in Connecticut" despite the defendants' headquarters being in Connecticut), *aff'd sub nom. Williams v. Affinion Grp., LLC*, 889 F.3d 116 (2d Cir. 2018).

Accordingly, for the reasons expressed in the DCG Memorandum and herein, Plaintiffs CUTPA and NYUDTPA claims against Mr. Moro, like the Securities Act and Exchange Act claims that came before, are deficient and should be dismissed as to Mr. Moro.

## **CONCLUSION**

For the foregoing reasons, Mr. Moro respectfully requests that the Court dismiss Plaintiffs'

Amended Complaint against him in its entirety for failure to state claims upon which relief can be

granted.

Dated: September 11, 2023

*/s/ Marcus Asner*
_____

**SPEARS MANNING & MARTINI LLC**        **ARNOLD & PORTER KAYE SCHOLER LLP**
Joseph W. Martini (CT07225)             Marcus Asner (*pro hac vice*)
2425 Post Road, Suite 203               Tyler Fink (*pro hac vice*)
Southport, CT 06890                     Kodjo Kumi (*pro hac vice*)
Telephone: (203) 292-9766               250 W 55th Street
jmartini@spearsmanning.com              New York, NY 10019
                                        Telephone: (212) 836-8000
                                        marcus.asner@arnoldporter.com

                                        Christian Schultz (*pro hac vice*)
                                        601 Massachusetts Ave, NW
                                        Washington, DC 20001-3743
                                        Telephone: (202) 942-5000
                                        christian.schultz@arnoldporter.com

                                        *Counsel to Defendant Soichiro "Michael" Moro*