```
1              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
2

3      _____
                                       )
4      WILLIAM MCGREEVY, ET AL.,       )
                                       ) No. 3:22-cr-00132-SRU-1
5                      Plaintiffs,     )
                                       ) June 12, 2023
6                                      )
       v.                              ) 9:03 a.m.
7                                      )
                                       ) 915 Lafayette Boulevard
8      DIGITAL CURRENCY GROUP,         ) Bridgeport, Connecticut
       INC. ET AL.,                    )
9                                      )
                       Defendants.     )
10     _____)

11

12

13         SCHEDULING CONFERENCE AND MOTION HEARING

14

15

16     B E F O R E:

17           THE HONORABLE STEFAN R. UNDERHILL, U.S.D.J.

18

19

20

21

22

23                   Official Court Reporter:
                     Melissa J. Cianciullo, RDR, CRR, CRC
24                   (203) 606-1794

25
```

```
 1   A P P E A R A N C E S:

 2   For the Plaintiffs:

 3         SILVER GOLUB & TEITELL LLP
                 One Landmark Square, 15th Floor
 4               Stamford, CT 06901
                 203-325-4491
 5               E-mail:  Isloss@sgtlaw.com
           BY:  IAN WISE SLOSS, ESQ.
 6
           KAPLAN FOX & KILSHEIMER LLP
 7               800 Third Avenue, 38th Floor
                 New York, NY 10022
 8               212-687-1980
                 E-mail:  Jcampisi@kaplanfox.com
 9         BY:  DONALD R. HALL, ESQ.

10   For the Defendants:

11         WEIL, GOTSHAL & MANGES
                 767 Fifth Avenue
12               Library 35 Floor
                 New York, NY 10153
13               212-310-8626
                 E-mail:  Caroline.zalka@weil.com
14         BY:  CAROLINE ZALKA, ESQ.
                 STEFANIA DI TROLIO VENEZIA, ESQ.
15
           DAY PITNEY LLP
16               One Stamford Plaza, 263 Tresser Blvd.
                 Stamford, CT 06901
17               203-977-7383
                 E-mail:  Tdgoldberg@daypitney.com
18         BY:  THOMAS D. GOLDBERG, ESQ.

19

20

21

22

23

24

25
```

```
 1            THE COURT:  Good morning.  This is Stefan
 2   Underhill.  We're on the record.
 3            Who is on the call, please?
 4            MR. HALL:  Good morning, your Honor.  You
 5   have Donald Hall from Kaplan Fox & Kilsheimer, one of
 6   the co-lead counsel appointed by your Honor.
 7            MS. ZALKA:  Good morning, your Honor.  Go
 8   ahead.  Sorry.
 9            MR. SLOSS:  You also have Ian Sloss from
10   Silver Golub & Teitell, another one of the co-lead
11   appointed counsel for plaintiffs.
12            MS. ZALKA:  And for defendants, your Honor,
13   good morning, it's Caroline Zalka from Weil, Gotshal.
14            MS. VENEZIA:  Also on the phone from Weil,
15   your Honor, is Stefania Venezia.
16            MR. GOLDBERG:  And this is Tom Goldberg from
17   Day Pitney also for defendants.
18            THE COURT:  All right.  Thank you.  It would
19   be helpful to my court reporter if each of you would
20   identify yourselves when you start speaking.
21            Well, we've got a number of things to take
22   up.  I think it makes sense to start with the motion
23   for a partial modification so that you can understand
24   where we stand there before we talk about scheduling
25   and so forth.
```

1          I've read the papers.  I'm happy to hear

2     anybody who wants to make a presentation.

3          MR. HALL:  Your Honor, this is Donald Hall.

4          We think the papers set forth the reasons for

5     the modification of the stay.  We are happy to

6     address any questions your Honor has, but I won't

7     repeat what is in the paper.

8          The one point that I noticed that I will just

9     say briefly that I noticed in reviewing all the

10    papers again in preparation for this conference is

11    that defendants suggest that we should be in the

12    bankruptcy court asking for the documents, and it

13    just occurred to me that we would still have to file

14    this motion before your Honor if we were to do that.

15    So it would still require your Honor to have a

16    determination on the modification that would lift to

17    stay.

18          But other than that, I think our papers cover

19    our position, but I'm happy to answer any questions

20    you may have.

21          THE COURT:  Well, maybe flush out that

22    statement.  Why would you need to file this motion if

23    you sought or were successful in obtaining the

24    documents in the bankruptcy court?

25          MR. HALL:  Because pursuant to the PSLRA

```
 1    stay, we are unable to follow any discovery, formal
 2    discovery in any court.  We can't serve any subpoena
 3    or even issues like we're talking about here, request
 4    to the defendants.  So even if we would do a subpoena
 5    on the bankruptcy court or seek to formally obtain
 6    those documents from the bankruptcy under the PSLRA,
 7    I believe it's an accurate reading that the stay
 8    would still be in place and we'd have to ask your
 9    Honor to lift it before we went down that path also.
10            THE COURT:  Before you issued a subpoena in
11    this case to the bankruptcy court?
12            MR. HALL:  Correct.  Correct, your Honor.
13            THE COURT:  Right.  As I understood the
14    defendants' arguments, basically they're saying you
15    should have sought it formally or informally from the
16    bankruptcy court.  In other words -- let's start at
17    the beginning.
18            Have you filed a claim in the bankruptcy
19    court?
20            MR. HALL:  No, your Honor.  We're not parties
21    to the bankruptcy court.  The bankruptcy court has
22    committees and others that have been appointed that
23    may cover some of the claims of class members in this
24    action, but we have not filed any claims in the
25    bankruptcy court and are not in the bankruptcy court.
```

```
 1          THE COURT:  So basically what?  You're going

 2   to have your claims, if any, against the subsidiaries

 3   resolved without any representation in the bankruptcy

 4   court?

 5          MR. HALL:  We will monitor.  As counsel for

 6   the class of which you appointed us to, we are

 7   monitoring the bankruptcy court but we're monitoring

 8   it to make sure that we protect the claims of our

 9   clients to be able to bring in the class, be able to

10   bring the claims we brought before your Honor and

11   ones that may be asserted in the amended complaint.

12          But we are not seeking any resolution

13   directly in the bankruptcy court, though some of what

14   the bankruptcy court may eventually put in place --

15   and I think defendants have referenced some of this

16   in their papers -- will possibly resolve some of

17   those claims but we need to make sure that those

18   claims are fairly and that they don't give releases

19   that they shouldn't give releases to and that we

20   continue to protect the class in this action.

21          And, quite frankly, that is, as we point out

22   in our papers, is one of the reasons why we think

23   it's important that we have the documents that have

24   already been gathered, collected and produced so we

25   can make those determinations on behalf of the class
```

1     that we have before your Honor.

2          THE COURT:  Are you aware of any class member

3     who has filed a claim in the bankruptcy court?

4          MR. HALL:  There are committees, different

5     creditor committees and unsecured creditor

6     committees, those that possibly those individuals

7     could be class members.  I don't know because I

8     haven't thought about this a lot as far as whether

9     they're found in the bankruptcy as sort of an opt out

10    -- if they filed an individual claim, they would be

11    opting out of our litigation, but I don't know if

12    that applies in the bankruptcy.

13         And Mr. Sloss may have more information on

14    the bankruptcy individuals, but I believe there is --

15    there is some overlap for sure, your Honor.

16         THE COURT:  Okay.  Why would filing a claim

17    in the bankruptcy court against the subsidiaries be

18    an effective opt out of the class in this case?

19         MR. HALL:  I'm not saying it was.  That's why

20    I said it just occurred to me because if they were to

21    file nonbankruptcy claims, that would have been an

22    effective opt out, and they may be released from the

23    claims in this litigation for themselves.  And our

24    interest is protecting the interests of our absent

25    class members here and making sure they have adequate

1    protections to determine where they would like their

2    claim to be pursued, whether it's the bankruptcy

3    court or against the nonbankruptcy entities in this

4    action.

5              THE COURT:  All right.

6              MS. ZALKA:  Your Honor, this is Ms. Zalka for

7    defendants.  If I could be heard on this point.

8              THE COURT:  Sure.

9              MS. ZALKA:  I think, you know, there's two

10   different claims that are potentially at interest

11   here.  Right?  So there is claims that I think

12   creditors may assert and file proof of claim in the

13   bankruptcy, they're a party and interest in the

14   bankruptcy.  Those claims would be against,

15   obviously, Genesis, a completely separate entity.  I

16   don't think that there would be any opt outs.  If

17   they file proof of claim as a creditor in the

18   bankruptcy proceeding, in Genesis's bankruptcy

19   proceeding, I don't see how that would impact in any

20   way, shape or form the claims that they have asserted

21   under the PSLRA against DCG which are security-type

22   claims against a different entity.

23              So I don't see how there would be any opting

24   out if you're filing a proof of claim as a creditor

25   in the bankruptcy vis-à-vis these set of claims that

1   are being asserted against DCG in this proceeding.

2          I think the second point I would make is we

3   had previously understood based on their briefs that

4   they had said that their rights were going to be

5   impacted given that there was a bar date in the

6   bankruptcy, which obviously would be for the filing

7   of claims, proof of claim in the bankruptcy.

8          So I just want to flag that that has

9   previously been an argument that they had presented

10  as to why they apparently need these documents.

11         Third would be -- I think there is really two

12  things.  There are two paths here, right?  So I think

13  if they need the documents for purposes of as a

14  creditor and as a party interest in the bankruptcy

15  proceeding because they're evaluating claims against

16  Genesis and their claim, their right to recover

17  against Genesis, then they can proceed on that basis

18  as a creditor and party in interest in the

19  bankruptcy.  Whatever documents they would be

20  entitled to, they would be on equal footing with

21  every other creditor in the bankruptcy proceeding.

22         If they want the documents for purposes of

23  using them in this action, is that's what the PSLRA

24  prohibits.  They're not entitled to them.  There is

25  an automatic stay of all discovery until the

1    threshold's sufficiency of the complaints have been

2    established.

3         So if they need the documents for the

4    bankruptcy and to evaluate their position in the

5    bankruptcy, they can proceed on that basis in the

6    bankruptcy against Genesis.

7         With respect to their claims against DCG

8    under the PSLRA, they're not entitled to any document

9    discovery until there has been a motion to dismiss,

10   evaluation of legal sufficiency.

11        THE COURT:  Mr. Hall, do you want to respond?

12        MR. HALL:  Yes.  I was waiting for your

13   Honor.  But yes, your Honor.

14        First, we don't know how the bankruptcy is

15   going to impact the claims of the class and our

16   individual plaintiffs in this case because we don't

17   know what the release is going to be.  If the release

18   is broad enough, which sometimes it is in bankruptcy,

19   it could potentially impact these claims.  And that's

20   what we're monitoring.  So that's on point one.

21        On point two, as to the documents, the PSLRA,

22   yes, does have a mandatory stay.  But that's why

23   we're in front of your Honor, because it also allows

24   courts to lift that stay in certain situations.  And

25   there is no bar that -- what the use for those

1   documents necessarily will be used for.

2         You know, for example, in the Bank of America

3   litigation which my firm was co-lead counsel in

4   before Judge Chin before he was elevated to the

5   Second Circuit, he granted the lifting of the stay in

6   that case because there was a parallel SEC case and

7   other actions on behalf of the government.  And

8   documents were collected and provided to the people

9   in the other actions, and he felt that, according to

10   his order, he was lifting the stay so that we could

11   be on equal footing.  That is all we're asking for

12   here.

13         THE COURT:  But is there a parallel SEC

14   action against DCG or Mr. Silber?

15         MS. ZALKA:  No, your Honor.  And there is no

16   action that's been filed by the SEC.

17         THE COURT:  So how does the line of cases

18   cited in the plaintiff's brief apply in a situation

19   like this where there is, you know, somewhat related

20   litigation but not so-called -- what I would call

21   parallel litigation?

22         MR. HALL:  I think that is the situation,

23   your Honor, and I don't think there is any magic to

24   the fact that it has to be the SEC.  I think the

25   criteria is -- on part of the analysis is whether or

1  not documents in a related litigation have been

2  collected and provided to parties there.

3       And we believe -- and defendants disagree,

4  but we believe that there would be no burden for them

5  to produce those, which they don't disagree too much

6  about that, and that we think that without those

7  documents, we would be prejudiced because we have

8  parties in another litigation that are likely going

9  to try to -- not try to but are likely going to

10  impact the claims of the class and the plaintiffs

11  before your Honor.  And we should be able to evaluate

12  those claims and determine which claims to bring in

13  this litigation and protect the interests of the

14  class that we've been appointed to protect.

15       THE COURT:  Right.  But the prejudice that

16  you claim arises out of your apparent decision not to

17  participate in the bankruptcy.  Had you filed a claim

18  or if you file a claim, if it's still possible, in

19  the bankruptcy, you would have had -- presumably

20  would have had access, either through the unsecured

21  creditors committee or otherwise, to the documents

22  that were turned over.

23       And so it's -- what -- it appears to me that

24  you didn't take or haven't yet taken steps to

25  eliminate the prejudice that you're claiming.  What

1  am I missing?

2      MR. HALL:  Well, actually, your Honor, we are

3  bringing claims against other entities that aren't

4  covered in the bankruptcy.

5      THE COURT:  I understand.  But you want these

6  documents because you want to supposedly evaluate

7  what's happening in the bankruptcy case.  Had you

8  filed a claim or had any of your named plaintiffs

9  filed a claim, you could have, one, influenced the

10  scope of the release, if any, that's ever provided

11  because you'll maybe be on the UCC or at least have

12  information from the UCC.  I just --

13      MR. HALL:  I don't know that we could have

14  done both, your Honor, quite frankly.

15      THE COURT:  By "both," what do you mean both?

16      MR. HALL:  Bring the action against the

17  defendants in this case and then a formal party and

18  participant in the bankruptcy.

19      THE COURT:  Why is that?

20      MR. HALL:  Well, first off, there are two

21  different classes of entities covered, some the

22  bankruptcy entities and the others.

23      And, yes, there is an overlap on the class

24  members.  But, you know, someone has to protect the

25  class members on both sides.  There is committees and

1    law firms like ourselves -- not us but like ourselves

2    -- protecting those entities in bankruptcy court

3    against the bankrupt entities.

4         We think the defendants that we brought in

5    this litigation, the nonbankruptcy defendants, also

6    owe our class members recovery based on their

7    actions, and we're pursuing that independently.  And,

8    yes, there are people protecting those same -- some

9    of the same interests in bankruptcy court.

10        THE COURT:  All right.  Maybe I'm just

11   missing something fundamental because it -- all

12   right.  Let's try this.

13        If Mr. McGreevy filed a claim in bankruptcy

14   for his claimed loss and says, hey, Genesis, et al.,

15   you have, you know, hurt me, I'm owed money, why

16   could he not file that claim in bankruptcy and still

17   be the named plaintiff in this class action against

18   the parent company?

19        MR. HALL:  I'm not saying he couldn't.  I'm

20   just saying I'm sure there would have been a lot of

21   arguments against why he can't represent both because

22   that's usually how these go, both from other lead

23   plaintiff movements and also from -- quite often from

24   defense counsel, though I don't know what they would

25   have done in this action.

```
 1            I'm just saying, your Honor, that we
 2   shouldn't be barred from pursuing the case here
 3   because we're not the ones representing claimants in
 4   the bankruptcy court, and we don't know what those
 5   claimants are going to get and whether --
 6            THE COURT:  No.  No one is claiming you
 7   should be barred from pursuing this case.
 8            The question is:  Have you shown prejudice?
 9   And what I just can't understand is how you have been
10   prejudiced if you had or may still have the
11   opportunity to go to the bankruptcy court and get all
12   the relief you're seeking in terms of these documents
13   and how that would prevent you from defending the
14   motion to dismiss in this case.
15            MR. HALL:  I mean, your Honor, there is a lot
16   of cases where the motion to lift the stay is granted
17   that don't concern a bankruptcy action.
18            THE COURT:  Right.  Sure.
19            MR. HALL:  And those are lifted because there
20   are relevant documents that have already been
21   gathered and that are no burden to provide to the
22   lead plaintiff and that would keep that action
23   pursuing on a more equal footing as to other actions.
24   And that's exactly what we're asking for here.  If
25   your Honor would --
```

```
 1          THE COURT:  Those cases -- those cases,

 2   though, are involving parallel actions, right, in the

 3   sense?  SEC sues Genesis or SEC sues Digital Currency

 4   or Digital Currency is in bankruptcy or Digital

 5   Currency has a case, an MDL case brought against it.

 6   In that situation you've got an argument that you

 7   should get the documents.

 8          But when you've got distinct entities and

 9   distinct types of cases and your class members had

10   every right to file a claim in the bankruptcy court,

11   I don't understand how you're being prejudiced.  Just

12   file a claim in the bankruptcy court, get the

13   documents through the UCC.

14          MR. HALL:  If that's -- if your Honor is not

15   going to grant the current motion, then we would ask

16   that we're given authority to lift the stay so that

17   we can pursue the documents in the bankruptcy court.

18          THE COURT:  But how can -- you can't do both

19   if you're talking about seeking it from the

20   bankruptcy court in this case.  I'm not saying you

21   can seek -- I'm saying you can seek them in

22   bankruptcy if you're a claimant in the bankruptcy.

23          MR. HALL:  Okay.  I hear your Honor.  I

24   respectfully don't think the distinction that's being

25   made is what the cases rely on.  I agree with your
```

1   Honor that most of the cases, there is a regulatory

2   agency involved.  And as your Honor says, it's more

3   akin to a parallel action.

4        Here we have different -- here we have

5   different defendants or bankruptcy entities from our

6   defendants, but the underlying conduct is basically

7   the same.  And the documents directly relating, we're

8   asking for them from our defendants.

9        So -- but it's up to your Honor's discretion.

10  That's why the stay is in place, for your Honor to

11  evaluate it and come to your conclusion of what we're

12  allowed to do, and we will obviously abide by that

13  once you rule.

14       THE COURT:  Yeah.  I just -- I frankly, I

15  don't see the prejudice here.  Obviously there is no

16  burden on the defendants to produce documents they've

17  already produced but that's not the standard.  The

18  standard is that the plaintiffs are going to somehow

19  be prejudiced if they don't get discovery and a lift

20  of the stay to remit that discovery, and I really

21  don't see it here.

22       MR. SLOSS:  Your Honor, I'm sorry.  If I may,

23  this is Ian Sloss.

24       I just wanted to get clarity.  When you say

25  "claim," are you referring to proof of claim in the

```
 1  bankruptcy or based on the securities claim filed
 2  within the bankruptcy proceeding?  Because our
 3  plaintiffs, including --
 4          THE COURT:  It could be either.
 5          MR. SLOSS:  Yeah.  Our clients have filed
 6  proofs of claims in advance, you know, of the bar
 7  date.
 8          THE COURT:  Oh, good.  Good.
 9          MR. SLOSS:  And I do believe -- and so I do
10  believe, however, that they are barred from seeking
11  these documents or that the UCC has obtained from the
12  bankruptcy court protection from having to share
13  these documents that they have obtained.  I believe
14  that there were filings made by the UCC in light of
15  the fact that they would normally have to share these
16  documents and that -- if requested by claimants, and
17  that in this case they've received protection from
18  the bankruptcy court from doing so.
19          So I do think that that is a route that we
20  could take but we would be rebuffed by the UCC.
21          THE COURT:  Well, okay.  But what that does
22  is you're asking me to run roughshod over an order
23  from the bankruptcy court based really on the
24  speculation that there is not going to be money left
25  at the end of the day, that the case is about to
```

settle, that the releases are going to include
language broad enough to cover these cases.  There is
too many suppositions to support a claim of
prejudice, even under the circumstances that you
mentioned.

I think we should move this case forward
expeditiously.  I think we should get it moving.  It
does not appear that the bankruptcy case is going to
resolve in the near future, and if it -- if you get
wind through your client that it looks like it's
about to settle and it looks like the terms are going
to include a broad waiver, then you can file the
motion again.

But as things now stand, I just -- I really
don't see any prejudice to the plaintiffs.  And there
is a presumption to which exceptions are sometimes
made.  The plaintiff has to survive a motion to
dismiss before getting discovery, and I think that's
the situation we find ourselves in here.

So I'm going to deny the motion to partially
lift the PSLRA discovery stay, and I'm happy to
articulate that more fully if anybody wants me to.  I
don't intend to write on the issue.

MR. HALL:  Thank you, your Honor.  This is
Donald Hall.

1          We understand your position and we would just

2    ask then for us to set a date for the amended

3    complaint to be filed.

4          THE COURT:  Yeah.  And I -- I've seen your

5    proposals.  Here's my thought:  I think we can get an

6    amended complaint on file within 30 days.  I think we

7    can get a motion to dismiss filed 30 days thereafter.

8    I think an opposition can be filed 30 days after

9    that, and I think any reply can be filed 20 days

10   after the opposition.

11         How does anybody feel about that?

12         Oh, relatedly, I don't think we should wait

13   to see whether the motion to transfer the Southern

14   District case comes up here.  We'll deal with that if

15   and when the case comes up here.

16         So that's my thought.  I'm happy to hear any

17   concerns that anybody may have regarding that

18   proposed schedule.

19         MR. HALL:  Your Honor, this is Donald Hall.

20         We're okay with your proposed schedule.

21         MS. ZALKA:  That's fine, your Honor, from

22   defendants.  Do we think if there is a motion -- if

23   the case is transferred hopefully within the next

24   couple of weeks, it's fine from defendants'

25   perspective if it's consolidated and we proceed on

1   that schedule.  So that's fine for us.  Thank you.

2          THE COURT:  All right.  So that's what we'll

3   do.  Let me hear -- as long as we're on the phone,

4   let me hear from anybody who has other issues that

5   they'd like to raise today.

6          All right.  Silence is golden.  We'll proceed

7   on that schedule.  It's my practice to do a

8   conference memorandum that kind of summarizes what

9   happened today, and we'll issue one of those soon.

10          As long as we're on the phone, let me just

11   suggest to you that I'm happy to have calls like this

12   when issues do arise.  So if you run into problems

13   that you can't resolve amongst yourselves, please let

14   us know.

15          MR. HALL:  Thank you, your Honor.

16          THE COURT:  All right.  Good luck everybody.

17   Take care.

18          (Proceedings adjourned, 9:28 a.m.)

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3      RE: WILLIAM MCGREEVY, ET AL. V. DIGITAL CURRENCY
                          GROUP, INC. ET AL.
4                      No. 3:22-cr-00132-SRU-1

5

6           I hereby certify that the within and

7      foregoing is a true and accurate transcript taken in

8      the aforementioned matter to the best of my skill and

9      ability.

10

11              /s/_Melissa J. Cianciullo_____

12          MELISSA J. CIANCIULLO, RDR, CRR, CRC
                    Official Court Reporter
13              United States District Court
                   915 Lafayette Boulevard
14                  Bridgeport, CT 06604
                      (203) 606-1794
15

16

17

18

19

20

21

22

23

24

25