UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM MCGREEVY, ASHWIN GOWDA, TRANSLUNAR CRYPTO, LP, CHRISTOPHER BUTTENHAM, and REMO MARIA MORONE, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>DIGITAL CURRENCY GROUP, INC., BARRY SILBERT, GLENN HUTCHINS, LAWRENCE LENIHAN, MICHAEL KRAINES, MARK MURPHY, SOICHIRO "MICHAEL" MORO, and DERAR ISLIM<br><br>      Defendants. | Civil Action No. 3:23-cv-00082-SRU<br><br>CLASS ACTION<br><br>Hon. Stefan R. Underhill<br><br><br>February 21, 2024 |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANT SOICHIRO "MICHAEL" MORO'S MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

    I.    PLAINTIFFS ALLEGE NO FACTS DEMONSTRATING MR. MORO ACTED WITH THE REQUISITE SCIENTER. ...................................................... 1

    II.    PLAINTIFFS' NEWLY CONCOCTED (AND CONTORTED) REDEFINITION OF THE "SECURITY" AT ISSUE ONLY FURTHER UNDERMINES THEIR SCHEME LIABILITY CLAIM. ..................................... 3

CONCLUSION ............................................................................................................................. 6

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Chill v. GE*,
   101 F.3d 263 (2d Cir. 1996)............................................................................................................2

*Gamma Traders- I LLC v. Merrill Lynch Commodities, Inc.*,
   41 F.4th 71 (2d Cir. 2022) .............................................................................................................3

*In re Carter-Wallace, Inc. Sec. Letig.*,
   220 F.3d 36 (2d Cir. 2000)............................................................................................................2

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)...........................4

*Lorenzo v. SEC*,
   139 S. Ct. 1094 (2019)..................................................................................................................4

*SEC v. Rio Tinto plc*,
   41 F.4th 47, 53 (2d Cir. 2022) .....................................................................................................4

**PRELIMINARY STATEMENT**

Two things are apparent from Plaintiffs' 84-page Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss (the "Opposition"). *First*, Plaintiffs are unable to articulate a consistent (much less coherent) definition for what constitutes the "security" on which all of Plaintiffs' Securities Act and Exchange Act claims are based. The explanation for this is simple: there are no securities at issue in this case. *Second*, Plaintiffs are unable to articulate any basis on which Mr. Moro would be liable for violations of the federal securities laws (if there were securities at issue) or state consumer protection laws (if there are not). The explanation for this is equally simple: Mr. Moro did not violate any laws—whether through "scheme liability" under Section 10(b) of the Exchange Act and Rule 10b-5 (Count II), control person liability under Section 15 of the Securities Act or Section 20(a) of the Exchange Act (Counts I and III), or under Connecticut or New York state consumer protection laws (Counts IV and V).

The reply brief submitted in support of the DCG Defendants' motion to dismiss (the "DCG Reply") responds to and dismantles each of Plaintiffs' arguments in the Opposition common to the Defendants. As a result, Mr. Moro joins and incorporates those responses as if fully set forth herein, and submits this short reply responding to two of Plaintiffs' arguments that specifically relate to their scheme liability claim against Mr. Moro.

**ARGUMENT**

**I.   PLAINTIFFS ALLEGE NO FACTS DEMONSTRATING MR. MORO ACTED WITH THE REQUISITE SCIENTER.**

Plaintiffs effectively concede they failed to allege the requisite scienter to support a claim for scheme liability against Mr. Moro, failing to mention him even once in the scienter section of their Opposition. *See* Opposition at 55-57. As Mr. Moro argued in his memorandum in support of his motion to dismiss (the "Motion"), none of the allegations in Plaintiffs' Amended Complaint regarding scienter address Mr. Moro. Motion at 17-19 (ECF No. 138-1). Instead, Plaintiffs make

1

conclusory assertions that the alleged scheme "resulted in higher compensation for Genesis Global Capital, Defendant DCG, and Defendant Silbert"—but not Mr. Moro—and that Defendants "knew or had reason to know that [Genesis'] insolvency would likely result in mass investor redemptions, the end of its business, and losses to Defendants Silbert, DCG, and others" (with, again, no mention of Mr. Moro).  Am. Compl. ¶¶ 500, 501.

Rather than countering Mr. Moro's summary of the allegations, Plaintiffs confirm it.  When discussing "motive and opportunity" in the Opposition, Plaintiffs point to only three allegations in the Amended Complaint: (1) it was in Defendant DCG's and Silbert's interest—but not Mr. Moro's—to engage in the alleged fraud because it allegedly increased the management fees earned by a DCG subsidiary; (2) keeping GGC out of bankruptcy prevented DCG and related entities from having their outstanding loans called by Genesis, which Plaintiffs allege would have forced DCG into bankruptcy; and (3) executing the DCG Promissory Note allowed Silbert and other Genesis and DCG insiders—not including Mr. Moro—to withdraw capital from Genesis by redeeming their investments.  Opposition at 55-57.

Accordingly, Plaintiffs all but concede that the Amended Complaint fails to allege that Mr. Moro had the requisite "motive and opportunity" to commit fraud necessary to establish scienter. *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000).  Similarly, Plaintiffs offer no explanation as to how their limited allegations against Mr. Moro in support of their scheme liability claim—namely, that he sent a few tweets in June and July 2022 and otherwise allegedly "caused" certain unidentified financial documents that were supposedly false and misleading to be disseminated to Gemini—satisfy the "significant burden" for pleading scienter through conscious misbehavior or recklessness.  *Chill v. GE*, 101 F.3d 263, 270 (2d Cir. 1996); *compare* Motion at 18-19 *with* Opposition at 56-57.  Plaintiffs' failure to plead facts demonstrating that Mr. Moro

acted with scienter requires dismissal of their primary Section 10(b) and Rule 10b-5 claims against him.

## II. PLAINTIFFS' NEWLY CONCOCTED (AND CONTORTED) REDEFINITION OF THE "SECURITY" AT ISSUE ONLY FURTHER UNDERMINES THEIR SCHEME LIABILITY CLAIM.

As noted in the DCG Reply, Plaintiffs attempt to use their Opposition to amend their theory and redefine what constitutes the "security" at issue in this case. *See* DCG Reply § III(A)-(B). In the Amended Complaint, Plaintiffs explicitly stated that the "Genesis Yield securities" are defined in Section IX of that pleading, Am. Compl. ¶ 4, and Section IX of the Amended Complaint is titled "The Genesis Yield Investment Agreements are Securities" (emphasis added). *Id.* § IX; *see also* Opposition § III.5 (same title). Likewise, the two subsections in Section IX of the Amended Complaint that define "securities" are titled "The Genesis Yield Investment Agreements are Notes Under *Reves*," and "The Genesis Yield Investment Agreements Are Investment Contracts Under *Howey*." Am. Compl. § IX(A)-(B) (emphasis added); *see also* Opposition at §§ III.5(a)-(b) (same titles). Nowhere in the Amended Complaint do Plaintiffs suggest, as they now argue in their Opposition, that the "entirety of these transactions and documents"—namely, the Master Digital Asset Loan Agreement ("MLA") or Master Borrow Agreement ("MBA", together with the MLA, the "Lending Agreements") that Plaintiffs' call "Genesis Yield Investment Agreements" *as well as* each lenders' later decision to lend digital assets to Genesis pursuant to a Lending Agreement— "comprise the 'Genesis Yield securities' that [Genesis] sold for value during the Class Period." Opposition at 7.

Plaintiffs' attempt to redefine the "securities" in this action should be rejected as an improper attempt to "amend pleadings through a brief." *Gamma Traders- I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 80 (2d Cir. 2022). It is nothing more than Plaintiffs' last-ditch effort to avoid their claims being dismissed based on Defendants' arguments, including that (i) the

MLAs and MBAs are not "securities," *see, e.g.*, DCG Reply § III, (ii) certain claims are barred by the statute of limitations, *see, e.g.*, DCG Reply § III.B,[1] and (ii) Plaintiffs have failed to allege that Defendants, including Mr. Moro, made or caused Genesis to make any misstatements. *See* DCG Reply § I.A.1; Motion § I(A), I(C), II(A).

Specifically with regards to Plaintiffs' claims against Mr. Moro for "scheme liability," Plaintiffs now posit in their Opposition that "[i]n light of GGC's insolvency, Defendant Moro, [Genesis's] CEO through August 2022 . . . caused [Genesis] to falsely represent to every investor who purchased Genesis Yield securities that [Genesis] was solvent which was not true." Opposition at 5 (citing Am. Compl. ¶¶ 360, 504(d)). The "representation" Plaintiffs now point to is a "Solvency Warranty" included in the Lending Agreements. Am. Compl. ¶¶ 120, 360; Motion at 10-11. As Mr. Moro pointed out in his Motion, under Plaintiffs' theory as articulated in the Amended Complaint, Plaintiffs do not, and cannot, allege that these "representations" were false *at the time they were made*, specifically because (i) every Plaintiff executed their Lending Agreement long before June 2022 when Plaintiffs allege Genesis became insolvent (in fact, it was not at that time), and (ii) Plaintiffs have not alleged that any other lender or class member executed a Lending Agreement at any time following Three Arrows Capital's July 1, 2022 bankruptcy filing or DCG's assumption of Genesis' liabilities related to Three Arrows Capital. Motion at 10-11 (citing *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 577 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) ("A violation of Section 10(b) and Rule 10b-5 premised on misstatements cannot

---

[1] In responding to Defendants' statute of limitations arguments, Plaintiffs wrongly claim that Mr. Moro "concedes at least Plaintiff Translunar's claims are not time barred." Opposition at 13. In addition to arguing for dismissal of Plaintiffs' Section 15 claim in Count I as to all Plaintiffs, Mr. Moro also moved to dismiss the Section 15 claim as to Plaintiffs McGreevy, Gowda, Buttenham, and Morone on statute of limitations grounds. Motion at 22. While Plaintiffs failed to specifically allege when *any* Plaintiff entered into their respective Lending Agreement, all Plaintiffs except Translunar have admitted that they entered their Lending Agreement before January 23, 2022, *see, e.g.*, ECF Nos. 34-2, 38-2, -3, -5, which was more than one year prior to the filing of the Complaint. To the extent Translunar also entered its MBA with Genesis prior to January 23, 2022, its claims are similarly time barred.

occur unless an alleged material misstatement was false *at the time it was made*.") (emphasis added).[2]

Plaintiffs' new position attempts to circumvent this clear deficiency by advocating for an absurd result whereby statements in the Lending Agreements that were undeniably true when made—*i.e.* when the agreements were entered into by the parties years before Genesis' alleged insolvency—will be considered to be made again at later date, not because Genesis actually made a representation or even re-affirmed the prior representation in any way, but simply because the *lender* decided to loan digital assets pursuant to the Lending Agreement they had signed years earlier. Tellingly, Plaintiffs cite no caselaw to support such a proposition as to Genesis much less any authority suggesting Mr. Moro could be found liable for "causing" Genesis to repeatedly make such representations.

That said, if the Court were to accept Plaintiffs' new theory of the case, then Plaintiffs' failures to plead key elements of their scheme liability claims are even more glaring and their claims still must be dismissed. For example, Plaintiffs failed to plead any facts demonstrating how Mr. Moro "caused" Genesis to make the representations in the Lending Agreements, even when that representation was only alleged to have been made *once*. Motion at 10-11. Their failure to plead is exponentially worse if, as they now allege, Mr. Moro somehow "caused" Genesis to make these representations *every time* one of the lenders loaned their digital assets to Genesis pursuant to their Lending Agreement. Similarly, Plaintiffs' failure to plead that any Plaintiff relied on the alleged misstatements in the Lending Agreements, *see, e.g.*, Motion at 19-22, *see also* DCG

---

[2] As discussed in the DCG Reply, Plaintiffs concede that misstatements "cannot form the sole basis" for scheme liability. DCG Reply at 15 (discussing *Lorenzo v. SEC*, 139 S. Ct. 1094, 1099 (2019), *SEC v. Rio Tinto plc*, 41 F.4th 47, 53 (2d Cir. 2022)). Because neither Plaintiffs' Amended Complaint nor their Opposition demonstrates any instance where Mr. Moro disseminated any false or misleading statements made by Genesis (or anyone else), including the Solvency Warranty in the Lending Agreements, Mr. Moro cannot bear primary scheme liability even if the Solvency Warranty were a misrepresentation at the time it was made (which it was not). *See Rio Tinto*, 41 F.4th at 53-54.

Memorandum at 10, is all the more egregious if instead of failing to plead that any Plaintiff relied on those alleged misstatements the one time they were made, they have failed to plead reliance on those alleged statements for *any* of the presumably hundreds of times the statements supposedly were made whenever lenders loaned digital assets to Genesis pursuant to their Lending Agreement. Accordingly, while Plaintiffs' attempt to redefine the securities at issue in this case should be rejected, even if the Court does accept Plaintiffs' new theory, Plaintiffs have still failed to plead necessary elements of their claim for "scheme liability," and their Section 10(b) and Rule 10b-5 claim must be dismissed.

## CONCLUSION

For the foregoing reasons, together with the arguments set forth in Mr. Moro's initial Motion as well as in the DCG Defendants' Motion and Reply, Mr. Moro respectfully requests that the Court dismiss Plaintiffs' Amended Complaint against him in its entirety for failure to state claims upon which relief can be granted.

Dated:  February 21, 2024

*/s/ Christian D. H. Schultz*

| | |
|---|---|
| **SPEARS MANNING & MARTINI LLC**<br>Joseph W. Martini (CT07225)<br>2425 Post Road, Suite 203<br>Southport, CT 06890<br>Telephone: (203) 292-9766<br>jmartini@spearsmanning.com | **ARNOLD & PORTER KAYE SCHOLER LLP**<br>Marcus Asner (*pro hac vice*)<br>Tyler Fink (*pro hac vice*)<br>Kodjo Kumi (*pro hac vice*)<br>250 W 55th Street<br>New York, NY 10019<br>Telephone: (212) 836-8000<br>marcus.asner@arnoldporter.com<br><br>Christian D. H. Schultz (*pro hac vice*)<br>601 Massachusetts Ave, NW<br>Washington, DC 20001-3743<br>Telephone: (202) 942-5000<br>christian.schultz@arnoldporter.com<br><br>*Counsel to Defendant Soichiro "Michael" Moro* |