UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM MCGREEVY, ASHWIN GOWDA, TRANSLUNAR CRYPTO, LP, CHRISTOPHER BUTTENHAM, REMO MARIA MORONE, DOMINIC MACRI, LARRY WIENER, DEREK WILSON, DANIEL AMELI, and LEE JACOBSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DIGITAL CURRENCY GROUP, INC., BARRY SILBERT, MICHAEL KRAINES, MARK MURPHY, SOICHIRO "MICHAEL" MORO, and DERAR ISLIM,<br><br>Defendants. | Case No. 3:23-cv-00082-SRU<br><br>Hon. Stefan R. Underhill |

**DEFENDANT DERAR ISLIM'S MEMORANDUM OF LAW IN SUPPORT OF HIS <u>MOTION TO DISMISS</u>**

ALLEN OVERY SHEARMAN
STERLING US LLP
599 Lexington Avenue
New York, New York 10022
Tel: (212) 848-4000

WIGGIN AND DANA LLP
Two Stamford Plaza
281 Tresser Boulevard Stamford, CT 06901
Tel: (203) 363-7600

*Attorneys for Defendant Derar Islim*

Dated: September 30, 2024

Defendant Derar Islim—allegedly the chief operating officer and interim chief executive officer of Genesis Global Capital, LLC ("GGC") and Genesis Global Trading, Inc., and director of Genesis Global Holdco, LLC ("GGH")—respectfully submits this memorandum of law in support of his motion to dismiss the Third Amended Complaint dated August 12, 2024 (the "TAC") (Dkt. 171).

## PRELIMINARY STATEMENT

The DCG Defendants' Motion to Dismiss, filed on September 30, 2024 (Dkt. 177), establishes that Plaintiffs fail to allege facts sufficient to support primary violations of the federal securities laws, controlling person liability under the federal securities laws, and their common law fraud and state law consumer protection claims.[1] Mr. Islim incorporates, in all relevant parts, the points raised in the DCG Defendants' Motion to Dismiss as they relate to him and the claims against him, including that Plaintiffs fail to allege essential elements of an Exchange Act violation (DCG Defs' Mot. Dismiss §§ II.A, II.C.), Plaintiffs do not adequately allege control liability (*Id.* §§ I.B., II.B.), there was no offer or sale of a security and therefore Plaintiffs fail to allege essential elements of a Securities Act violation (*Id.* § I. A.), Plaintiffs fail to allege damages in light of the bankruptcy proceedings (*Id.* § I.C.), and Plaintiffs fail to adequately allege any state law and common law claims (*Id.* § III.).

None of the allegations concerning Mr. Islim satisfy the fact-based pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).[2] In a complaint of 690 paragraphs, Plaintiffs mention Mr. Islim in only 46 paragraphs. Of those, 23 are charging paragraphs containing only legal conclusions, six allege Mr. Islim's titles,

---

[1] *See* Memorandum of Law in Support of Defendants Digital Currency Group, Inc., Barry Silbert, and Mark Murphy's Motion to Dismiss ("DCG Defs' Mot. Dismiss"). Capitalized terms used but not defined herein have the meanings assigned to them in the DCG Defs' Mot. Dismiss.

[2] *See* DCG Defs' Mot. Dismiss at 8–10.

1

one simply identifies him as a defendant, one mentions Mr. Islim in passing while making allegations unrelated to him, and ten contain purely conclusory allegations. Of the remaining five paragraphs, only two cite statements made by Mr. Islim and three concern communications he received but in which he is alleged to have said nothing. None are sufficient to support Plaintiffs' claims against Mr. Islim.

Plaintiffs first cite a statement made by Mr. Islim during a January 22, 2021 GBBC Virtual Members Forum as support for their arguments that the so-called "Genesis Yield Securities" are securities under federal law. (TAC ¶ 173) Plaintiffs quote Mr. Islim as saying:

> we definitely offer one of the best yields in the market and a lot of our clients reach us to provide their assets for us to be able to get yield on that overall. We offer a lot of products around lending when it comes to open term, fixed term, and all of that is really just to service clients who have very different views about the market, or they are looking forward to look at certain rates, or are they more short-term investors - they want to have open-term loans without just to get extra used in the short-term like extra funding. It's definitely we are experts in this space. We understand the crypto funding market very very well. And this gives us a cutting edge in providing the right liquidity and also the best yield in the market.

*Id*. This description of Genesis's lending business in 2021 neither supports Plaintiffs' securities arguments nor suggests any misconduct on the part of Mr. Islim in 2022 when the relevant facts occurred.

Second, in the charging section of the Complaint, Plaintiffs cite a June 13, 2022 chat that Plaintiffs allege supports their allegation that Mr. Islim was a control person with respect to their Securities Act claims. (TAC ¶ 556). In this chat, Mr. Silbert allegedly "directed" Mr. Moro and Mr. Islim to "guide the ship," to which Mr. Islim replied that he was "working closely" with Mr. Ballensweig, who wanted to ensure that the GGC loan book was in "good liquidity stand[ing] at this point." *Id*. Mr. Islim stating only that he was working closely with Genesis's Head of

2

Lending regarding liquidity does nothing to show he had control over or was a culpable participant in any of the alleged acts at issue.

The three communications that Mr. Islim received, but in which he is alleged to have said nothing, similarly do not support their theories.

In the first, Plaintiffs cite a June 15, 2022 chat as evidence that Defendants Silbert, Moro, Islim, Kraines, Ballensweig, and others "agreed that the group needed to prioritize concealing Genesis's financial condition from lenders such as Plaintiffs and class members, as well from as the public." (TAC ¶ 317). To support this, Plaintiffs cite only the following statements by Mr. Ballensweig and Mr. Moro:

> **BALLENSWEIG**: we need to still be very cautious about what we say and how we sat it, we don't know theyre [*sic*] not recording . . . I know I sound like a conspiracy theorist but Im [*sic*] very concerned about any leakage of our overall net position
>
> **MORO**: I agree with the caution. Happy to join.

*Id*. Mr. Islim did not make the statements cited and those statements do not discuss any scheme to defraud or could have reasonably put Mr. Islim on notice that any such alleged scheme existed.

The next communication received by Mr. Islim was a July 25, 2022 email from DCG's treasurer to Mr. Ballensweig and Mr. Islim in which the treasurer notes,

> We received guidance from [Silbert] to re-paper the $100mm loan (with July 24th maturity) from Genesis to DCG by 10 months (until May 2023). Please let us know what documentation is needed to execute on the new loan. Also, we need to include language that the loan could be repaid early without any penalty.

(TAC ¶ 412). Mr. Islim is not alleged to have said anything or done anything in this email, and being told simply about the repapering of a loan does nothing to show his participation in any scheme.

3

The final is a September 1, 2022 email from Genesis's Director of Lending to Mr. Islim in which the Director of Lending stated,

> I'm hearing concerns from front office folks…. They're concerned about the accuracy of information we have shared with clients re liquidity and variability in our equity…. There still is no liquidity infusion from DCG to fill the gap and instead we have a 'note'.

(TAC ¶ 440). In connection with this communication, Plaintiffs allege that neither DCG nor Mr. Islim "corrected the misstatements that Genesis Capital employees made to counterparties, including the Earn investors." *Id.* Again, Mr. Islim is not alleged to have said or done anything, and this communication does nothing to prove any misstatements were in fact made by anyone, nor does it provide enough information to put Mr. Islim on notice.

Plaintiffs' allegations against Mr. Islim are nothing more than bare assertions. They allege no statements or acts by Mr. Islim that support their allegations of his involvement in any of the alleged misconduct. Plaintiffs' claims against Mr. Islim should be dismissed.

## **ARGUMENT**

**I.     Claim II Should Be Dismissed Because Plaintiffs Fail To Allege Adequately Elements Of An Exchange Act Violation.**

Plaintiffs fail to adequately plead a violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a) or (c) promulgated thereunder, 17 C.F.R. § 240.10b-5, which require that a plaintiff allege "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance," and that the alleged scheme must be "in connection with the purchase or sale of any security." *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 517 (S.D.N.Y. 2017) (internal quotation marks omitted).[3]

---

3       *See* DCG Defs' Mot. Dismiss § II.

Plaintiffs' bald assertions relating to Mr. Islim are insufficient under traditional fact-based pleading standards, let alone the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA") for securities fraud actions, which require that allegations of fraud and the requisite scienter be stated with particularity. *See Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 108 (2d Cir. 2012); *see also Bristol Cnty. Ret. Sys. v. Adient PLC*, No. 20-3846-CV, 2022 WL 2824260, at *1 (2d Cir. July 20, 2022) and *Chien v. Skystar Bio Pharm. Co.*, 566 F. Supp. 2d 108 (D. Conn. 2008), *aff'd*, 378 F. App'x 109 (2d Cir. 2010).

As Plaintiffs do not identify a single materially false or misleading statement made by Mr. Islim or show that he acted with scienter related to any alleged misrepresentation, Plaintiffs' claims as to Mr. Islim should fail.

### A. Plaintiffs fail to allege that Mr. Islim engaged in a scheme or artifice to defraud.

Plaintiffs fail to allege any facts showing that Mr. Islim engaged in a "device, scheme or artifice to defraud," and in fact do not include Mr. Islim in any of the "schemes" alleged in Claim III. (*Compare* TAC ¶ 611, *with* TAC ¶¶ 608–610). Plaintiffs do not make any claims about Mr. Islim's involvement in the alleged misconduct beyond the barest assertions that Mr. Islim, along with Mr. Moro, "caused Genesis Global Capital" to include the $1.1 billion DCG Promissory Note on "[GGC's] balance sheet as a 'current asset and/or receivable,'" (TAC ¶ 587), that Mr. Islim somehow agreed to a scheme to conceal Genesis's financial health from counterparties by participating in a June 15, 2022 chat in which no such topic was discussed (TAC ¶ 317), and that Mr. Islim received an email noting potential concerns about statements regarding "liquidity and variability in [GGC's] equity," (TAC ¶ 440). Essentially, this is a repackaging of Plaintiff's control person theory regarding Mr. Islim, which, as discussed below, also fails.

5

The only statements attributed to Mr. Islim in the entirety of the Complaint are a description of GGC's business from 2021 (TAC ¶ 173) and a June 13, 2022 chat in which Mr. Islim only states that he is working closely with Genesis's Head of Lending regarding liquidity (TAC ¶ 556), both of which are irrelevant to Plaintiffs' claims. Even if Plaintiffs had alleged that Mr. Islim made false or misleading statements, which they do not, the Second Circuit has found that where Plaintiffs fail to allege "something beyond misstatements and omissions, such as dissemination," a scheme liability claim should fail. *Sec. & Exch. Comm'n v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022). Without allegations that Mr. Islim ever made false or misleading statements and disseminated any such statements, Plaintiffs' claims must be dismissed. *See Lorenzo v. Sec. & Exch. Comm'n,* 587 U.S. 71, 74, 78 (2019).

**B.   Plaintiffs fail to allege facts supporting a strong inference of scienter.**

Plaintiffs' claim should also be dismissed because Plaintiffs fail to adequately plead "facts '(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness.'" *See Ont. Tchrs.' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131, 168 (D. Conn. 2019) (Underhill, J) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).

Plaintiffs fail to allege any facts showing that Mr. Islim had motive or opportunity to engage in the alleged misconduct, attributing motive and opportunity only to other defendants. (*See* TAC ¶ 41). Plaintiffs also fail to plead any evidence of conscious misbehavior or recklessness on the part of Mr. Islim. To the extent Plaintiffs rely on Mr. Islim's receipt of an email noting potential concerns about statements regarding GGC's liquidity and equity to support this claim (TAC ¶ 440), this claim should fail. This lone email, received months after the

6

allegedly wrongful conduct of entering into the DCG Promissory Note, does not suggest that the DCG Promissory Note was improperly accounted for, that GGC was effectively insolvent, or that Mr. Islim made any misleading statements (or any statements at all). Further, Plaintiffs may not rely on Mr. Islim's senior role at GGC to show strong circumstantial evidence of conscious misbehavior or recklessness. *See Ont. Tchrs.' Pension Plan Bd.*, 432 F. Supp. 3d at 171–72 (finding that plaintiffs failed to allege that certain defendants engaged in conscious misbehavior or recklessness when plaintiffs merely alleged that these defendants "must have known" about the misconduct at issue "by virtue of their positions of authority in the company.").

Without pleading any allegedly false or misleading statements or intentional conduct, or facts supporting a mental state embracing the intent to deceive, manipulate or defraud, Plaintiffs cannot establish the elements of the Section 10(b) claim as to Mr. Islim. Further, even if misstatements and scienter were properly alleged, Plaintiffs do not adequately plead reliance and loss causation. *See* DCG Defs' Mot. Dismiss at 28–33.

## II. Claims I And III Should Be Dismissed As To Mr. Islim Because Plaintiffs Do Not Adequately Allege Control Liability.

Plaintiffs cannot survive a motion to dismiss regarding their alleged violations of Section 15 of the Securities Act (Claim I) and Section 20 of the Exchange Act (Claim III), as they have failed to show "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc.*, 493 F.3d at 108; *see also Sec. & Exch. Comm'n v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996).[4]

---

[4] Although there is a split of authority as to whether the culpable participation element applies to claims under Section 15 (control person liability for violations of the Securities Act), several courts in this Circuit have held that it does. *See Nayani v. Lifestance Health Grp., Inc.*, No. 22-cv-6833 (JSR), 2023 WL 3260260, at *4 (S.D.N.Y. May 04, 2023); *Pub. Emps' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010); *P. Stolz Fam. P'ship, L.P. v. Daum*, 166 F. Supp. 2d 871, 873

Even if Plaintiffs adequately allege a violation of federal securities laws by Genesis or a Genesis employee, which they do not,[5] Plaintiffs do not adequately allege that Mr. Islim had control over the transactions at issue. In the 46 paragraphs of the Complaint that mention Mr. Islim, only three paragraphs directly address Mr. Islim's alleged control and each allegation in those paragraphs is conclusory. (*See* TAC ¶¶ 555–557).

Plaintiffs' only specific allegation of Mr. Islim's control is a June 13, 2022 chat in which Mr. Silbert allegedly "directed" Mr. Moro and Mr. Islim to "guide the ship," to which Mr. Islim replied that he was "working closely" with Mr. Ballensweig, who wanted to ensure that the GGC loan book was in "good liquidity stand[ing] at this point." (TAC ¶ 556). Mr. Islim's statement regarding supporting Mr. Ballensweig does not show that Mr. Islim caused Genesis or Mr. Ballensweig to act. Plaintiffs do not allege any facts as to *how* Mr. Islim allegedly caused Genesis or Mr. Ballensweig to act or make statements, nor do they otherwise allege his control over the other allegedly wrongful conduct, such as decisions to register alleged securities or Genesis's accounting decisions. To the extent that Plaintiff's remaining control allegations rely only on Mr. Islim's titles, the claims must be dismissed as Plaintiffs' conclusory allegations fail to show any facts evincing Mr. Islim's "actual control over the wrongdoer and the transactions in question." *See In re Sotheby's Holdings, Inc.*, No. 00 CIV. 1041 (DLC), 2000 WL 1234601, at *8 (S.D.N.Y. Aug. 31, 2000) ("[O]fficer or director status alone does not constitute control."); *see also Youngers v. Virtus Inv. Partners Inc.*, 195. F. Supp. 3d 499, 524-26 (S.D.N.Y. 2016) ("[B]oilerplate allegations that a party controlled another based on officer or director status are insufficient.").

---

(S.D.N.Y. 2001), *rev'd in part on other grounds by* 355 F.3d 92 (2d Cir. 2004); *Kane v. Wichita Oil Income Fund*, No. 90 Civ. 5714 (PKL), 1991 WL 233266, at *7 (S.D.N.Y. Oct. 29, 1991).

[5]   Plaintiffs fail to establish a primary violation of securities law, an essential element of control person claims. *See* DCG Defs' Mot. Dismiss at 25–35.

Further, Plaintiffs fail to allege sufficient facts indicating that Mr. Islim was a culpable participant in the alleged misconduct, *see First Jersey Sec., Inc.*, 101 F.3d at 1472, particularly as the culpable participation element is subject to Rule 9(b)'s heightened pleading standard, *see Ont. Tchrs.' Pension Plan Bd.*, 432 F. Supp. 3d at 176–77 (dismissing claims against certain officer-defendants where plaintiffs failed to allege "particularized facts of the controlling person's conscious misbehavior or recklessness."). As with a primary violation, a plaintiff must plead with particularity "facts giving rise to a strong inference that the defendant acted with the requisite state of mind, i.e., scienter," showing that defendants "knew or should have known" about the fraudulent conduct and so acted with conscious misbehavior or recklessness. *Id*.

Plaintiffs do not allege particularized facts showing Mr. Islim's participation in any of the alleged misstatements or omissions, instead relying on pleadings directed at other Defendants. Plaintiffs merely allege a conclusory statement that Mr. Islim "culpably participated" in alleged Exchange Act violations, (*see* TAC ¶ 606), and a statement impermissibly relying on Mr. Islim's title as interim CEO, (*see* TAC ¶ 611), which are insufficient support their claim. *See In re Sotheby's Holdings, Inc.*, 2000 WL 1234601, at *8 (S.D.N.Y. Aug. 31, 2000). Plaintiffs thus fail to plead with particularity facts showing that Mr. Islim "knew or should have known" about any alleged fraudulent conduct or that he acted with conscious misbehavior or recklessness in connection with the alleged misconduct.

### III. Claims IV-XI Should Be Dismissed Because Plaintiffs Fail To Allege Adequately Any State Law Claims And Common Law Fraud.

Plaintiffs include a number of new state law claims and a common law fraud claim, all of which should be dismissed as to Mr. Islim.[6] For each of these state law claims, Plaintiffs rely on

---

[6] These claims share similar elements involving deceptive, misleading, unfair, or fraudulent practices willfully carried out by a defendant resulting in damage to a plaintiff. *See Kemp v. Wells Fargo Bank, N.A.*, No. 17-CV-01259-MEJ, 2017 WL 4805567, at *15 (N.D. Cal. Oct. 25, 2017) (internal

9

the same allegations that, as described above, address Mr. Islim with only the barest of mentions. Without allegations about Mr. Islim's conduct, including statements or dissemination of statements by Mr. Islim, none of these claims can succeed.[7] Regarding the common law fraud claim—governed by New York law—Plaintiffs fail to demonstrate a materially false representation made by Mr. Islim with the intent to defraud, reliance, or damages. *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991). Because the analysis of this claim is the same as Section 10(b), this claim too must fail. *Id.*

---

quotation marks omitted); *Lustig v. Bear Stearns Residential Mortg. Corp.*, 411 F. App'x 224, 225 (11th Cir. 2011) (internal citations omitted); *Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1142 (M.D. Fla. 2021) (internal citations omitted)*; Sanchez v. Walmart Inc.*, No. 23 CV 1297, 2024 WL 2132426, at *6 (N.D. Ill. May 13, 2024); *Shostack v. Diller*, No. 15-CV-2255 (GBD) (JLC), 2015 WL 5535808, at *5–6 (S.D.N.Y. Sept. 16, 2015), *report and recommendation adopted*, 2016 WL 958687 (S.D.N.Y. Mar. 8, 2016); *Villarreal v. Wells Fargo Bank*, *N.A.*, 814 F.3d 763, 768 (5th Cir. 2016) (internal citations omitted); *Webb v. UnumProvident Corp.*, 507 F. Supp. 2d 668, 680 (W.D. Tex. 2005); *Marksberry v. FCA US LLC*, 606 F. Supp. 3d 1075, 1081 (D. Kan. 2022); *In re Motor Fuel Temperature Sales Pracs. Litig.*, 867 F. Supp. 2d 1124, 1141 (D. Kan. 2012); *Rimini St., Inc. v. Oracle Int'l Corp.*, 473 F. Supp. 3d 1158, 1225 (D. Nev. 2020) (quoting *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009)); *Switch, Ltd. v. Uptime Inst., LLC,* 426 F. Supp. 3d 636, 643 (D. Nev. 2019); *Marcus v. AT&T Corp.*, 138 F.3d 46, 63 (2d Cir. 1998).

[7] Mr. Islim also incorporates, in all relevant parts, the points raised in the DCG Defendants' Motion to Dismiss with regard to these claims as they relate to him and the claims against him *See* DCG Defs' Mot. Dismiss § III. Additionally, the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") claim must also fail because the IUDTPA "does not provide a private cause of action for damages," and authorizes only injunctive relief. *Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 2024 IL 129183, at *3 ¶ 17. Therefore, Plaintiff Wilson and Illinois subclass members' claim for monetary damages under the IUDTPA must fail.

## **CONCLUSION**

For the foregoing reasons, the Third Amended Complaint as against Mr. Islim should be dismissed in its entirety with prejudice.

Dated: September 30, 2024

Respectfully submitted,

By: */s/ David C. Esseks*
David C. Esseks (admitted *pro hac vice*)
Erin Sisson (admitted *pro hac vice*)
Megan Sharkey (admitted *pro hac vice*)
ALLEN OVERY SHEARMAN STERLING US LLP
599 Lexington Avenue
New York, New York 10022
Tel: (212) 848-4000
david.esseks@aoshearman.com
erin.sisson@aoshearman.com
megan.sharkey@aoshearman.com

Robert S. Hoff (ct27084)
WIGGIN AND DANA LLP
Two Stamford Plaza
281 Tresser Boulevard
Stamford, CT 06901
Phone: 203-363-7626
Fax: 203-363-7676
Email: rhoff@wiggin.com

*Attorneys for Defendant Derar Islim*

**CERTIFICATION OF SERVICE**

I hereby certify that on this 30th day of September, 2024, a copy of the foregoing was served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ *David C. Esseks*
David C. Esseks (admitted *pro hac vice*)