# EXHIBIT J

# GENESIS GLOBAL CAPITAL, LLC

## AMENDED AND RESTATED OPERATING AGREEMENT

This Amended and Restated Operating Agreement (this "Agreement") of Genesis Global Capital, LLC, a Delaware limited liability company (the "Company"), having an address at 111 Town Square Place, Suite 1203, Jersey City, NJ 07310, is entered into as of January 19, 2022, by Genesis Global Holdco, LLC, a Delaware limited liability company ("Holdco") and any other individual who, or entity that, shall become a member of the Company in accordance with the terms hereof (hereinafter each individually referred to as a "Member" and collectively as the "Members").

**WHEREAS**, the Company was formed on November 28, 2017, pursuant to and in accordance with the Limited Liability Company Act of the State of Delaware (as amended from time to time, the "Act") and an Operating Agreement of the Company dated November 28, 2017 (the "Existing Agreement"); and

**WHEREAS**, the parties hereto desire to conduct a limited liability company pursuant to and in accordance with the Act.

**NOW THEREFORE**, in consideration thereof and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree to amend and restate the Existing Agreement as follows:

1.  **Name**. The name of the limited liability company is Genesis Global Capital, LLC.

2.  **Term.** The term of the Company shall be perpetual, unless the Company is dissolved at the election of the Managing Member (as defined below) at any time. The death, retirement, resignation, expulsion, bankruptcy or dissolution of a Member or the occurrence of any other event which terminates the continued membership of a Member shall not cause a dissolution of the Company if the Managing Member elects to continue the business of the Company and there remains at least one Member.

3.  **Purpose.** The purpose and nature of the business to be conducted by the Company is to conduct any business that may be lawfully conducted by a limited liability company organized pursuant to the Act, and to do anything necessary or incidental with respect to the foregoing.

4.  **Members.** The names of the Members are as set forth on Schedule A attached hereto, as may be amended from time to time.

5.  **Management.** Holdco shall be the Company's Managing Member. The business and affairs of the Company shall be managed by the Managing Member. The Managing Member may not be involuntarily removed or replaced at any time by the Members. The Managing Member shall have the exclusive power to do any and all acts necessary or convenient to or for the furtherance of the purposes described herein, including, without limitation, all powers, statutory or otherwise, possessed by members under the Act.

6. **Officers.**

(a) The Managing Member shall appoint a chief executive officer (the "CEO"). Each of the Managing Member or the CEO may hire other employees and appoint other officers of the Company, with such titles, authority and responsibilities as may be determined by the Managing Member or the CEO, to oversee the daily operation of the Company. Such employees and officers shall be subject to removal by the Managing Member or the CEO at any time. The Managing Member, the CEO and any employee or officer authorized by the Managing Member or the CEO, is authorized to execute, deliver and file, in the name of and on behalf of the Company, any and all documents, agreements, certificates, receipts, instruments, forms, letters, or similar documents and to do or cause to be done any other actions as the Managing Member or the CEO, or such authorized employee or officer, may deem necessary or desirable to further the interests of the Company, except as may be limited by the Act or the terms of this Agreement.

(b) Notwithstanding the foregoing, none of the CEO or any officer or employee may take any of the following actions without the written consent of the Managing Member:

(i) the sale, pledge or other disposition or encumbrance of substantially all of the assets of the Company or the merger or other business combination of the Company with or into another person or entity;

(ii) changes in the basic nature of the Company's purpose, expansion into new lines of business, acquisitions, or new ventures involving the Company, in each case if substantially different from the existing business of the Company;

(iii) the filing of any petition in bankruptcy by the Company;

(iv) the dissolution, winding up or liquidation of the Company;

(v) any amendment to the Certificate of Formation or this Agreement;

(vi) any other matter required under the Act or this Agreement.

7. **Capital Contributions.** Each Member has contributed to the capital of the Company such amounts as may be reflected in the books and records of the Company. The Members are not required to make any additional capital contributions to the Company.

8. **Capital Accounts; Allocation of Profits and Losses; Tax Classification.**

(a) A separate capital account shall be maintained for each Member throughout the term of the Company in accordance with the regulations promulgated under Section 704 of the Internal Revenue Code of 1986, as amended.

(b) The Company's profits and losses, if any, shall be allocated among the Members in the same proportions as the percentage interest of such Member set forth opposite such Member's name on Schedule A hereto (for each such Member, its "Percentage Interest").

(c) For U.S. federal income tax purposes, the Company is intended to be classified as a partnership at such times that the Company has two or more Members, and as a disregarded entity at such times that the Company has one Member.

**9. Distributions.** Distributions shall be made to the Members at the times and in the aggregate amounts determined by the Managing Member in its sole discretion. Such distributions shall be made to the Members in the same proportions as their then respective Percentage Interests.

**10. Assignments.** A Member may not assign or pledge in whole or in part his or her limited liability company interest without the prior written consent of the Managing Member (which may be withheld in its sole discretion), provided that subject to applicable securities and other laws, a Member may assign his or her economic interest in the Company to a third party who is reasonably acceptable to the Managing Member. In such event, such third party assignee shall not have any voting or approval rights or be recognized as a substitute Member without the prior written consent of the Managing Member (which may be withheld in its sole discretion). Notwithstanding the foregoing, the Managing Member may assign, in whole or in part, its limited liability company interest in the Company.

**11. Bank Accounts; Checks and Notes.** The Managing Member and any individual authorized in writing by the Managing Member are, and each acting alone is, hereby authorized and directed (a) to establish on behalf of the Company account(s) at one or more banks and brokers which may be selected in its discretion, and (b) on the Company's behalf to sign checks, drafts or other orders for the payment of money, acceptances, notes or other evidences of indebtedness.

**12. Withdrawal by a Member; Resignation of the Managing Member.**

(a) No Member shall be entitled to withdraw all or any portion of his or her capital account without the prior written consent of the Managing Member, which may be withheld in its sole discretion.

(b) The Managing Member shall have the right to resign as such upon at least ten (10) days' prior written notice to the Company, in which case the Members, acting by a majority-in-interest, may appoint a successor(s) prior to such resignation. In addition, in the event of the dissolution or winding up of the Managing Member, the Members (including the Managing Member, or a successor designated by the Managing Member), acting by a majority-in-interest, may appoint a successor(s) at the time of such dissolution or winding up.

**13. Admission of Additional Members.** One or more additional members of the Company may be admitted to the Company with the consent of the Managing Member upon such terms as the Managing Member shall determine in its sole discretion.

**14. Liability of Members.** The Members shall not have any liability for the obligations or liabilities of the Company except to the extent required under the Act.

**15. Indemnification and Exculpation of Managing Member, Employees and Officers.** None of the Managing Member or any current or former officer or employee of the Company shall be liable for any breach of duty in such capacity, except that if a judgment or other

final adjudication adverse to the Managing Member or such officer or employee, as the case may be, establishes that such acts or omissions constituted gross negligence or willful misconduct. The Company shall indemnify and hold harmless the Managing Member and each current and former officer and employee of the Company against any loss, damage or expense (including, without limitation, attorneys' fees, including those incurred in enforcing this indemnity) incurred by the Managing Member or such officer or employee as a result of any act performed or omitted on behalf of the Company or in furtherance of its interests, except to the extent that it is finally determined that the Managing Member or such officer or employee acted in a manner that constituted gross negligence or willful misconduct. The Company shall, at the request of the Managing Member or such officer or employee, advance amounts and/or pay expenses as incurred in connection with the Company's indemnification obligation contained in this Section.

**16.  Partnership Representative.** With respect to any tax year that the Company is treated as a partnership for tax purposes, the Managing Member shall at all times constitute, and have full powers and responsibilities of, the "Partnership Representative." In the event the Company shall be the subject of an income tax audit by any federal, state, local or foreign authority, to the extent the Company is treated as an entity for purposes of such audit, including administrative settlement and judicial review, the Partnership Representative shall be authorized to act for, and its decisions shall be final and binding upon, the Company and each Member (including any person who ceases being a Member), and the Partnership Representative shall be indemnified and held harmless by the Company and each Member for any action so taken by him in accordance with Section 15 above. All expenses incurred in connection with any such audit, investigation, settlement or review shall be borne by the Company to the extent of available Company funds, and any excess shall be paid by the Members individually in proportion to their respective Percentage Interests. The Partnership Representative shall have authority to make any and all decisions, including but not limited to special elections, under such audit rules, as well as any similar rules in respect of state, local and foreign taxes. The Partnership Representative shall have the power to designate a "designated individual" as described in Treasury Regulation Section 301.6223-1(b)(3)(ii) and references to the Partnership Representative herein shall be deemed to include such designated individual.

**17.  Governing Law.** This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware, all rights and remedies being governed by said laws. If any provision of this Agreement conflicts with a default rule under the Act, this Agreement shall govern.

**18.  Amendments.** This Agreement may not be amended without the written consent of all of the Members.

**19.  Successors and Assigns.** This Agreement is binding upon, and inures to the exclusive benefit of, the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and permitted assigns.

**20.  Gender; Pronouns; Headings.** The use of any gender herein shall be deemed to be or include the other genders and the use of the singular herein shall be deemed to be or include the plural (and vice-versa), wherever appropriate. The headings herein are inserted only as a matter of

convenience and reference, and in no way define, limit or describe the scope of this Agreement, or the intent of any provisions hereof.

**21. Counterparts; E-mail and Facsimile Signatures.** This Agreement may be executed in several counterparts, and all so executed shall constitute one agreement, binding on all the parties hereto, even though all parties are not signatory to the original or the same counterpart. Any counterpart of this Agreement shall for all purposes be deemed a fully executed instrument. The delivery of a signed counterpart by facsimile, e-mail or other electronic transmission shall be binding on the signatory.

**22. Amendment and Restatement.** Upon the effectiveness of this Agreement, the terms and provisions of the Existing Agreement shall be and hereby are amended and restated in their entirety, and superseded in all respects, by the terms and provisions of this Agreement.

[*Signature Page Follows*]

**IN WITNESS WHEREOF**, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first written above.

MANAGING MEMBER:
GENESIS GLOBAL HOLDCO, LLC

By: *Michael Moro*
Name: S. Michael Moro
Title: CEO

## SCHEDULE A

## GENESIS GLOBAL CAPITAL, LLC

## Operating Agreement

| Name | Percentage Interest |
|---|---|
| **Genesis Global Holdco, LLC**<br>250 Park Avenue South<br>5th Floor<br>New York, New York 10003 | 100% |