UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM MCGREEVY, ASHWIN GOWDA, TRANSLUNAR CRYPTO, LP, CHRISTOPHER BUTTENHAM, REMO MARIA MORONE, DOMINIC MACRI, LARRY WIENER, DEREK WILSON, DANIEL AMELI, and LEE JACOBSON, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiffs,<br><br> v.<br><br>DIGITAL CURRENCY GROUP, INC., BARRY SILBERT, MICHAEL KRAINES, MARK MURPHY, SOICHIRO "MICHAEL" MORO, and DERAR ISLIM<br><br>      Defendants. | Civil Action No. 3:23-cv-00082-SRU<br><br>CLASS ACTION<br><br>Hon. Stefan R. Underhill<br><br><br>December 13, 2024 |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANT SOICHIRO "MICHAEL" MORO'S MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 1

    I.    PLAINTIFFS ALLEGE NO FACTS DEMONSTRATING MR. MORO ACTED WITH THE REQUISITE SCIENTER. ...................................................... 1

    II.    PLAINTIFFS' CONTORTED AND INCONSISTENT DEFINITION OF THE "SECURITY" AT ISSUE UNDERMINES THEIR SECURITIES CLAIMS. ............................................................................................................. 3

        A.    Plaintiffs Fail to Allege There Was A Sale of Any Security ....................... 4

        B.    Plaintiffs Fail To Allege Mr. Moro Can Be Liable for "Scheme Liability" ....................................................................................................... 5

CONCLUSION ............................................................................................................................... 7

**PRELIMINARY STATEMENT**

After filing four complaints in this action and a combined 179 pages across two memoranda in opposition to motions to dismiss, two things remain apparent. *First*, Plaintiffs are still unable to articulate a consistent (much less coherent) definition for what constitutes the "security" on which all of Plaintiffs' Securities Act and Exchange Act claims are based.[1] The explanation for this remains simple: there are no securities at issue in this case. *Second*, Plaintiffs are unable to articulate any basis on which Mr. Moro would be liable for violations of the federal securities laws (if there were securities at issue) or state consumer protection laws (if there are not). The explanation for this remains equally simple: Mr. Moro did not violate any laws—whether through "scheme liability" under Section 10(b) and Rule 10b-5 of the Exchange Act (Count II), control person liability under Section 15 of the Securities Act or Section 20(a) of the Exchange Act (Counts I and III), or under any alternative state consumer protection laws (Counts IV and XI).

The reply brief submitted in support of the DCG Defendants' motion to dismiss (the "DCG Reply") again responds to and dismantles each of Plaintiffs' arguments in the Opposition that are common to the Defendants. Mr. Moro joins and incorporates those responses as if fully set forth herein, and submits this short reply to address two arguments that specifically relate to Mr. Moro and further justify dismissing all of Plaintiffs' claims against Mr. Moro with prejudice.

**ARGUMENT**

**I.    PLAINTIFFS ALLEGE NO FACTS DEMONSTRATING MR. MORO ACTED WITH THE REQUISITE SCIENTER.**

As Mr. Moro argued in his Motion, none of the allegations in Plaintiffs' Amended Complaint regarding scienter address Mr. Moro. Motion at 17-21. Instead, Plaintiffs make conclusory assertions that the alleged scheme allowed an unrelated subsidiary to allegedly

---

[1] Capitalized terms used but not defined herein have the same meaning as in the Memorandum in Support of Defendant Soichiro "Michael" Mor's Motion to Dismiss Plaintiffs' Third Amended Complaint (the "Motion").

1

maximize management fees, TAC ¶¶ 37-38, and allowed other DCG and Genesis insiders—but not Mr. Moro—to redeem their loans to Genesis. TAC. ¶¶ 347-350.

Rather than countering Mr. Moro's summary of the allegations, Plaintiffs confirm it. When discussing "motive and opportunity" in the Opposition, Plaintiffs do not mention Mr. Moro even once, and instead point to only three allegations that are entirely unrelated to Mr. Moro: (1) it was in Defendant DCG's and Silbert's interest—but not Mr. Moro's—to engage in the alleged fraud because it allegedly increased the management fees earned by a DCG subsidiary; (2) keeping GGC out of bankruptcy prevented DCG and related entities from having their outstanding loans called by Genesis, which Plaintiffs allege would have forced DCG into bankruptcy; and (3) executing the DCG Promissory Note allowed Silbert and other Genesis and DCG insiders—but not Mr. Moro—to withdraw capital from Genesis by redeeming their investments. Opposition at 60-64.

Accordingly, Plaintiffs all but concede that the Amended Complaint fails to allege that Mr. Moro had the requisite "motive and opportunity" to commit fraud necessary to establish scienter. *In re Carter-Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000). Similarly, Plaintiffs offer no explanation as to how their limited allegations against Mr. Moro in support of their scheme liability claim—namely, that he sent a few tweets in June and July 2022 and otherwise allegedly "caused" certain unidentified financial documents that were supposedly false and misleading to be disseminated to Gemini—satisfy the "significant burden" for pleading scienter through conscious misbehavior or recklessness. *Chill v. GE*, 101 F.3d 263, 270 (2d Cir. 1996); *compare* Motion at 19-21 *with* Opposition at 63-64. Instead, Plaintiffs simply assert that they "have adequately pled" scienter and cite portions of the Third Amended Complaint that simply list the alleged conduct without any discussion of motive, opportunity, conscious misbehavior, or recklessness. *Id.* (citing TAC ¶¶ 43-47, 587-88, 600-02, 609-11). Plaintiffs' failure to plead facts showing Mr. Moro acted with scienter requires dismissal of their primary Section 10(b) and Rule 10b-5 claims against him.

## II. PLAINTIFFS' CONTORTED AND INCONSISTENT DEFINITION OF THE "SECURITY" AT ISSUE UNDERMINES THEIR SECURITIES CLAIMS.

Plaintiffs' claim that Defendants, including Mr. Moro, "[ignore] the economic reality of the security purchases at issue in the Action," *see e.g.*, Opposition at 11, yet it is Plaintiffs who ignore the economic reality that the transactions at issue here were not securities, but were loans of digital assets in exchange for a contractually-obligated Loan Fee tied exclusively to the market. *See* DCG Reply § I(A). While Defendants have consistently argued this position, Plaintiffs have advanced, and continue to advance, ever-shifting definitions of the "security" at issue here.

In each of their first three complaints, Plaintiffs clearly alleged that the Lending Agreements themselves were the "securities." *See, e.g.*, ECF No. 1, Complaint, at ¶¶ 95 ("the Lending Agreements qualify as 'investment contracts'; and … the Lending Agreements qualify as 'notes' under *Reves*…"); ECF No. 60, First Amended Complaint, at § IX ("The Genesis Yield Investment Agreements Are Securities");[2] ECF No. 135, Second Amended Complaint, at § IX (same). In their Omnibus Opposition to Defendants' Motions to Dismiss the Second Amended Complaint, ECF No. 147, Plaintiffs effectively admitted that the Lending Agreements themselves were not securities by amending their definition to include the Lending Agreements *as well as* each lenders' later decision to lend digital assets to Genesis pursuant to a Lending Agreement. *Id* at 7. Finally, in their Third Amended Complaint, Plaintiffs simply replaced references to the "Genesis Yield Investment Agreements" with "Genesis Yield Securities" using their newly-concocted definition. *See* TAC at § X ("The Genesis Yield Securities Are a 'Security' Under the Federal Securities Laws").

Despite Plaintiffs' repeated attempts to plead otherwise, these contracts are not securities for all of the reasons outlined in DCG's briefing, *see* DCG Memorandum at § I(A); DCG Reply at

---

[2] Plaintiffs' change from initially pleading "Lending Agreements" to later pleading "Investment Agreements" should be seen for the transparent attempt to obscure the economic realities of the contracts at issue that it is.

§ I(A), and their latest arguments in support of their scheme liability claims continue to conflict with what they now purport to be the securities at issue.

### A. Plaintiffs Fail to Allege There Was a Sale of Any Security

As Mr. Moro argued in his Motion, there is no credible allegation that the "securities," even under Plaintiffs' revised definition, could be "purchased" or "sold." Motion at 27. Entering into Lending Agreements alone could not constitute a "sale" or "purchase" because the contracts *allowed*, but did not *require*, counterparties to provide any digital assets to Genesis. In the event a counterparty later transferred digital assets to Genesis, still no "sale" or "purchase" occurred because those assets were *lent* to Genesis in exchange for a Loan Fee.

In an attempt to circumvent the economic reality of these transactions, Plaintiffs appear to argue that entering into a contract permitting a party to make a loan of digital assets, and a later-in-time loan of digital assets pursuant to that contract, transforms the transaction from a loan to a sale. Opposition at 10-13. That a sale can be based on multiple documents entered into over time is not in dispute. But Plaintiffs fail to allege that *any* sale actually occurred—whether by entering into the Lending Agreements, by lending digital assets at a later date, or by some combination of the two. Instead, Plaintiffs merely cite to inapposite cases that discuss *when* a sale occurred, not *whether* a sale occurred. *Id.*[3] As such, Plaintiffs have failed to show the Lending Agreements, or

---

[3] *See, e.g.*, *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 890-91 (2d Cir. 1972) (discussing when the purchase of shares of stock in a company occurred); *Vacold LLC v. Cerami*, 545 F.3d 114, 122 (2d Cir. 2008) (discussing whether a contract for the purchase of stock was binding); *Yoder v. Orthomolecular Nutrition Inst.*, 751 F.2d 555, 559 (2d Cir. 1985) (discussing contract for sale of stock). Plaintiffs' remaining arguments regarding an "offer" assume that there could be a "sale" of these contractual arrangements in the first place, which Plaintiffs have failed to allege. That caselaw is further distinguishable from the facts here as they related to the offer to sell securities, while there are no securities at issue in this case. *See, e.g.*, *Chris-Craft. Indus. V. Bangor Punta Corp.*, 426 F.2d 569, 574 (2d Cir. 1970) (relating to exchange of shares); *Cap. Real Estate Inv'rs Tax Exempt Fund Ltd. P'ship v. Schwartzberg*, 929 F. Supp. 105, 112-13 (S.D.N.Y. 1996) (discussing merger of recommendation that investors approve transaction); *SEC v. Blockfest*, 2019 WL 625163 (S.D. Cal. Feb. 14, 2019) (discussing initial coin offering (ICO) where coin entitled users to profits, shares of assets, and voting rights, and which could be listed on online trading platforms).

the relationship they formed between parties, could be "sold" or "purchased" (much less that they actually were) as required to support Plaintiffs' claims.

Plaintiffs' efforts to argue around the economic reality of the parties' relationship under the Lending Agreements further betrays the inconsistencies and unworkability in their own definition of the "security."  At times, Plaintiffs argue that the "Genesis Yield securities" include both the Lending Agreements and the subsequent loans of digital assets.  Opposition at 7.  But in this section, Plaintiffs argue that the Lending Agreements are separate from the "Genesis Yield securities."  For example, Plaintiffs state "by entering into the [Lending Agreements], investors *sought an opportunity* to invest in Genesis Yield securities."  Opposition at 11 (emphasis added).  But if the Lending Agreements merely provide an *opportunity* to invest in the security, the Lending Agreements cannot themselves be the security.  Later, Plaintiffs argue that Genesis "at a minimum, '*offered*' Genesis Yield securities … through the [Lending Agreements] and related marketing and solicitations." *Id.* at 13.  But again, if the Lending Agreements constitute part of the "offer" to sell the security, they cannot simultaneously be the security itself.  Plaintiffs' inability to consistently articulate what is and is not the security at issue only supports Defendants' argument that there are no securities at issue in this case.  DCG Memo at § I(A); DCG Reply at §I(A),

### B. Plaintiffs Fail To Allege Mr. Moro Can Be Liable for "Scheme Liability"

With regards to Plaintiffs' claims against Mr. Moro for "scheme liability," Plaintiffs continue to point to the "Solvency Warranty" included in the Lending Agreements.  Opposition at 55 (citing TAC ¶¶ 141-44, 462, 687).  As discussed in Mr. Moro's Motion, under Plaintiffs' theory as articulated in the Third Amended Complaint, Plaintiffs do not, and cannot, allege that these "representations" were false *at the time they were made*, specifically because (1) Plaintiffs executed their Lending Agreement long before June 2022 when Plaintiffs allege Genesis became insolvent (in fact, Genesis was not insolvent at that time), and (2) Plaintiffs have not alleged that

any other lender or class member executed a Lending Agreement at any time following Three Arrows Capital's July 1, 2022 bankruptcy filing or DCG's assumption of Genesis' liabilities related to Three Arrows Capital. Motion at 11-12 (citing *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 577 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) ("A violation of Section 10(b) and Rule 10b-5 premised on misstatements cannot occur unless an alleged material misstatement was false *at the time it was made*.") (emphasis added).[4]

Rather than curing this defect, Plaintiffs' effort to circumvent it by advocating for an absurd result whereby statements in the Lending Agreements that were undeniably true when made—*i.e.* when the agreements were entered into by the parties before Genesis' alleged June 2022 insolvency—will be considered to be made again at later date, not because Genesis actually made a representation or even re-affirmed the prior representation in any way, but simply because a *lender* (*i.e.*, one of the Plaintiffs) later decided to loan digital assets pursuant to the Lending Agreement they had signed years earlier. Tellingly, Plaintiffs cite no caselaw to support such a proposition that would impose liability on Genesis, much less any authority suggesting Mr. Moro could be found liable for "causing" Genesis to repeatedly make such representations. That said, if the Court were to accept Plaintiffs' theory that the Solvency Representation was "ongoing" and Genesis made the representation each time a counterparty lent assets to Genesis, Plaintiffs' failure to plead any facts demonstrating that Mr. Moro caused Genesis to make the statement, a key element of their scheme liability claim, is even more glaring. Given Plaintiffs failed to plead any facts demonstrating how Mr. Moro "caused" Genesis to make the representation in the Lending

---

[4] It is also well settled law that misstatements "cannot form the sole basis" for scheme liability. *See, e.g.*, *Lorenzo v. SEC*, 139 S. Ct. 1094, 1099 (2019); *SEC v. Rio Tinto plc*, 41 F.4th 47, 53 (2d Cir. 2022). Because neither Plaintiffs' Amended Complaint nor their Opposition demonstrates any instance where Mr. Moro disseminated any false or misleading statements made by Genesis (or anyone else), including the Solvency Warranty in the Lending Agreements, Mr. Moro cannot bear primary scheme liability even if the Solvency Warranty were a misrepresentation at the time it was made (which it was not). *See Rio Tinto*, 41 F.4th at 53-54.

Agreements, even when that representation was only alleged to have been made *once* in the first instance, Motion at 11-12, this failure is exponentially worse if Mr. Moro somehow "caused" Genesis to make this representation *every time* one of the lenders loaned their digital assets to Genesis pursuant to their Lending Agreement. Such a result is untenable and Plaintiffs' scheme liability claims should be dismissed.

## CONCLUSION

For the foregoing reasons, together with the arguments set forth in Mr. Moro's initial Motion as well as in the DCG Defendants' Motion and Reply, Mr. Moro respectfully requests that the Court dismiss Plaintiffs' Third Amended Complaint against him in its entirety and with prejudice for failure to state claims upon which relief can be granted.

Dated: December 13, 2024

*/s/ Christian D. H. Schultz*

**SPEARS MANNING & MARTINI LLC**
Joseph W. Martini (CT07225)
2425 Post Road, Suite 203
Southport, CT 06890
Telephone: (203) 292-9766
jmartini@spearsmanning.com

**ARNOLD & PORTER KAYE SCHOLER LLP**
Marcus Asner (*pro hac vice*)
Tyler Fink (*pro hac vice*)
Kodjo Kumi (*pro hac vice*)
250 W 55th Street
New York, NY 10019
Telephone: (212) 836-8000
marcus.asner@arnoldporter.com

Christian D. H. Schultz (*pro hac vice*)
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
christian.schultz@arnoldporter.com

*Counsel to Defendant Soichiro "Michael" Moro*