**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| WILLIAM MCGREEVY, ASHWIN GOWDA, TRANSLUNAR CRYPTO, LP, CHRISTOPHER BUTTENHAM, REMO MARIA MORONE, DOMINIC MACRI, LARRY WIENER, DEREK WILSON, DANIEL AMELI, and LEE JACOBSON, individually and on behalf of all others similarly situated, | Case No. 3:23-cv-00082-SRU |
| | Hon. Stefan R. Underhill |
| Plaintiffs, | |
| v. | |
| DIGITAL CURRENCY GROUP, INC., BARRY SILBERT, MICHAEL KRAINES, MARK MURPHY, SOICHIRO "MICHAEL" MORO, and DERAR ISLIM, | December 13, 2024 |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>DEFENDANT DERAR ISLIM'S MOTION TO DISMISS</u>**

Defendant Derar Islim—allegedly the chief operating officer and interim chief executive officer of Genesis Global Capital, LLC ("GGC") and Genesis Global Trading, Inc., and director of Genesis Global Holdco, LLC ("GGH")—respectfully submits this Reply Memorandum of Law in further support of his motion to dismiss the Third Amended Complaint dated September 30, 2024 (the "TAC") (Dkt. 171).[1]

## PRELIMINARY STATEMENT

Plaintiffs' Omnibus Memorandum of Law in Opposition to the Defendants' Motions to Dismiss does nothing to address Mr. Islim's Motion to Dismiss arguments or to otherwise salvage any of their claims.[2] With respect to Mr. Islim, Plaintiffs continue to repeat the same tired, conclusory statements and point the Court back to only four pieces of evidence, none of which can be interpreted reasonably as supporting their claims.

The first, a statement made by Mr. Islim during a January 22, 2021 GBBC Virtual Members Forum describing Genesis as offering a range of lending products with "one of the best yields in the market," says nothing about Mr. Islim's role in the business and cannot reasonably support an argument that he had the requisite control for Securities Act violations. (TAC ¶ 173; Opp. 18, 45).

The second, a June 13, 2022 Teams chat in which Mr. Islim stated only that he was working closely with Genesis's Head of Lending regarding liquidity, does nothing to show he had control over or was a culpable participant in any of the alleged acts. (TAC ¶ 556; Opp. 45, 81–82).

---

[1]    Citations to Mr. Islim's Memorandum of Law in Support of His Motion to Dismiss the Amended Complaint (Dkt. 179) are shown as "Mem." and to Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss (Dkt. 190) as "Opp." Other abbreviations conform to those used in Mr. Islim's Memorandum of Law in Support of His Motion to Dismiss the Third Amended Complaint.

[2]    *See* Memorandum of Law in Support of Defendants Digital Currency Group, Inc., Barry Silbert, Glenn Hutchins, Lawrence Lenihan, and Mark Murphy's Motion to Dismiss ("DCG Defs.' Motion to Dismiss") (Dkt. 177) *and* Reply Memorandum of Law in Further Support of Defendants Digital Currency Group, Inc., Barry Silbert, and Mark Murphy's Motion to Dismiss (Dkt. 192) ("DCG Defs.' Reply"). Capitalized terms used but not defined herein have the meanings assigned to them in the DCG Defs.' Motion to Dismiss and DCG Defs.' Reply.

1

The third, an August 17, 2022 statement made by Mark Murphy announcing Mr. Islim's promotion to interim CEO, noting, "he has our full trust and confidence and has been instrumental in developing key areas of the Genesis business" does not demonstrate Mr. Islim's control over any aspect of the business, much less over the primary violations alleged by Plaintiffs. (TAC ¶ 80; Opp. 45).

The fourth, a September 1, 2022 email containing concerns raised by Genesis's Director of Lending regarding GGC's liquidity and equity, with no response from Mr. Islim, cannot serve as evidence of any misrepresentation by anyone, much less by Mr. Islim, or that he possessed the requisite scienter for Plaintiffs' Exchange Act claims. (TAC ¶ 440; Opp. 57, 63).

These documents do not evidence a single statement or act by Mr. Islim that support Plaintiffs' claims. Plaintiffs have not carried their burden to plead any claim against Mr. Islim.

Mr. Islim incorporates, in all relevant parts, points raised in the DCG Defendants' Reply as they relate to him and the claims against him, including that Plaintiffs fail to allege primary violations of the Securities and Exchange Acts, (DCG Defs.' Reply §§ I., II.), control liability, (*id*. §§ I.B., II.B.), scheme liability, (*id*. § III.), or any state or common law claims (*id*. §§ IV., V.).

## ARGUMENT

### I.    Plaintiffs Fail to Allege an Exchange Act Violation

In opposition, despite acknowledging their heightened burden under the PSLRA and Rule 9(b), (Opp. 58–59), Plaintiffs fail to point to any misrepresentation or omission by Mr. Islim or allege any facts supporting an inference that Mr. Islim possessed scienter. (*See* TAC ¶ 48).

### A.    Plaintiffs Fail to Plead a Misrepresentation or Omission by Mr. Islim

In addition to attempting to rely on Mr. Islim's receipt of the September 1, 2022 email from Genesis's Director of Lending that contains no evidence of any misrepresentation (Opp. 57), Plaintiffs argue that Mr. Islim represented that GGC was solvent to every investor who entered

into a lending or loan agreement with GGC. (Opp. 55, 60). Yet, Plaintiffs provide no facts regarding how Mr. Islim was involved, presumably, in onboarding new investors, much less point to any specific omission or misstatement made by Mr. Islim in relation to such a process. (Opp. 53, 60). Plaintiffs also assert tweets in June 2022 (Opp. 53–54) and statements allegedly made to Gemini (Opp. 56–57) satisfy the misrepresentation element, but do not allege Mr. Islim's involvement in any of the tweets or alleged statements. In failing to cite a single alleged misstatement or omission attributable to Mr. Islim, Plaintiffs fail to meet their burden under the PSLRA and Rule 9(b).

**B.      Plaintiffs Fail to Plead Mr. Islim had the Requisite Scienter**

In opposition, Plaintiffs broadly state that the TAC's allegations raise a strong inference that all Defendants, *as a group*, either (i) benefitted in a concrete and personal way from the purported fraud or (ii) knew facts or had access to information suggesting that their public statements were not accurate. (Opp. 61–63). This is simply not true.

Regarding alleged benefits, Plaintiffs claim the Defendants had two "concrete" motivations in making the alleged misrepresentations—(i) preventing DCG from having its loans to Genesis called, and (ii) giving insiders time to pull their own capital from Genesis. (Opp. 61–62). Neither apply to nor have been alleged to benefit Mr. Islim. Regarding alleged knowledge of facts, Plaintiffs claim Mr. Islim's Motion to Dismiss argument "downplays" his role and access to information, which they believe is evidenced by his senior position and his receipt of the September 1, 2022 email. (Opp. 63). Again, neither Mr. Islim's position[3] nor the September 1,

---

[3]      *In re Sotheby's Holdings, Inc.*, No. 00 CIV. 1041 (DLC), 2000 WL 1234601, at *6 (S.D.N.Y. Aug. 31, 2000) ("Where plaintiffs contend a defendant had access to contrary facts, they must specifically identify the reports or statements containing this information.").

2022 email are sufficient to show Mr. Islim had access to information that would inform him of any alleged inaccuracies.

Under the heightened pleading standards of the PSLRA, "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). Here, Plaintiffs have offered nothing to support any inference at all.

**C.    Plaintiffs Fail to Allege Scheme Liability**

In opposition, Plaintiffs state that they adequately plead scheme liability as to Mr. Islim in three ways: (i) alleging Mr. Islim played a role in "guiding GGC's response" at the direction of Defendants Silbert and Moro, (ii) alleging his knowledge of the existence of the "sham" promissory note and its purpose, and (iii) alleging his dissemination of financial statements with that knowledge. (Opp. 81–82). Yet, Plaintiffs fail to plead facts that support any of these points.

As to Mr. Islim's supposed role in "guiding GGC's response," Plaintiffs point only to the June 13, 2022 Teams chat in which Mr. Islim confirmed he was "working closely" with Mr. Ballensweig regarding liquidity. (Mem. 2–3). This statement cannot reasonably be viewed as showing the role Mr. Islim played in "GGC's response," whatever that may be, let alone that he was part of a scheme. Regarding Mr. Islim's supposed knowledge of the "sham" promissory note and its purpose, Plaintiffs rely, yet again, on the September 1, 2022 email, which does nothing to show Mr. Islim's knowledge of the note being a "sham" or its purpose. Further, nothing in Plaintiffs' TAC pleads that Mr. Islim disseminated any financial statements at all, much less that he had knowledge that such statements included false information. Such a pleading is blatantly insufficient. *See Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 74, 78 (2019).

## II.    Plaintiffs Fail to Plead Control Person Liability Under Exchange Act Section 20

In opposition, Plaintiffs assert that the TAC adequately alleges all elements for control person liability under Section 20(a) of the Exchange Act. (Opp. 85–87). It does not. (Mem. 7–9). As discussed in Section I, Plaintiffs fail to plead a primary violation of the Exchange Act, and, even if they did, Plaintiffs fail to demonstrate that Mr. Islim had control over the primary violator or transaction at issue or culpably participated in the conduct. (Mem. 7–9).

In opposition, Plaintiffs state that Mr. Islim argued that unless he sent or approved a statement at issue, he cannot be liable.[4] (Opp. 86) This is untrue. Mr. Islim argued that Plaintiffs failed to plead that Mr. Islim actually controlled the wrongdoer or transaction at issue—not that he had to have sent or approved a statement. (Mem. 8). Plaintiffs' Opposition does nothing to change this. Plaintiffs also assert that their Section 20 scienter argument demonstrates that Mr. Islim acted with some level of culpable participation at least approximating recklessness (Opp. 87), but as discussed in Section I(B), Plaintiffs' scienter argument fails.

## III.    Plaintiffs Fail to Plead Control Person Liability Under Securities Act Section 15

In opposition, Plaintiffs claim they are only required to plead to the notice requirements under Rule 8 of the Federal Rules of Civil Procedure. (Opp. 39). Even so, Plaintiffs are still required to plead a primary violation,[5] control, and culpable participation,[6] none of which they have done.

---

[4]    In association with this assertion, Plaintiffs point the Court to *Poptech L.P. v. Stewardship Credit Arbitrage Fund, LLC*, 792 F. Supp. 2d 328 (D. Conn. 2011). *Poptech* is inapposite. *Poptech* asserts that, where a firm uses a shell company for the sole purpose of avoiding liability, it is possible for multiple parties or entities to control the flow of information to investors. 792 F. Supp. 2d at 339–40 (citing *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 187–88 (2d Cir. 2011)). This has no relevance here; Plaintiffs have simply failed to plead control on the part of Mr. Islim.

[5]    Plaintiffs fail to establish a primary violation of securities law, an essential element of control person claims. *See* DCG Defs.' Reply § I.

[6]    While there is a split of authority as to whether the culpable participation is required under Section 15, and the Second Circuit has declined to rule on this issue, *see In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d at 185–86 (2d Cir. 2011), several courts in this Circuit have held that it does. *See Nayani v. Lifestance Health Grp., Inc.*, No. 22-cv-6833 (JSR), 2023 WL 3260260, at *4 (S.D.N.Y. May 04, 2023); *Pub. Emps' Ret. Sys. of Miss. v.*

Plaintiffs point to a singular statement made by Defendant Moro in the June 13, 2022 Teams chat to assert that Mr. Islim was "involved in every step of what has been happening." (Opp. 45). This statement proves nothing and, even if it were taken at face value, it fails to plead control as "the mere exercise of influence is not sufficient to establish control." *See Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 524 (S.D.N.Y. 2016) (internal quotations omitted). The remaining allegations are purely conclusory and point only to paragraphs of the TAC that allege Mr. Islim's titles (Opp. 39), which are insufficient. (Mem. 8).[7] Because Plaintiffs fail to plead a primary violation of the Securities Act, culpable participation, and control[8] as to Mr. Islim, Count II of the TAC should be dismissed.

## IV.    Plaintiffs Fail to Allege Any State or Common Law Claims

Plaintiffs' state law claims are insufficient as they fail to allege any involvement in, or control over, any deceptive conduct by Mr. Islim, and, as Plaintiffs have not carried their burden of proof with respect to their scheme liability claims, their common law claims must also fail. *See Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991).

## CONCLUSION

For the foregoing reasons, the TAC as against Mr. Islim should be dismissed in its entirety with prejudice.

---

*Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010); *P. Stolz Fam. P'ship, L.P. v. Daum*, 166 F. Supp. 2d 871, 873 (S.D.N.Y. 2001), *rev'd in part on other grounds by* 355 F.3d 92 (2d Cir. 2004); *Kane v. Wichita Oil Income Fund*, No. 90 Civ. 5714 (PKL), 1991 WL 233266, at *7 (S.D.N.Y. Oct. 29, 1991).

[7]    Plaintiffs attempt to distinguish Mr. Islim's argument by comparing fact patterns involving less senior, but still executive-level, individuals. In doing so, Plaintiffs ignore the holdings of *Youngers* and *In re Sotheby's*. Officer or director status alone does not constitute control, regardless of the *seniority level* of the title in question. *Youngers*, 195 F. Supp. 3d at 524; *In re Sotheby's Holdings, Inc.*, No. 00 CIV. 1041 (DLC), 2000 WL 1234601, at *8.

[8]    In a footnote, Plaintiffs claim that since Mr. Islim did not address the sworn statements referenced by Plaintiffs in Paragraph 557 of the TAC in the same manner as before, he has waived his arguments and conceded that he controlled Genesis. This is absurd. Mr. Islim addressed paragraphs 555–557 (Mem. 8), and, even if the titles in the bankruptcy statement were conceded, officer or director status alone does not constitute control. (Mem. 9).

Dated: December 13, 2024                    Respectfully submitted,


By: */s/ David C. Esseks*
David C. Esseks (admitted *pro hac vice*)
Erin Sisson (admitted *pro hac vice*)
Megan Sharkey (admitted *pro hac vice*)
ALLEN OVERY SHEARMAN STERLING LLP
599 Lexington Ave.
New York, NY 10022
Tel: (212) 610-6300
david.esseks@aoshearman.com
erin.sisson@aoshearman.com
megan.sharkey@aoshearman.com

Robert S. Hoff (ct27084)
WIGGIN AND DANA LLP
Two Stamford Plaza
281 Tresser Boulevard
Stamford, CT 06901
Phone: 203-363-7626
Fax: 203-363-7676
Email: rhoff@wiggin.com

*Attorneys for Defendant Derar Islim*

## CERTIFICATION OF SERVICE

I hereby certify that on this 13th day of December, 2024, a copy of the foregoing was served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ *David C. Esseks*
David C. Esseks (admitted *pro hac vice)*

8