**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| WILLIAM McGREEVY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, Plaintiffs, | No. 3:23-cv-00082 (SRU) |
| v. | |
| DIGITAL CURRENCY GROUP, INC., ET AL., Defendants. | |

## <u>ORDER ON MOTION FOR REVISION TO INTERLOCUTORY RULING</u>

On February 24, 2026, I ruled on the defendants' motions to dismiss. Doc. No. 216. I

allowed the plaintiffs' claims under the Securities Act of 1933 and the Securities Exchange Act

of 1934 to proceed. *Id*. I declined to exercise supplemental jurisdiction over the plaintiffs' state

consumer protection claims and common law fraud claim. *Id*. On April 20, 2026, the plaintiffs

moved for revision to my ruling to reinstate the state law claims. Doc. No. 245-1.

I.       The Class Action Fairness Act ("CAFA")

In their motion for revision to my ruling, the plaintiffs argue that CAFA grants original

jurisdiction over all claims in this matter, including the dismissed state law claims. *Id*. at 5.

The plaintiffs are correct. The parties do not dispute that the TAC satisfies CAFA's requirements

and invokes CAFA as a basis for jurisdiction over the claims. *See* Doc. No. 245-1 at 5; Doc. No.

259 at 13. Having now established that I have original jurisdiction over the dismissed state law

claims, I reinstate those claims and proceed to discuss their merits.

II.      State Consumer Protection Claims

If the federal securities law claims are valid, all of the plaintiffs' state consumer

protection claims are barred or are otherwise legally insufficient for one of three separate

reasons. First, I discuss the state law claims that rely on statutes that exclude securities transactions. Second, I evaluate the state law claims that rely on statutes that do not apply extraterritorially. Third, I analyze how the Texas Deceptive Trade Practices Act excludes transactions "involving total consideration by the consumer of more than $500,000." Tex. Bus. & Com. Code § 17.49.

    a.   State law claims under statutes that exclude securities transactions

The plaintiffs' state law claims under California, New York, and Florida law fail because those statutes exclude securities transactions from their ambit. California, New York, and Florida still regulate securities transactions, but in a statutory scheme separate from the consumer protection statutes under which the plaintiffs attempt to bring their claims. I address each of the California, New York, and Florida claims in turn.

First, the plaintiffs allege a violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 ("CUCL"), et seq., on behalf of plaintiff Larry Wiener and the subclass of plaintiffs from California. TAC, Doc. No. 171 ¶¶ 613-620. The CUCL prohibits any unlawful, unfair, or fraudulent business practice. However, both federal and state courts in California have held that the CUCL is "not applicable to securities transactions." *Shearson Lehman Bros. v. Greenberg,* 1993 U.S. Dist. LEXIS 21322, at *1 (C.D. Cal. Mar. 15, 1993), *affd., Shearson Lehman Brothers Inc. v. Greenberg*, 60 F.3d 834 (9th Cir. 1995); *see also Bowen v. Ziasun Techs., Inc.,* 116 Cal. App. 4th 777, 788 (2004).

Second, the plaintiffs allege a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, et seq., on behalf of plaintiff Daniel Ameli and the subclass of plaintiffs from Florida. Doc. No. 171 ¶¶ 621-627. The "FDUTPA does not apply to securities claims." *Rogers v. Nacchio,* 2006 U.S. Dist. LEXIS 101855, at *45 (S.D. Fla.

June 5, 2006); *see also Rogers v. Cisco Sys.,* 268 F. Supp. 2d 1305, 1316 (N.D. Fla. 2003) (holding that the FDUTPA does not apply to securities transactions partly because it was modeled after the Federal Trade Commission Act, which does not cover securities transactions).

Third, the plaintiffs allege a violation of the New York Uniform Deceptive Trade Practices Act, N.Y. GEN. BUS. LAW § 349, et seq., ("Section 349"), on behalf of plaintiff Derek Macri and the subclass of plaintiffs from New York. Doc. No. 171 ¶¶ 635-650. Section 349 is "inapplicable to the sale of securities." *Balta v. Ayco Co., LP,* 2005 U.S. Dist. LEXIS 53203, at *8 (W.D.N.Y. Nov. 21, 2005) (collecting cases); *see also Gray v. Seaboard Sec., Inc.,* 788 N.Y.S.2d 471, 472 (App. Div. 3rd Dept. 2005) (explaining that "because the securities arena is one which is highly regulated by the federal government, it is questionable that the legislature intended to give securities investors an added measure of protection beyond that provided by securities acts") (internal quotation marks and citations omitted).[1]

Because the plaintiffs brought their California, Florida, and New York claims under statutes that do not cover securities transactions, they fail to state a claim if my February 24, 2026 order withstands interlocutory appeal. Those state law claims are **stayed** pending further order of the court.

   b.   State law claims under statutes that do not apply extraterritorially

The plaintiffs also bring claims under Illinois, Kansas, and Nevada law. The courts of those states have held that the respective statutes require the underlying dispute to occur in the state. I address each of the Illinois, Kansas, and Nevada claims in turn.

---

[1] Although I do not evaluate the plaintiffs' Section 349 claim in the extraterritoriality section, the Second Circuit has ruled that "the appropriate territorial test" to apply to Section 349 claims is "to focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than on the residency of the parties." *Cruz v. Fxdirectdealer, LLC,* 720 F.3d 115, 123 (2d Cir. 2013). However, the TAC sufficiently alleges New York's connection to the allegedly deceptive transaction. *See, e.g.,* Doc. No. 171 ¶¶ 75, 76, 96, 443.

First, the plaintiffs allege a violation of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 Ill. Comp. Stat. §§ 510/2, et seq., on behalf of plaintiffs Derek Wilson and Lee Jacobson and the subclass of plaintiffs from Illinois. Doc. No. 171 ¶¶ 628-634. I found no precedent barring the application of IUDTPA to securities transactions. However, the IUDTPA requires any dispute to "occur primarily and substantially in Illinois." *BCBSM, Inc. v. Walgreen Co.,* 512 F. Supp. 3d 837, 856 (N.D. Ill. 2021). The TAC does not satisfy that requirement: the only alleged connection to Illinois is some plaintiffs' residences. Although the Illinois Supreme Court has held that the plaintiff's residence is an important factor, *see Clearing Corp. v. Fin. & Energy Exch., Ltd.,* 2010 U.S. Dist. LEXIS 72429, at *18 (N.D. Ill. July 16, 2010) (citing *Avery v. State Farm,* 216 Ill. 2d 100 (Ill. 2005)), the fact of some plaintiffs' residences in Illinois does not suffice to plead that the dispute occurred primarily and substantially in Illinois.

Second, the plaintiffs allege a violation of the Kansas Consumer Protection Act ("KCPA"), Kan. Stat. Ann. § 50-623, et seq., on behalf of plaintiff William McGreevy and the subclass of plaintiffs from Kansas. Doc. No. 171 ¶¶ 664-675. The KCPA defines a consumer transaction as a "a sale, lease, assignment or other disposition for value of property or services *within this state*." Kan. Stat. Ann. § 50-624(c) (emphasis added). Based on that definition, courts have concluded that "the act itself establishes that the Legislature didn't intend for the KCPA to apply extraterritorially. And our district has reached this same conclusion several times." *Moccaldi v. Pratt City Ford, LLC,* 2024 U.S. Dist. LEXIS 1850, at *25 (D. Kan. Jan. 4, 2024). Other than one named plaintiff residing in Kansas, doc. no. 171 ¶ 65, the TAC offers no allegations of conduct occurring within Kansas's borders.

Third, the plaintiffs allege a violation of the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. § 598.0903, et seq., on behalf of plaintiff Buttenham and the

4

subclass of plaintiffs from Nevada. Doc. No. 171 ¶¶ 676-683. "Although the Supreme Court of Nevada has not addressed the NDTPA's extraterritorial reach, it has recognized the general principle that absent legislative direction, Nevada statutes presumptively do not apply beyond the state's jurisdiction to persons or conduct that have little or no relation to anything done or to be done within Nevada." *Welk Biology Co., Ltd. v. Hakumo LLC,* 2025 LX 336264, at *53 (D. Nev. Aug. 20, 2025) (internal quotation marks and citations omitted) (cleaned up). Other courts in the District of Nevada have ruled similarly that "it is likely that the Nevada Supreme Court would find that actionable conduct must occur within Nevada's borders." *Rimini St. v. Oracle Int'l Corp.,* 473 F. Supp. 3d 1158, 1226 (D. Nev. 2020). Other than one named plaintiff residing in Nevada, doc. no. 171 ¶ 68, the TAC offers no allegations of conduct occurring within Nevada's borders.

I accordingly **grant** the defendants' motion to dismiss the plaintiffs' IUDTPA, KCPA, and NDTPA claims.

c.  The $500,000 Ceiling on the Texas Deceptive Trade Practices Act

The plaintiffs allege a violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("TDTPA"), Texas Bus. & Com. Code §§ 17.41, et seq., on behalf of plaintiffs Ashwin Gowda, Translunar, and the subclass of plaintiffs from Texas. Doc. No. 171 ¶¶ 651-663.

The TDPTA does not apply to transactions "involving total consideration by the consumer of more than $500,000." Tex. Bus. & Com. Code § 17.49. "Texas courts applying § 17.49(g) 'have done so considering the purpose of § 17.49(g), which is to maintain the DTPA as a viable source of relief for consumers in small transactions and to remove litigation over large transactions between businesses from the scope of the DTPA.'" *CrewFacilities.com, LLC v. Humano, LLC,* 2024 U.S. Dist. LEXIS 39919, at *6 (W.D. Tex. Mar. 7, 2024) (quoting *McCoy v.*

*Valvoline, LLC,* 568 F. Supp. 3d 666, 676 (N.D. Tex. 2021)). Texas courts accordingly "broadly construe the large-transactions exemption." *Id*. (internal quotation marks and citations omitted).

The TAC identifies two named Texas plaintiffs, Ashwin Gowda and Translunar Crypto LP. Doc. No. 171 ¶ 651. If I use the plaintiffs' alleged losses in place of total consideration involved in the Genesis Yield program (which is certainly a more plaintiff-friendly substitution in this instance), both named Texas plaintiffs sustained losses greater than $500,000. *See* Doc. No. 38-7 at 5-8 (estimating Gowda's losses at $608,157.13); Doc. No. 38-7 at 34-36 (estimating Translunar's losses at $5,802,667.51).

I must draw all reasonable inferences in favor of the plaintiffs at this stage. The reality is, however, that the plaintiffs have pled *no* facts upon which I can infer that any members of the Texas subclass engaged in transactions involving total consideration of less than $500,000. The TAC does not even offer a bare allegation to that point. In fact, the TAC alleges precisely the opposite: that the plaintiffs sustained remarkably large losses as a result of the alleged securities violations. *See* Doc. No. 171 ¶ 19 ("Plaintiffs and class members who invested directly with Genesis Global Capital such as Translunar, Morone, and Ameli are still collectively owed digital assets worth over one billion dollars.").

I **grant** the defendants' motion to dismiss the TDTPA claim.

### III.    Common Law Fraud Claim

The plaintiffs also bring a common law fraud claim. The TAC does not connect that claim to the common law of any state. Doc. No. 171 ¶¶ 62-64. The plaintiffs' opposition to the defendants' motion to dismiss outlines the elements of a common law fraud claim under New York law. Doc. No. 190 at 110. Accordingly, I analyze the common law fraud claim under New York law.

"In order to plead a claim for New York common law fraud, a plaintiff must allege that the defendant made a material misrepresentation of a fact, with knowledge of its falsity and an intent to induce reliance, that the plaintiff justifiably relied on defendant's misrepresentation, and that the plaintiff suffered damages." *Union Mut. Fire Ins. Co. v. Kolb Radiology, P.C.,* 2026 LX 132285, at *18 (E.D.N.Y. Mar. 5, 2026).

The plaintiffs sufficiently allege each element of a common law fraud claim. First, the TAC alleges that the defendants made false representations regarding Genesis's risk management practices and solvency. *See, e.g.,* Doc. No. 171 ¶¶ 273, 356. Second, the TAC pleads that those representations were false and the defendants knew them to be false. *See, e.g., id*. ¶¶ 317-320, 326, 402, 546. Third, the TAC pleads that the defendants misrepresented Genesis's risk management practices to convince investors that the Genesis Yield program was low-risk and high-yield. *Id*. ¶ 278. The TAC also alleges that the defendants misrepresented Genesis's solvency to prevent a "bank run" in which investors pulled their assets from Genesis. *Id*. ¶¶ 320, 330. Finally, the TAC alleges that the misrepresentations "induced" their investment and continued relationship with Genesis, which resulted in damages. *Id*. ¶ 688.

The plaintiffs have adequately pled a common law fraud claim under New York law. I **deny** the defendants' motion to dismiss the plaintiffs' common law fraud claim.

IV.    Conclusion

For the foregoing reasons, I **grant** the plaintiffs' motion for revision to my February 24, 2026 order. Because the validity of the plaintiffs' claims under California, Florida, and New York law depends on whether my order on the motion to dismiss withstands interlocutory appeal, those claims are **stayed** pending further order of the court. I **grant** the defendants' motion to dismiss the plaintiffs' claims under Illinois, Kansas, and Nevada law and **deny** the

defendants' motion to dismiss the common law fraud claim. Any further amended complaint shall not be filed unless the Second Circuit reverses my February 24, 2026 order on the motion to dismiss or declines to grant interlocutory review of that order.

    So ordered.

Dated at Bridgeport, Connecticut, this 2nd day of July 2026.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge